# UNITED STATES DISTRICT COURT
## EASTERN DISTRIC OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| Kenneth Nixon,<br><br>　　　Plaintiff,<br><br>v.<br><br>City of Detroit, Detective Moises Jimenez, Commander James Tolbert, Detective Kurtiss Staples, Sgt. Eddie Croxton, Officer Alma Hughes-Grubbs, and Other as-of-yet Unknown Employees of the City of Detroit,<br><br>　　　Defendants. | Civil Action No. 23-11547<br><br>Judge Judith E. Levy<br>Magistrate Judge Elizabeth A. Stafford |

| | |
|---|---|
| **Miller, Canfield, Paddock and Stone, P.L.C.**<br>*Attorneys for Defendant City of Detroit*<br>Marc N. Swanson (P71149)<br>Ronald A. Spinner (P73198)<br>150 West Jefferson, Suite 2500<br>Detroit, Michigan 48226<br>Telephone: (313) 496-7591<br>Facsimile: (313) 496-8451<br>swansonm@millercanfield.com<br>spinner@millercanfield.com | **Loevy & Loevy**<br>*Attorneys for Plaintiff*<br>Jon Loevy<br>Gayle Horn<br>Isabella Aguilar<br>311 N. Aberdeen St., 3rd FL<br>Chicago, IL 60607<br>Telephone: 312-243-5900<br>Facsimile: 312-243-5902<br>jon@loevy.com<br>gayle@loevy.com<br>aguilar@loevy.com |
| **Seward Henderson PLLC**<br>*Attorneys for Defendant City of Detroit*<br>Michael A. Knoblock (P77544)<br>210 East 3rd Street, Suite 212<br>Royal Oak, Michigan  48067<br>Telephone: (248) 733-3580<br>Facsimile: (248) 733-3633<br>mknoblock@sewardhenderson.com | **Goodman and Hurwitz, P.C.**<br>*Attorneys for Plaintiff*<br>Julie H. Hurwitz (P34720)<br>Kathryn Bruner James (P71374)<br>1394 E. Jefferson Avenue<br>Detroit, MI 48207<br>Telephone: 313-567-6170<br>Facsimile: 313-567-4827<br>kjames@goodmanhurwitz.com<br>jhurwitz@goodmanhurwitz.com |

1

**Nathan & Kamionski LLP**
*Attorneys for Defendants Jimenez,*
*Tolbert, Staples, Croxton, and*
*Hughes-Grubbs*
Avi Kamionski
Shneur Zalman Nathan
33 W. Monroe, Suite 1830
Chicago, IL 60603
Telephone: 312-612-1928
Email: akamionski@nklawllp.com
Email: snathan@nklawllp.com

Christopher J. Raiti (P68600)
Kristine Baker (P83893)
Andrea M. Frailey (P82466)
500 Griswold, Ste 2300
Detroit, MI 48226
Telephone: 313-335-3811
Facsimile: 312-448-6099
Email: craiti@nklawllp.com
Email: kbaker@nklawllp.com

---

### THE CITY OF DETROIT'S MOTION TO (A) DISMISS IN LIEU OF AN ANSWER, AND (B) STAY LAWSUIT UNTIL BANKRUPTCY COURT ENTERS A FINAL ORDER ON THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST KENNETH NIXON

The City of Detroit ("City"), by and through its undersigned attorneys, relies on the attached brief in support of this Motion to (A) Dismiss in Lieu of an Answer, and (B) Stay Lawsuit Until Bankruptcy Court Enters a Final Order on the City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Kenneth Nixon ("Motion"). The City sought concurrence in the Motion by sending emails to Plaintiff's counsel on August 24,

2

2023, and August 28, 2023.  In those emails, the City explained that the basis for the motion to stay was to allow the Bankruptcy Court to decide the motion filed against the Plaintiff in the Bankruptcy Court and the basis for the motion to dismiss was largely set forth in the motion filed against the Plaintiff in the Bankruptcy Court. Plaintiff's counsel denied concurrence through emails dated August 24, 2023, and August 29, 2023.  On August 30, 2023, the City's counsel and Plaintiff's counsel further discussed the motion to dismiss and during that conference the City's counsel explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

Dated: September 5, 2023          MILLER, CANFIELD, PADDOCK AND
                                  STONE, P.L.C.

                                  By: /s/ Marc N. Swanson
                                  Marc N. Swanson (P71149)
                                  150 West Jefferson, Suite 2500
                                  Detroit, Michigan 48226
                                  Telephone: (313) 496-7591
                                  Facsimile: (313) 496-8451
                                  swansonm@millercanfield.com
                                  Attorneys for the City of Detroit

3

# UNITED STATES DISTRICT COURT
## EASTERN DISTRIC OF MICHIGAN
### SOUTHERN DIVISION

Kenneth Nixon,

     Plaintiff,

v.

City of Detroit, Detective Moises Jimenez, Commander James Tolbert, Detective Kurtiss Staples, Sgt. Eddie Croxton, Officer Alma Hughes-Grubbs, and Other as-of-yet Unknown Employees of the City of Detroit,

     Defendants.

Civil Action No. 23-11547

Judge Judith E. Levy
Magistrate Judge Elizabeth A. Stafford

---

**Miller, Canfield, Paddock and Stone, P.L.C.**
*Attorneys for Defendant City of Detroit*
Marc N. Swanson (P71149)
Ronald A. Spinner (P73198)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com
spinner@millercanfield.com

**Seward Henderson PLLC**
*Attorneys for Defendant City of Detroit*
Michael A. Knoblock (P77544)
210 East 3rd Street, Suite 212
Royal Oak, Michigan  48067
Telephone: (248) 733-3580
Facsimile: (248) 733-3633
mknoblock@sewardhenderson.com

**Loevy & Loevy**
*Attorneys for Plaintiff*
Jon Loevy
Gayle Horn
Isabella Aguilar
311 N. Aberdeen St., 3rd FL
Chicago, IL 60607
Telephone: 312-243-5900
Facsimile: 312-243-5902
jon@loevy.com
gayle@loevy.com
aguilar@loevy.com

**Goodman and Hurwitz, P.C.**
*Attorneys for Plaintiff*
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
1394 E. Jefferson Avenue
Detroit, MI 48207
Telephone: 313-567-6170
Facsimile: 313-567-4827
kjames@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com

**Nathan & Kamionski LLP**
*Attorneys for Defendants Jimenez,
Tolbert, Staples, Croxton, and
Hughes-Grubbs*
Avi Kamionski
Shneur Zalman Nathan
33 W. Monroe, Suite 1830
Chicago, IL 60603
Telephone: 312-612-1928
Email: akamionski@nklawllp.com
Email: snathan@nklawllp.com

Christopher J. Raiti (P68600)
Kristine Baker (P83893)
Andrea M. Frailey (P82466)
500 Griswold, Ste 2300
Detroit, MI 48226
Telephone: 313-335-3811
Facsimile: 312-448-6099
Email: craiti@nklawllp.com
Email: kbaker@nklawllp.com

---

**BRIEF IN SUPPORT OF
THE CITY OF DETROIT'S MOTION TO (A) DISMISS IN LIEU OF AN
ANSWER, AND (B) STAY LAWSUIT UNTIL BANKRUPTCY COURT
ENTERS A FINAL ORDER ON THE CITY OF DETROIT'S MOTION FOR
THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER
<u>AND CONFIRMATION ORDER AGAINST KENNETH NIXON</u>**

# TABLE OF CONTENTS

ISSUES PRESENTED ................................................................................. II

CONTROLLING AUTHORITY ............................................................... III

TABLE OF AUTHORITIES ..................................................................... IV

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS ................................................................. 2

    A.  THE CITY'S BANKRUPTCY CASE ................................................. 2

    B.  NIXON'S LAWSUIT AGAINST THE CITY ..................................... 5

    C.  NIXON UNSUCCESSFULLY APPEALS HIS CONVICTION .......................... 6

    D.  NIXON'S APPLICATION FOR WRIT OF HABEAS CORPUS IS DENIED ................ 8

    E.  KENNETH NIXON IS RELEASED AND OBTAINS COMPENSATION UNDER WICA .10

    F.  THE MOTION TO ENFORCE IS FILED IN THE BANKRUPTCY CASE ............... 10

III.  STANDARD OF REVIEW ............................................................. 11

    A.  LEGAL STANDARD FOR A MOTION TO DISMISS ................................ 11

    B.  LEGAL STANDARD FOR A MOTION TO STAY PROCEEDINGS ................... 12

IV.  LAW AND ARGUMENT .................................................................. 12

    A.  THE CITY SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE
       PLAINTIFF'S CLAIMS WERE DISCHARGED AND BARRED BY THE
       CONFIRMATION ORDER AND BAR DATE ORDER ENTERED IN THE CITY'S
       BANKRUPTCY CASE ................................................................. 12

    B.  THE CITY SHOULD BE DISMISSED WITH PREJUDICE BECAUSE NIXON
       ACCEPTED AN AWARD UNDER MICHIGAN'S WRONGFUL IMPRISONMENT
       COMPENSATION ACT ............................................................... 16

    C.  THE CITY SHOULD BE DISMISSED WITH PREJUDICE BECAUSE NIXON'S
       CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY .............................. 17

    D.  NIXON'S CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED WITH PREJUDICE
       UNDER THE INTRACORPORATE CONSPIRACY DOCTRINE ...................... 17

    E.  ANY CLAIM FOR PUNITIVE DAMAGES AGAINST THE CITY SHOULD BE
       DISMISSED WITH PREJUDICE ...................................................... 18

    F.  ANY CLAIM FOR DECLARATORY RELIEF SHOULD BE DISMISSED WITH
       PREJUDICE ........................................................................... 18

    G.  THIS LAWSUIT SHOULD BE STAYED UNTIL A FINAL ORDER IS ENTERED ON
       THE MOTION TO ENFORCE ......................................................... 18

V.    CONCLUSION .................................................................................. 19

## ISSUES PRESENTED

I.     Whether Plaintiff's claims against the City of Detroit should be dismissed because they were discharged, barred, and enjoined by the Confirmation Order and Bar Date Order in the City of Detroit's Bankruptcy Case?

City of Detroit states "Yes," Plaintiff states "No"

II.    Whether Plaintiff's claims against the City of Detroit should be dismissed with prejudice because Nixon accepted an award under Michigan's Wrongful Imprisonment Compensation Act?

City of Detroit states "Yes," Plaintiff states "No"

III.   Whether Plaintiff's claims against the City of Detroit should be dismissed with prejudice because Nixon's claims are barred by sovereign immunity?

City of Detroit states "Yes," Plaintiff states "No"

IV.    Whether Plaintiff's claims against the City of Detroit should be dismissed with prejudice under the intracorporate conspiracy doctrine?

City of Detroit states "Yes," Plaintiff states "No"

V.     Whether any claims Plaintiff may assert against the City of Detroit for punitive damages should be dismissed with prejudice?

City of Detroit states "Yes," Plaintiff states "No"

VI.    Whether any claims Plaintiff may assert against the City of Detroit for declaratory relief should be dismissed with prejudice?

City of Detroit states "Yes," Plaintiff states "No"

VII.   Whether this lawsuit should be stayed until the Bankruptcy Court enters a final order on the Motion to Enforce?

City of Detroit states "Yes," Plaintiff states "No"

41027068.9/022765.00213

## CONTROLLING AUTHORITY

| Issue | Cases |
|---|---|
| I | *In re City of Detroit, Mich.*, <br>    548 B.R. 748 (Bankr. E.D. Mich. 2016) <br><br> *In re City of Detroit, Mich.*, <br>    642 B.R. 807 (Bankr. E.D. Mich. 2022) <br><br> *Sanford v. City of Detroit*, <br>    No. 17-13062, 2018 WL 6331342 (E.D. Mich. Dec. 4, 2018) |
| II | *Clark v. Abdallah*, <br>    No. 21-10001, 2023 WL 4851410 (E.D. Mich. July 28, 2023) <br><br> *DeJesus v. Harvey*, <br>    No. 22-CV-12879, 2023 WL 4372682 (E.D. Mich. July 6, 2023) |
| III | *Cady v. Arenac Cty.*, <br>    574 F.3d 334 (6th Cir. 2009) |
| IV | *Amadasu v. The Christ Hosp.*, <br>    514 F.3d 504 (6th Cir. 2008) |
| V | *City of Newport v. Fact Concerts, Inc.*, <br>    453 U.S. 247 (1981) |
| VI | *Preiser v. Newkirk*, <br>    422 U.S. 395 (1975) |
| VII | *Ohio Envtl. Council v. U.S. Dist. Court*, <br>    565 F.2d 393 (6th Cir. 1977) |

- iii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amadasu v. The Christ Hosp.*,
   514 F.3d 504 (6th Cir. 2008) ..............................................................................17

*Burton v. Sanders*,
   No. 20-11948, 2021 WL 168543 (E.D. Mich. Jan. 1, 2021) ......................13, 14

*Cady v. Arenac Cty.*,
   574 F.3d 334 (6th Cir. 2009) ..............................................................................17

*In re City of Detroit, Mich.*,
   548 B.R. 748 (Bankr. E.D. Mich. 2016) ................................................12, 13, 14

*In re City of Detroit, Mich.*,
   642 B.R. 807 (Bankr. E.D. Mich. 2022) .............................................................15

*City of Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981) ............................................................................................18

*Clark v. Abdallah*,
   No. 21-10001, 2023 WL 4851410 (E.D. Mich. July 28, 2023) ..........................16

*DeJesus v. Harvey*,
   No. 22-CV-12879, 2023 WL 4372682 (E.D. Mich. July 6, 2023) .....................16

*English v. Wooten*,
   No. 19-cv-12463, 2020 WL 871287 (E.D. Mich. Feb. 21, 2020) ......................12

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*,
   926 F.2d 505 (6th Cir. 1991) ..............................................................................17

*Jackson v. City of Columbus*,
   194 F.3d 737 (6th Cir. 1999) ..............................................................................17

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ............................................................................................12

*Mobley v. City of Detroit*,
   938 F. Supp. 2d 688 (E.D. Mich. 2013) .............................................................12

- iv-

*Monson v. City of Detroit*,
    No. 18-10638, 2019 WL 1057306 (E.D. Mich. Mar. 6, 2019).....................13, 14

*Nixon v. McQuiggin*,
    No. 10-14652, 2012 WL 5471128 (E.D. Mich. Nov. 9, 2012) ..........................10

*Ohio Envtl. Council v. U.S. Dist. Court*,
    565 F.2d 393 (6th Cir. 1977) ..............................................................................12

*People v. Nixon*,
    No. 266033, 2007 WL 624704 (Mich. Ct. App. Mar. 1, 2007)...................1, 6, 7

*Preiser v. Newkirk*,
    422 U.S. 395 (1975)............................................................................................18

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*,
    513 F. Supp. 3d 761 (E.D. Mich. 2021) ............................................................11

*Rhodes v. Stewart*,
    488 U.S. 1 (1988)................................................................................................18

*Sanford v. City of Detroit*,
    No. 17-13062, 2018 WL 6331342 (E.D. Mich. Dec. 4, 2018)....................13, 14

*Taxpayers for Michigan Const. Gov't v. Dep't of Tech., Mgmt. & Budget*,
    972 N.W.2d 738 (Mich. 2021)............................................................................16

*United States v. High Tech. Prod., Inc.*,
    497 F.3d 637 (6th Cir. 2007) .............................................................................18

**Statutes**

42 U.S.C. § 1983 ........................................................................................................18

Mich. Comp. Laws § 691.1752(e) .............................................................................16

Mich. Comp. Laws § 691.1755(8) .............................................................................16

**Court Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................16, 17, 18

## I.    INTRODUCTION

Plaintiff Kenneth Nixon's ("Plaintiff" or "Nixon") claims against the City of Detroit ("City") should be dismissed with prejudice because they were discharged, barred, and enjoined by City's bankruptcy plan, the order confirming the plan, and the order requiring all creditors to file proofs of claim in the City's bankruptcy case. For years before the City filed for bankruptcy, including during his trial in 2005, subsequent appeals, and a petition for habeas corpus, Plaintiff proclaimed his innocence.  Yet, even though all of these actions were taken prior to the City's bankruptcy filing, Plaintiff failed to file a proof of claim in the City's bankruptcy case.  As a result, Plaintiff fails to state a claim upon which relief may be granted because his claims against the City have been discharged.

Additionally, Plaintiff fails to state a claim upon which relief may be granted because (1) he accepted an award under Michigan's Wrongful Imprisonment Compensation Act, barring the relief he now seeks; (2) his claims are barred by sovereign immunity; (3) his civil conspiracy claim is barred by the intracorporate conspiracy doctrine; (4) his punitive damage claims cannot be asserted against the City because it is a municipality; and (5) his request for declaratory relief is moot.

Alternatively, the City requests that this Court stay this lawsuit until the bankruptcy court adjudicates a motion the City filed in the bankruptcy court to enforce the bankruptcy court's orders against Nixon.

## II.    STATEMENT OF FACTS

### A.    The City's Bankruptcy Case

On July 18, 2013 ("Petition Date"), the City filed a chapter 9 bankruptcy case in the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court"), commencing case number 13-53846 ("Bankruptcy Case"). On October 10, 2013, the City filed its *Motion Pursuant to Section 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* ("Bar Date Motion") [Bankruptcy Case Doc. No. 1146], which was approved by order of this Court on November 21, 2013 ("Bar Date Order"). [Bankruptcy Case Doc. No. 1782].  The Bar Date Order is attached as **Exhibit 1**.

The Bar Date Order established February 21, 2014, as the deadline for filing claims against the City.  Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6.

Paragraph 22 of the Bar Date Order also provides that:

Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

Nixon did not file a proof of claim in the Bankruptcy Case.

On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit* ("Plan"), which the Bankruptcy Court confirmed on November 12, 2014. [Bankruptcy Case Doc. Nos. 8045 & 8272]. The Confirmation Order is attached as **Exhibit 2** (the Plan is attached as Appendix 1 to the Confirmation Order).

The discharge provision in the Plan provides:

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy

Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4, at p.50.

Further, the Plan injunction set forth in Article III.D.5 of the Plan provides

in pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

**a.  all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**

**1.     commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…**

**5.     proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**

**6.     taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5, at pp.50-51 (emphasis added).

The Bankruptcy Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation, or enforcement of the Plan.  Plan, Art. VII.F, G, I, at p.72.

### B.   Nixon's lawsuit against the City

On June 28, 2023, Nixon filed a complaint ("Complaint") against the City and five named police officers and other unidentified employees of the Detroit Police Department ("Defendant Officers") in their individual capacity,[1] in this Court, commencing case number 23-11547 ("Lawsuit").  Doc. No. 1, Complaint ¶¶ 18-19, PageID.5.

In the Complaint, Nixon alleges that very late at night on May 19, 2005, a fire broke out at 19428 Charleston Street, Detroit and that two children of the five children living in the house perished in the fire.  Complaint ¶¶ 20-21, PageID.6.

Nixon asserts that he "had absolutely nothing to do with this crime.  At the time of the fire, Mr. Nixon was at home with Latoya Caulford, his then-girlfriend and the mother of his child, and some of Ms. Caulford's family members."  Complaint ¶ 24, PageID. 6.

Nixon asserts that notwithstanding his "absolute innocence," he was arrested shortly after the fire based on a fabricated story from one of the children, Brandon Vaughn, who resided at 19428 Charleston Street.  Complaint ¶¶ 28-36. PageID. 7-8.

---

[1] The Complaint does not appear to assert claims against the Defendant Officers in their official capacity.  However, the City requests that this Court enter an order requiring the dismissal of any claims against the Defendant Officers in their official capacity as Nixon does not clearly state whether the claims against the Defendant Officers are limited to their individual capacity.

5

Nixon further asserts that the Defendants coerced an informant who resided in the same cellblock as Nixon to falsely state that Nixon had confessed to the crime. Complaint ¶¶ 49-57, PageID.11-12.

Nixon asserts that based on Vaughn's "coached testimony" and the "informant's fabricated testimony" he was convicted of arson, murder, and attempted murder.  Nixon was convicted on September 21, 2005.  Complaint ¶ 1.  At his sentencing, Nixon stated: "I would just like you to know that you're about to sentence an innocent man to prison."  Complaint ¶¶ 59-60, PageID.12-13.

Nixon further asserts that "Never giving up hope on proving his innocence, Plaintiff continued to pursue appeals and other means to secure his freedom." Complaint ¶¶ 6, 62, PageID.3, 13.

In this lawsuit, Nixon seeks damages "for the period from May 20, 2005, the date he was falsely arrested and imprisoned, through each and every year to the present and into the future."  Complaint ¶ 88, PageID.21.

### C.    Nixon unsuccessfully appeals his conviction

Nixon unsuccessfully appealed his conviction.  *People v. Nixon*, No. 266033, 2007 WL 624704 (Mich. Ct. App. Mar. 1, 2007); *see also* **Exhibit 3**, Petition for Habeas Corpus ("Petition"), Appendix Item #1, PageID.69.  In his appeal, Nixon asserted that he was entitled to a new trial on the grounds of newly discovered evidence.  *Nixon*, 2007 WL 624704 at *1.  Specifically, Nixon claimed that his

codefendant and girlfriend, Latoya Caulford, who was acquitted of all charges in a separate jury trial, came forward after his trial and stated that Nixon did not commit the crimes because, when they occurred, he was with her in her room at a different home. *Id.* The court of appeals found that this was not newly discovered evidence and thus Nixon was not entitled to a new trial. *Id.*

On appeal, Nixon also argued that the trial court abused its discretion when it allowed the prosecutor to play portions of his telephone calls from jail. *Id.* The court of appeals rejected this argument and found that the telephone calls were relevant. *Id*. at *2.

Nixon further argued that the trial court erred when it admitted Brandon Vaughn's statement that identified Nixon as the person who started the fire. *Id.* at *3. The court of appeals found that the statements were not hearsay, but even if they were, they would be admissible as excited utterances. *Id.*

Finally, Nixon asserted that he was denied effective assistance of counsel. The court of appeals also rejected this argument and stated that Nixon "clearly was not deprived of a fair trial." *Id.* at *4.

The court of appeals affirmed the trial court on March 1, 2007. *Id.*

The Michigan Supreme Court denied leave to appeal on September 10, 2007, and denied reconsideration on November 29, 2007. Petition, PageID.3-4, 75-76, Appendix Items ## 2-3.

Nixon also filed a motion for relief from judgment in the trial court on December 8, 2008. *Id.* The trial court considered the merits of all the issues and denied relief by Opinion and Order entered July 17, 2009. Petition, PageID.3-4, 77, Appendix Item #4.

Application for leave to appeal was filed and denied by the Michigan Court of Appeals on November 23, 2009, in docket no. 293476. Petition, PageID.3-4, 79, Appendix Item #5. Application for leave to appeal was also denied by the Michigan Supreme Court in docket number 140403, on September 9, 2010. Petition, PageID.3-4, 80, Appendix Item #6.

### D.   Nixon's application for Writ of Habeas Corpus is denied

On November 23, 2010, Nixon filed the Petition. The Petition was 102 pages, cited over 85 cases, and contained 13 exhibits. *Id.*

In the Petition, Nixon asserted that there that was newly discovered evidence of actual innocence, that his counsel was ineffective, that his conviction was based on perjured evidence, that he was denied a fair trial due to prosecutorial misconduct, and that his appellate counsel was constitutionally ineffective.

With respect to actual innocence, Nixon asserted that he had newly discovered evidence of actual innocence, which included evidence that the informant "fabricated testimony for the express purpose of obtaining early release so he could be home for his daughter's graduation." Petition, PageID.5.

Nixon also argued ineffective assistance of counsel.  Petition, PageID.5-8.  He asserted that his counsel was ineffective because his counsel did not obtain the results from a polygraph test he allegedly passed, failed to properly prepare witnesses, and failed to elicit testimony from witnesses which would have proven his innocence.  *Id.*

Nixon submitted a six-page affidavit in support of the Petition.  Petition, PageID.81, Appendix Item #7.  In the affidavit, Nixon again asserted that he was innocent.  PageID.82, paragraph 7.  He also filed the alleged polygraph results as appendix item 8.  Petition, PageID.87-88.  The polygrapher concluded that Nixon was being truthful when he denied committing the crime.  *Id.*  He further submitted affidavits and polygraph results from his girlfriend wherein she claimed that Nixon was with her when the crime was committed.  Petition, PageID.89-94, Appendix Items ## 9-10.

On September 28, 2012, the Magistrate Judge issued a 37-page report and recommendation, which recommended that the Court deny the Petition.  **Exhibit 4**, Report and Recommendation.

On October 11, 2012, Nixon filed his objections to the Report and Recommendation ("Objection").  **Exhibit 5,** Objection.  In the Objection, Nixon again advanced several objections based on his claim of actual innocence.

9

Objection, PageID.1804-1807.  Nixon advanced several other objections, including

that he passed a polygraph test.  Objection, PageID.1807-1815.

On November 12, 2012, the District Court issued a memorandum and order

overruling Nixon's objections to the Report and Recommendation and denying

Nixon's application for a writ of habeas corpus. *Nixon v. McQuiggin*, No. 10-14652,

2012 WL 5471128, at *1 (E.D. Mich. Nov. 9, 2012).

**E.      Kenneth Nixon is released and obtains compensation under WICA**

In 2018, Nixon's case was allegedly investigated by the Wayne County

Conviction Integrity Unit.  PageID.3.  On February 18, 2021, the Wayne County

Circuit Court entered a stipulated order vacating Nixon's conviction.  PageID.33.  In

January 2022, Nixon filed a complaint in the Michigan Court of Claims for

compensation under Michigan's Wrongful Imprisonment Compensation Act

("WICA").  **Exhibit 6**, Register of Actions.  A stipulated order of judgment was

entered on December 5, 2022.  Register of Actions.

**F.      The Motion to Enforce is filed in the Bankruptcy Case**

On August 24, 2023, the City filed its *Motion for the Entry of an Order*

*Enforcing the Bar Date Order and Confirmation Order Against Kenneth Nixon* at

docket number 13722 ("Motion to Enforce") in the Bankruptcy Case.  The Motion

to Enforce is attached as **Exhibit 7**.  The deadline for Nixon to file a response to the

Motion to Enforce is September 11, 2023.[2]  In the Motion to Enforce, the City

requests that the Bankruptcy Court enter an order requiring Nixon to dismiss, or

cause to be dismissed, with prejudice the City from this lawsuit because the claims

asserted in this lawsuit are discharged, barred, and enjoined by the Confirmation

Order and the Bar Date Order.

## III.   STANDARD OF REVIEW

### A.   Legal standard for a motion to dismiss

As this Court has held:

> When deciding a motion to dismiss under Federal Rule of Procedure
> 12(b)(6), the Court must "construe the complaint in the light most
> favorable to the plaintiff and accept all allegations as true." *Keys v.
> Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion
> to dismiss, a complaint must contain sufficient factual matter, accepted
> as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft
> v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
> (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (2007)).  A plaintiff's claim is facially plausible
> "when the plaintiff pleads factual content that allows the court to draw
> the reasonable inference that the defendant is liable for the misconduct
> alleged."  *Id.*  A plausible claim need not contain "detailed factual
> allegations," but it must contain more than "labels and conclusions" or
> "a formulaic recitation of the elements of a cause of action." *Twombly*,
> 550 U.S. at 555, 127 S.Ct. 1955.

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 778 (E.D. Mich.

2021).

---

[2] Subject to the Bankruptcy Court's approval, the City has agreed to an extension
of this deadline to September 20, 2023.

**B.      Legal standard for a motion to stay proceedings**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Ohio Envtl. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977) (quoting *Landis*); *English v. Wooten*, No. 19-cv-12463, 2020 WL 871287, at *2 (E.D. Mich. Feb. 21, 2020) (quoting *Ohio Envtl. Council*).

> It is within the Court's sound discretion whether to grant a stay of proceedings. *Ohio Environmental Council v. United States District Court*, 565 F.2d 393, 396 (6th Cir. 1977). The "burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.*

*Mobley v. City of Detroit*, 938 F. Supp. 2d 688, 690 (E.D. Mich. 2013).

## IV.   LAW AND ARGUMENT

**A.      The City should be dismissed with prejudice because the Plaintiff's Claims were discharged and barred by the Confirmation Order and Bar Date Order entered in the City's Bankruptcy Case**

The City should be dismissed with prejudice from this lawsuit because Nixon has failed to state a claim upon which relief can be granted as his claims were discharged and barred by the Confirmation Order and Bar Date Order. Under the "fair contemplation" test, Nixon's claim arose before the City's bankruptcy filing because, prior to the City's filing, Nixon "could have ascertained through the exercise of reasonable due diligence that he had a claim" against the City. *In re City*

*of Detroit, Mich.*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (internal quotation

marks and citation omitted).  Indeed, for years before the City filed for bankruptcy,

Nixon had been arguing that he was innocent.

> As the Bankruptcy Court explained:
>
> The Bankruptcy Code defines "claim" as a "right to payment, whether
> or not such right is reduced to judgment, liquidated, unliquidated, fixed,
> contingent, matured, unmatured, disputed, undisputed, legal, equitable,
> secured, or unsecured...."  11 U.S.C. § 101(5).  "Congress intended by
> this language to adopt the broadest available definition of 'claim,'"
> *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S. Ct. 2150, 115
> L.Ed.2d 66 (1991) (citations omitted), which includes "'all legal
> obligations of the debtor, no matter how remote or contingent.'"  *In re
> Huffy Corp.,* 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010) (quoting
> *Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198, 200 (4th Cir.1988)).  This
> broad definition serves the two primary goals of bankruptcy: to ensure
> that all creditors are treated equitably and to secure a fresh start for the
> debtor.  As the *Huffy* court put it, "a broad definition of claim allows a
> bankruptcy court to deal fairly and comprehensively with all creditors
> in the case and, without which, a debtor's ability to reorganize would
> be seriously threatened by the survival of lingering remote claims and
> potential litigation rooted in the debtor's prepetition conduct."  424 B.R.
> at 301.

*City of Detroit, Mich.*, 548 B.R. at 761.

This Court and the Bankruptcy Court have applied the "fair contemplation"

test to determine when a claim arises.  *Sanford v. City of Detroit*, No. 17-13062,

2018 WL 6331342, at *5 (E.D. Mich. Dec. 4, 2018); *see also Monson v. City of

Detroit*, No. 18-10638, 2019 WL 1057306 at *8-9 (E.D. Mich. Mar. 6, 2019); *Burton

v. Sanders*, No. 20-11948, 2021 WL 168543, at *4-6 (E.D. Mich. Jan. 1, 2021).

"Under this test, a claim is considered to have arisen pre-petition if the creditor

'could have ascertained through the exercise of reasonable due diligence that it had a claim' at the time the petition is filed. *City of Detroit*, 548 B.R. at 763.

For bankruptcy purposes, this Court and the Bankruptcy Court agree that a claim for a wrongful conviction does not accrue when the conviction is vacated. Instead, it arises when the claim first enters into the plaintiff's fair contemplation. In *Sanford*,[3] this Court noted:

> It must be said here that all Sanford's claims against the City were within his "fair contemplation" before the City declared bankruptcy. He certainly contemplated the factual bases underlying the claims raised in the complaint, since he attempted repeatedly to argue actual innocence before the state courts since at least 2008, insisting that his confession was falsely obtained, concocted, and coerced. Sanford correctly points out that he could not have sued the City until his convictions were set aside, which did not happen until after the bankruptcy. But the courts that have considered the question uniformly have concluded that claims based on prepetition malicious prosecutions were barred, notwithstanding that the plaintiff could not file suit on his claims until his criminal conviction was overturned.

*Sanford*, 2018 WL 6331342, at *5; *see also Monson*, 2019 WL 1057306 at *8-9; *Burton*, 2021 WL 168543, at *4-6.

In each of the above-cited cases, the Plaintiff asserted a claim for a wrongful conviction which had occurred prior to the City's bankruptcy filing. And, in each case, this Court held that the Plaintiff failed to state a claim against the City upon which relief could be granted.

---

[3] Plaintiff's counsel should be aware of the holding issued by the *Sanford* court, as Goodman & Hurwitz, P.C. is listed as representing the plaintiff in that lawsuit.

This issue has also arisen repeatedly in the City's Bankruptcy Case. *In re City of Detroit, Mich.*, 642 B.R. 807, 810 (Bankr. E.D. Mich. 2022); Bankruptcy Case, Doc. Nos. 11159 and 11296 (motion and resulting order attached as **Exhibit 8**); Doc. Nos. 13000 and 13025 (motion and resulting order attached as **Exhibit 9**). Similar to this Court, the Bankruptcy Court recognized in each instance that, because the events that gave rise to the asserted claim occurred prepetition, the claimant was able to (or should have been able to) contemplate that he had potential claims against the City and, accordingly, file a proof of claim in the City's Bankruptcy Case if he wished to participate in the case and recover on the claim.

The instant situation is no different. Nixon's lawsuit is based on claims stemming from actions that culminated in a conviction in 2005. Complaint ¶ 1. Nixon has proclaimed his innocence since 2005, including at trial, in several lengthy appeals, and in a petition for habeas corpus, all of which were denied. Each of these proclamations of innocence and events occurred prior to the City's bankruptcy filing.

Thus, as this Court and the Bankruptcy Court have held each time this issue has been before them, Nixon should have filed a proof of claim in the City's Bankruptcy Case if he wanted to assert a claim against the City. He did not. His claims were discharged by the Plan and Confirmation Order. He is barred, estopped, and enjoined from asserting any claim against the City or property of the City under

the Bar Date Order and Confirmation Order.  Consequently, the City should be

dismissed with prejudice from this lawsuit.

**B.    The City should be dismissed with prejudice because Nixon accepted an award under Michigan's Wrongful Imprisonment Compensation Act**

An award or settlement under Michigan's WICA statute "constitutes a

complete release of all claims against this state."  Mich. Comp. Laws § 691.1755(8).

The term "this state" means "the state of Michigan and its political subdivisions."

Mich. Comp. Laws § 691.1752(e).   A political subdivision of the state includes

cities.  *See Taxpayers for Michigan Const. Gov't v. Dep't of Tech., Mgmt. & Budget*,

972 N.W.2d 738, 750 (Mich. 2021) ("political subdivision" is a "geographically

limited unit of government formed to exercise political power and that is beholden

to a local electorate").

As such, any civil claim against a city is released when the plaintiff accepts

an award or settlement under WICA.  *See Clark v. Abdallah*, No. 21-10001, 2023

WL 4851410 (E.D. Mich. July 28, 2023); *DeJesus v. Harvey*, No. 22-CV-12879,

2023 WL 4372682, at *1 (E.D. Mich. July 6, 2023).  Here, Nixon stipulated to an

order of judgment under WICA in December 2022.  Any claim he has against the

City of Detroit is released under WICA, making dismissal appropriate under Fed. R.

Civ. P. 12(b)(6).

**C.    The City should be dismissed with prejudice because Nixon's claims are barred by sovereign immunity**

Sovereign immunity applies when a plaintiff's claims are based upon actions undertaken to enforce Michigan's criminal laws through criminal proceedings – because such acts are performed as an arm of the state.  *See Cady v. Arenac Cty.,* 574 F.3d 334, 343 (6th Cir. 2009).  The basis of Nixon's complaint is that he was unlawfully prosecuted without probable cause and with fabricated evidence.  Thus, the actions he complains of stem from Defendant's enforcement of Michigan's criminal laws through criminal proceedings, and sovereign immunity applies.  This makes dismissal appropriate under Fed. R. Civ. P. 12(b)(6).

**D.    Nixon's civil conspiracy claim should be dismissed with prejudice under the intracorporate conspiracy doctrine**

The intracorporate conspiracy doctrine bars a civil conspiracy claim where the alleged co-conspirators are part of the same collective entity.  *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991); *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008); *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999).  Nixon alleges that Defendants conspired to violate his constitutional rights.  PageID.30.  He identifies no alleged co-conspirator outside of City of Detroit employees.   This claim is properly dismissed under Fed. R. Civ. P. 12(b)(6) because the alleged co-conspirators are all part of the same collective entity – the City of Detroit.

17

### E.   Any claim for punitive damages against the City should be dismissed with prejudice

The United States Supreme Court has held "that a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Nixon claims punitive damages in his complaint. PageID.22, 37-38.  Under *City of Newport*, any claim for punitive damages from the City of Detroit is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### F.   Any claim for declaratory relief should be dismissed with prejudice

A request for declaratory relief is moot where there is "no reasonable expectation that the wrong will be repeated."  *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (internal quotation marks and citation omitted); *see also Rhodes v. Stewart*, 488 U.S. 1, 4 (1988); *United States v. High Tech. Prod., Inc.*, 497 F.3d 637, 643 (6th Cir. 2007).  Nixon requests "declaratory relief in the form of an order relating to the City of Detroit's liability."  PageID.38.  However, Nixon has been released from prison and "all charges" against him dismissed.  PageID.13.  As such, there is no reasonable expectation that the alleged wrongs against him will be repeated.  This makes any request for declaratory relief moot, and dismissal appropriate.

### G.   This Lawsuit should be stayed until a final order is entered on the Motion to Enforce

If this Court should decide not to dismiss this case outright at this time, it should stay proceedings until the Bankruptcy Court has a chance to rule on the Motion to Enforce.  Should the Bankruptcy Court grant the Motion to Enforce, this

Court will be better informed as to how to structure these proceedings as to the remaining defendants. And, though the City does not expect this outcome, should the Motion to Enforce be denied, this Court will be able to advance this matter against all defendants in lockstep, rather than having pieces of the litigation proceed piecemeal.

## V.    CONCLUSION

The City respectfully requests that this Court dismiss the City (and any official capacity claims against any of the Individual Defendants) with prejudice from this lawsuit, or, in the alternative, enter an order staying this lawsuit until the Bankruptcy Court enters a final order on the Motion to Enforce, and grant such further relief as the Court may deem just and proper.

Dated: September 5, 2023              Respectfully submitted,

                                                        MILLER, CANFIELD, PADDOCK AND
                                                        STONE, P.L.C.

                                                        By: /s/ Marc N. Swanson
                                                        Marc N. Swanson (P71149)
                                                        Ronald A. Spinner (P73198)
                                                        150 West Jefferson, Suite 2500
                                                        Detroit, Michigan 48226
                                                        Telephone: (313) 496-7591
                                                        Facsimile: (313) 496-8451
                                                        swansonm@millercanfield.com
                                                        spinner@millercanfield.com
                                                        Attorneys for the City of Detroit

19

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 5, 2023, he electronically filed the foregoing and this Certificate of Service with the court using the Court's ECF system which will provide notice of the filing to all counsel of record on September 5, 2023.

The undersigned further certifies that on September 5, 2023, a copy of the foregoing was also served upon the parties listed below, via first class mail:

Jon Loevy
Gayle Horn
Isabella Aguilar
Loevy & Loevy
311 North Aberdeen Street
Ste 3rd Floor
Chicago, IL 60607

Julie H. Hurwitz
Kathryn Bruner James
Goodman and Hurwitz, P.C.
1394 E. Jefferson Avenue
Detroit, MI 48207

Christopher J. Raiti
Kristine Baker
Nathan & Kamionski LLP
500 Griswold
Ste 2300
Detroit, MI 48226

Avi Kamionski
Shneur Zalman Nathan
Nathan & Kamionski LLP
33 W. Monroe
Suite 1830
Chicago, IL 11803

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Dated:  September 5, 2023