U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH NIXON,

          Plaintiff,                    Case No. 5:23-cv-11547-JEL-EAS

                                    Judge Judith E. Levy

v.                                Magistrate Judge Elizabeth A. Stafford

CITY OF DETROIT, DETECTIVE
MOISES JIMENEZ, COMMANDER
JAMES TOLBERT, DETECTIVE
KURTISS STAPLES, SGT. EDDIE
CROXTON, OFFICER ALMA
HUGHES-GRUBBS, AND OTHER
AS-OF-YET UNKNOWN
EMPLOYEES OF THE CITY OF
DETROIT,

          Defendants.

_____

## PLAINTIFF'S RESPONSE TO DEFENDANT OFFICERS' MOTION TO DISMISS IN LIEU OF ANSWER

NOW COMES Plaintiff Kenneth Nixon, by and through his Attorneys, Goodman Hurwitz & James, P.C. and Loevy & Loevy, and hereby responds in opposition to Defendant Officers' Motion to Dismiss In Lieu Of An Answer ("Defendant Officers' Motion") [ECF 34]. Plaintiff relies on the arguments set forth in his Brief below and requests this Court to enter an order denying Defendant Officer's Motion in part and granting in part.

Respectfully submitted,
/s/ Gayle Horn
*One of the Attorneys for Plaintiff*

Jon Loevy
Arthur Loevy
Gayle Horn
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

Julie Hurwitz
Kathryn Bruner James
Goodman Hurwitz & James, P.C.
1394 E. Jefferson Avenue
Detroit, MI 48207
313.567.6170
313.251.6068 (fax

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................1

STATEMENT OF FACTS ........................................................ 1

STANDARD ..............................................................................2

ARGUMENT ............................................................................2

I.      Plaintiff Has Sufficiently Pled Defendant Tolbert's and Staples's Involvement in Plaintiff's Fabrication Claim ........................................................2

II.     Plaintiff Sufficiently Pled Fabrication ............................................5

    A. Standard. ....................................................................5

    B. Plaintiff Has Pled that the Defendant Officers Fabricated Mahdi's Statement and Destroyed Plaintiff's Alibi .................................6

    C. Plaintiff Has Sufficiently Pled that the Fabricated Polygraph Affected the Decision of the Jury ...............................................9

    D. Plaintiff Has Sufficiently Pled that the Fabricated Informant Testimony Affected the Decision of the Jury ........................................10

III.    Plaintiff Sufficiently Pled His *Brady* Theory ............................. 10

    A. Plaintiff's Alternative Perpetrator Allegations Are Not Vague

    B. Plaintiff Has Pled that the Failure to Disclose the Withheld Evidence Prejudiced Him ...........................................................13

IV.     Plaintiff's Illegal Detention Claim Is Timely ...............................15

V.      Plaintiff's Failure to Intervene and Supervisor Liability Claims Are Timely ......................................................................16

VI.     Plaintiff Sufficiently Pled Failure to Intervene .............................17

VII.   Plaintiff Sufficiently Pled Supervisor Liability Against Defendants Staples and Tolbert ................................................................................21

VIII.   Plaintiff's Conspiracy Claim Should Not Be Dismissed ..............................23

    A.  Plaintiff's Conspiracy Claim Is Timely ....................................................24

    B.  The Intracorporate Conspiracy Doctrine Does Not Bar Plaintiff's Claim ......................................................................................................27

    C.  Plaintiff Sufficiently Pled Conspiracy ....................................................29

IX.   Plaintiff's State Law Causes of Action .........................................................30

CONCLUSION ..........................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Anders v. Cuevas*, 984 F.3d 1166 (6th Cir. 2021) .................................................2

*Anderson v. Knox Cnty*, No. CV 6:17-133-KKC, 2018 WL 7500205 (E.D. Ky. Oct. 3, 2018) ...............................................................................................................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................2

*Bass v. Robinson*, 167 F.3d 1041 (6th Cir. 1999).................................................21

*Bazzi v. City of Dearborn*, 658 F.3d 598 (6th Cir. 2011) ........................................25

*Beaman v. Souk*, 7 F. Supp. 2d 805 (C.D. Ill. 2014) .............................................14

*Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015) ..........................................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).....................................................2

*Bies v. Sheldon*, 775 F.3d 386 (6th Cir. 2014)...........................................................13

*Bills v. Adair*, No. 08-12207, 2009 WL 440642 (E.D. Mich. Feb. 23, 2009)....26, 27

*Boyette v. Lefevre*, 246 F.3d 76 (2d Cir. 2001)...........................................................13

*Brady v. Maryland*, 373 U.S. 83 (1963)............................................................4, 13

*Brady Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003)....................................15

*Bunkley v. City of Detroit*, 902 F.3d 552 (6th Cir. 2018) .................................... 18

*Campbell v. City of Springboro*, 700 F.3d 779 (6th Cir. 2012)...............................21

*Carrillo v. City of Los Angeles*, 798 F.3d 1210 (9th Cir. 2015)..............................14

*Cf. Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2000) .............................................28

*Crawford v. Cain*, No. CIV. A. 04-0748, 2006 WL 1968872 (E.D. La. July 11, 2006), *aff'd*, 248 Fed. Appx. 500 (5th Cir. 2007) .........................................14

*Cristini v. City of Warren*, No. 07-11141, 2012 WL 5508369 (E.D. Mich. Nov. 14, 2012) .................................................................................................24, 27

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014)......................................24, 27

*Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 426 (E.D. Pa. 2019), *aff'd in part, appeal dismissed in part*, 19 F.4th 279 (3d Cir. 2021) ..........................7

*Doe v. City of Roseville*, 296 F.3d 431 (6th Cir. 2002) ............................................22

*Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) ...................................................................................................................24

*Garva v. Lansing Sch. Dist.*, 972 F.3d 853 (6th Cir. 2020).......................................5

*Giglio v. U.S.*, 405 U.S. 150 (1972) ........................................................................14

*Giron v. Tyco Electronics Corporation*, No. 2:16-CV-11803, 2016 WL 7405805 (E.D. Mich. Dec. 22, 2016) ...........................................................................12

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ................................5, 15

*Guertin v. Michigan*, No. 16-CV-12412, 2017 WL 2418007 (E.D. Mich. June 5, 2017), *aff'd in part, rev'd in part*, 912 F.3d 907 (6th Cir. 2019).................18

*Haliburton v. City of Ferndale*, No. 2:21-CV-10864, 2023 WL 581651 (E.D. Mich. Jan. 27, 2023).................................................................................17, 20, 21

*Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) ........................................................8

*Harris v. Goins*, 156 F. Supp. 3d 857 (E.D. Ky. 2015)............................................30

*Heck v. Humphrey*, 512 U.S. 477 (1994) ...............................................24, 25, 26, 27

*Hincapie v. City of New York*, 434 F. Supp. 3d 61 (S.D.N.Y. 2020).....................3, 5

*Holland v. Cnty. of Macomb*, No. 16-2103, 2017 WL 3391653 (6th Cir. Mar. 17, 2017) .........................................................................................................25, 27

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985)....................................................25, 29

*Horn v. City of Covington*, No. 2:14-cv-73-DLB, 2015 WL 4042154 (E.D. Ky. July 1, 2015) ...................................................................................................18

*Hoskins v. Knox County*, No. CV 17-84-DLB-HAI, 2018 WL 1352163 (E.D. Ky. March 15, 2018)................................................................12, 16, 18, 22

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019) ...........................3, 8, 27

*Jackson v. County of Washtenaw*, Nos. 07–2513, 08–1206, 310 Fed. Appx. 6, (6th Cir. 2009) ....................................................................................................15

iv

*Jackson v. Nassau County*, 552 F. Supp. 3d 350 (E.D.N.Y. 2021) ........................4, 5

*Jamison v. Collins,* 291 F.3d 380 (6th Cir. 2002) ....................................................13

*Kreps v. Michigan Unemployment Ins. Agency*, No. 22-12020, 2023 WL 4494339, (E.D. Mich. July 12, 2023) .................................................................................18

*Kuhn v. Washtenaw County*, 709 F.3d 612 (6th Cir. 2013).......................2, 4, 11, 17

*Kyles v. Whitley*, 514 U.S. 419 (1995) .................................................................4, 13

*Marvaso v. Sanchez*, 971 F.3d 599 (6th Cir. 2020)..............................................9, 30

*McCune v. City of Grand Rapids*, 842 F.2d 903 (6th Cir. 1988) ...........................26

*McDonough v. Smith*, 139 S. Ct. 2149 (2019) ............................................15, 24, 27

*McIntyre v. Unified Govt. of Wyandotte County & Kansas City*, No. CV 18-2545-KHV, 2022 WL 2337735 (D. Kansas June 28, 2022) ...................................7

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) ...............................................13

*Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018) .........................................................4

*Memphis, Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004)........................................................ 29

*Mendez v. Artuz*, 303 F.3d 411 (2d Cir. 2002)........................................................14

*Monson v. Ghougoian*, No. 18-10638, 2022 WL 17477140 (E.D. Mich. Dec. 6, 2022) ............................................................................................................10

*Muslim Community Ass'n of Ann Arbor and Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752 (E.D. Mich. 2013) ...............................................................18

*Patrick v. City of Chicago*, 81 F.4th 730 (7th Cir. 2023) .......................................25

*Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016)..............................21, 23

*Phillips v. Roane Cty.*, 534 F.3d 531 (6th Cir. 2008) ........................................21, 23

*Price v. Montgomery County*, 72 F.4th 711 (6th Cir. 2023)................................8, 9

*Rapp v. Putman*, No. 15 C 1995, 644 F. App'x 621 (6th Cir. 2016).......................26

*Rhodes v. R & L Carriers, Inc.*, No. 11-3054, 491 Fed. Appx. 579 (6th Cir. 2012).................................................................................................7

*Rideout v. Shelby Twp.*, No. 22-11597, 2023 WL 5917392 (E.D. Mich. Sept. 11, 2023) .................................................................................................18

*Rieves v. Town of Smyrna, Tenn.*, 67 F.4th 856 (6th Cir. 2023) ...............................29

*Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) ........................................ 21, 22, 23

*Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, No. 13–3423, 579 Fed. Appx. 348 (6th Cir. 2014) ...........................................................................................12

*Smith v. Cnty. of Lenawee*, No. 11-1523, 505 Fed. Appx. 526 (6th Cir. Nov. 12, 2012) ........................................................................................................28

*Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003) .............................................. 29

*Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997) .........................................5

*Stinson v. City of Milwaukee*, No. 09-C-1033, 2013 WL 5447916 (E.D. Wis. Sept. 30, 2013) ...................................................................................................28

*Stinson v. Gauger*, 799 F.3d 833 (7th Cir. 2015), *as corrected* (Aug. 26, 2015), *reh'g en banc granted, opinion vacated* (Dec. 3, 2015), *on reh'g en banc*, 868 F.3d 516 (7th Cir. 2017) ......................................................................28

*Tanner v. Walters*, No. 1:19-CV-849, 2022 WL 7945001 (W.D. Mich. Oct. 14, 2022) ..........................................................................................................9

*Turner v. Scott*, 119 F.3d 425 (6th Cir. 1997) .........................................................17

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003) ...........7

*United States v. Alahmedalabdaloklah*, 76 F.4th 1183 (9th Cir. 2023) ....................6

*Velez v. City of Chicago*, No. 1:18-CV-08144, 2023 WL 6388231 (N.D. Ill. Sept. 30, 2023) .....................................................................................................6

*Virgil v. City of Newport*, No. CV 16-224-DLB-CJS, 2018 WL 344986 (E.D. Ky. Jan. 9, 2018), *aff'd*, 745 Fed. Appx. 618 (6th Cir. 2018) ...........................3, 5

*Warren v. Pataki*, 823 F.3d 125 (2d Cir. 2016) .......................................................22

*Washington v. Boudreau*, Nos. 16-CV-01893, 16-CV-1970, 2022 WL 4599708 (N.D. Ill. Sept. 30, 2022) ..............................................................................6

*Watkins v. Healy*, No. 17-CV-13940, 2019 WL 3777631 (E.D. Mich. Aug. 12, 2019), *aff'd*, 986 F.3d 648 (6th Cir. 2021), *as corrected on denial of reh'g en banc* (March 16, 2021) ....................................................................15, 24, 27

*Weberg v. Franks*, 229 F.3d 514 (6th Cir. 2000) .......................................................29

*Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) .....................................................13

## **Other**

28 U.S.C. § 1915A .........................................................................................................26

Federal Rule of Civil Procedure 8(a) ...............................................................1, 13

## **MOST APPROPRIATE AUTHORITIES**

*Giglio v. U.S.*, 405 U.S. 150 (1972)

*Giron v. Tyco Electronics Corporation*, No. 2:16-CV-11803, 2016 WL 7405805 (E.D. Mich. Dec. 22, 2016)

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006)

*Haliburton v. City of Ferndale*, No. 2:21-CV-10864, 2023 WL 581651 (E.D. Mich. Jan. 27, 2023)

*Heck v. Humphrey*, 512 U.S. 477 (1994)

*Hincapie v. City of New York*, 434 F. Supp. 3d 61 (S.D.N.Y. 2020)

*Holland v. Cnty. of Macomb*, No. 16-2103, 2017 WL 3391653 (6th Cir. Mar. 17, 2017)

*Hoskins v. Knox County*, No. CV 17-84-DLB-HAI, 2018 WL 1352163 (E.D. Ky. March 15, 2018)

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019)

*Marvaso v. Sanchez*, 971 F.3d 599 (6th Cir. 2020)

*Price v. Montgomery County*, 72 F.4th 711 (6th Cir. 2023)

*Watkins v. Healy*, No. 17-CV-13940, 2019 WL 3777631 (E.D. Mich. Aug. 12, 2019), *aff'd*, 986 F.3d 648 (6th Cir. 2021), *as corrected on denial of reh'g en banc* (March 16, 2021)

## <u>QUESTIONS PRESENTED</u>

I.    Has Plaintiff properly pled his fabrication of evidence claim under the Fourteenth Amendment due process clause?
a.  Plaintiff's answer: Yes
b.  Defendant Officers' answer: No

II.   Has Plaintiff properly pled his withholding of evidence claim (also called a *Brady* claim) under the Fourteenth Amendment due process clause?
a.  Plaintiff's answer: Yes
b.  Defendant Officer's answer: No

III.  Has Plaintiff properly pled his malicious prosecution and illegal pre-trial detention claim?
a.  Plaintiff's answer: Yes
b.  Defendant Officer's answer: No

IV.   Are Plaintiff's federal malicious prosecution, failure to intervene, supervisor liability, and conspiracy claims timely?
a.  Plaintiff's answer: Yes
b.  Defendant Officers' answer: No

V.    Has Plaintiff properly pled his failure to intervene claim?
a.  Plaintiff's answer: Yes
b.  Defendant Officers' answer: No

VI.   Has Plaintiff properly pled his supervisor liability claim?
a.  Plaintiff's answer: Yes
b.  Defendant Officers' answer: No

VII.  Does the "intracorporate conspiracy doctrine" preclude Plaintiff from pursuing his conspiracy claim against Defendant Officers?
a.  Plaintiff's answer: No
b.  Defendant Officers' answer: Yes

VIII. Has Plaintiff properly pled his civil conspiracy claim?
a.  Plaintiff's answer: Yes
b.  Defendant Officers' answer: No

## INTRODUCTION

Plaintiff Kenneth Nixon spent nearly 16 years in prison for a tragic double homicide and arson he did not commit. The story of how Nixon was wrongfully convicted starts with the Defendant Officers. Nixon alleges that Defendant Officers fabricated and suppressed evidence in order to falsely implicate him in the crime. It would take over a decade-and-a-half to secure Nixon's release.

Defendant Officers have moved to dismiss the entire case against them. Although Defendant Officers' parrot the correct standard for a motion to dismiss in their brief, their arguments tell a different tale. Instead of crediting Plaintiff's allegations and taking them in the light most favorable to Plaintiff, they ignore wholesale facts that set forth a plausible claim and draw inferences in their direction. Additionally, while Defendant Officers pay lip service to Federal Rule of Civil Procedure ("Rule") 8(a), which requires only a "short and plain statement" of the claim, their brief argues that Plaintiff should have set forth the particulars of each claim, demanding details that discovery is designed to ferret out. For these reasons and those below, Defendant Officers' Motion to Dismiss should be denied.

## STATEMENT OF FACTS

Plaintiff incorporates by reference the allegations set forth in his Complaint [ECF 1] and the Statement of Facts set forth in his Response to Defendant City of Detroit's Motion to Dismiss and For a Stay [ECF 39].

## STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded factual allegations in the Complaint as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021) (internal quotations omitted).

## ARGUMENT

### I.   Plaintiff Has Sufficiently Pled Defendant Tolbert's and Staples's Involvement in Plaintiff's Fabrication Claim

In Count One, Plaintiff alleged that Defendant Officers violated his right to due process by fabricating and withholding evidence in violation of the Fourteenth Amendment. ECF. 1 (Compl.) ¶¶ 93–99. Although Defendant Officers titled their argument "Defendants Tolbert and Staples are Entitled to Dismissal of Count One," they only address the fabrication theory and do not discuss Plaintiff's *Brady* theory against Defendants. *See* ECF 34 (Defs. Brief) at 9–10. As a result, any argument that Plaintiff has not sufficiently pled a *Brady* theory of liability against Defendants Tolbert and Staples has been waived. *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) ("arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

2

Nor are Defendant Officers any more successful in their argument to dismiss Plaintiff's fabrication theory against Tolbert and Staples. Defendant Officers' sole argument is that Plaintiff has not lodged any allegations that either Defendant was personally involved in the fabrications that resulted in Plaintiff's conviction. Even a cursory look at the Complaint belies such a claim. As to Tolbert, Plaintiff expressly alleged that after the prosecutor told the police that the case had "serious problems," and that Tolbert needed to "find a way to corroborate [Brandon's] testimony," Tolbert turned to Defendant Jimenez. ECF 1 (Compl.) ¶¶ 46, 48–49. Jimenez was an odd choice for the task: he had not originally investigated the Charleston Fire. Rather, Tolbert turned to Jimenez because he "knew that Jimenez would 'find a way to corroborate [Brandon's] testimony' regardless of what the evidence actually showed." *Id*. ¶ 49. Indeed, Tolbert "gave direct orders . . . and/or encouraged or knowingly approved" of Jimenez fabricating testimony from Stanley January, the informant. *Id*. ¶ 114. In other words, Tolbert "participated directly" in the fabrication, which is all that Plaintiff is required to plead at this stage. *Hincapie v. City of New York*, 434 F. Supp. 3d 61, 77 (S.D.N.Y. 2020); *see Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2019) (finding that officer's "aware[ness]" of "exculpatory evidence"—that officer "knew [the witness] had said he had not seen Plaintiffs commit the crime"— sufficient for personal involvement); *Virgil v. City of Newport*, No. CV 16-224-DLB-CJS, 2018 WL 344986, at *6 (E.D. Ky. Jan. 9, 2018), *aff'd*,

745 Fed. Appx. 618 (6th Cir. 2018) (finding defendant officer sufficiently involved where he met with lead investigating agency and participated in the investigation); *see also Jackson v. Nassau County*, 552 F. Supp. 3d 350, 374 (E.D.N.Y. 2021) (finding defendants' direct involvement where one defendant excluded and mischaracterized information in a report, and another "corruptly coordinated the accounts of [witnesses] to manufacture the identification of [Plaintiff] as the alleged perpetrator").

So too for Defendant Staples. Like Tolbert, Staples was in a supervisory position. ECF 1 (Compl.) ¶ 114. Staples was aware of the problems with the Charleston Fire Investigation: He authored a memorandum to Tolbert (the Staples Memo), which neither he nor Tolbert disclosed to the prosecutor,[1] stating that it was "obvious[]" that Brandon had been "coached" by family members. *Id*. ¶ 35. Because of the problems with the case, Staples (along with Tolbert) "order[ed] . . . encouraged or knowingly approved of" (a) Defendant Croxton fabricating Mahdi's witness statement to "falsely undermine Mr. Nixon's alibi;" (b) Defendant Hughes-Grubbs'

---

[1] The information in the Staples Memo would have been damning for Brandon's credibility and the State's case against Nixon. As such, it was material—and the failure to disclose it violated *Brady v. Maryland*, 373 U.S. 83 (1963). *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995) (*Brady* includes impeachment evidence, and applies to evidence known only to the police and not to prosecutors); *Mellen v. Winn*, 900 F.3d 1085, 1097-99 (9th Cir. 2018) (opinion of police officer that state's witness was a liar was material and should have been disclosed). Indeed, the Defendants do not argue otherwise, and any such claim therefore has been waived. *See Kuhn*, 709 F.3d at 624.

"fabricated polygraph result;" and (c) Defendant Jimenez fabricating January's statement and attendant testimony. *Id*. ¶ 114. Just as is true for Tolbert, these actions—as pled in the Complaint—are sufficient to demonstrate Staples's personal involvement in the investigation and the fabrication. *See Jackson*, 925 F.3d at 815; *Virgil*, 2018 WL 344986, at *6; *Nassau County*, 552 F. Supp. 3d at 374; *Hincapie*, 434 F. Supp. at 77.

## II.    Plaintiff Sufficiently Pled Fabrication

Defendant Officers also moved to dismiss Plaintiff's fabrication theory more globally, arguing that Plaintiff failed to plead a connection between Defendant Officers' fabrications and the jury's wrongful conviction of Plaintiff. That argument fails to accept all well-pleaded factual allegations as true and fails to take the evidence and all reasonable inferences in Plaintiff's favor—all in contravention of well-established Rule 12(b)(6) standards. *Garva v. Lansing Sch. Dist.*, 972 F.3d 853, 867 (6th Cir. 2020). As such, the argument fails.

### A. Standard

"The Due Process Clause of the Fourteenth Amendment is . . . 'violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury.'" *Jackson*, 925 F.3d at 815–16 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006)); *see also Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997). As Defendant

5

Officers acknowledge, the Sixth Circuit has explained that evidence need not be introduced at trial to "affect[] the decision of the jury." *Jackson*, 925 F.3d at 816. In addition, in conducting that analysis, courts "examine[] the 'cumulative effect' of all false and misleading evidence . . . ." rather than siphoning off each fabrication and determining whether it (alone) impacted a decision of the jury. *United States v. Alahmedalabdaloklah*, 76 F.4th 1183, 1231–32 (9th Cir. 2023); *see also Velez v. City of Chicago*, No. 1:18-CV-08144, 2023 WL 6388231, at *10 (N.D. Ill. Sept. 30, 2023) ("At this stage, in evaluating the fabrication claim, the Court will consider the alleged fabricated evidence in the aggregate."); *Washington v. Boudreau*, Nos. 16-CV-01893, 16-CV-1970, 2022 WL 4599708, at *20 (N.D. Ill. Sept. 30, 2022).

Plaintiff has alleged three instances of such fabrication: fabrication of Mahdi's statement, which undermined Plaintiff's alibi; fabrication of Plaintiff's polygraph results; and fabrication of January's statement. ECF 1 (Compl.) ¶¶ 38–58. As described more fully below, each survives Defendant Officers' Motion.

### B. Plaintiff Has Pled that the Defendant Officers Fabricated Mahdi's Statement and Destroyed Plaintiff's Alibi

To start, Defendant Officers argue that Plaintiff failed to plead a "connection between Defendant Croxton's alleged fabrication and the jury's decision to convict." ECF 34 (Defs. Brief) at 12. That argument fails.

First, Plaintiff expressly alleged that Croxton "intentionally and falsely reported" that Mahdi "arrived home later than he actually did"—*i.e.*, after the

Charleston Fire—"thus knowingly undermining Plaintiff's alibi." ECF 1 (Compl.)

¶ 40. As such, Defendant Officers' contention that it is "not clear" whether Plaintiff

is alleging that Croxton fabricated a statement by Mahdi fails. ECF 34 (Defs. Brief)

at 12. Plaintiff has expressly alleged as much.[2]

Second, when the facts and all inferences therefrom are taken in Plaintiff's

favor, as they must be, it is clear that Plaintiff has alleged a connection between the

fabrication and the jury's decision to convict. As Plaintiff explained, Mahdi was one

of his alibi witnesses; by fabricating the time that Mahdi came home—after the

Charleston Fire—Croxton undermined Plaintiff's alibi and his ability to prove his

innocence. ECF 1 (Compl.) ¶¶ 38–40, 44, 94, 95. *See McIntyre v. Unified Govt. of*

*Wyandotte County & Kansas City*, No. CV 18-2545-KHV, 2022 WL 2337735, at *6

(D. Kansas June 28, 2022) (finding genuine issue of fact where police defendants

"fabricate[d] inconsistent alibi statements"); *Dennis v. City of Philadelphia*, 379 F.

---

[2] Defendants also argue that it is "not clear" if Mahdi testified at trial. Should this Court decide that such a fact is necessary for this fabrication theory to overcome a motion to dismiss, Plaintiff will seek leave to amend paragraph 59 of his Complaint to allege that Brandon, Mahdi, and the informant all testified; and that all their false testimony caused Plaintiff's wrongful conviction.  Such leave, which is generally freely given, is appropriate here because the amendment would cure the deficiency identified by Defendants and set forth a plausible claim for relief. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003); *Rhodes v. R & L Carriers, Inc.*, No. 11-3054, 491 Fed. Appx. 579, 585 (6th Cir. 2012).

Supp. 3d 420, 426 (E.D. Pa. 2019), *aff'd in part*, *appeal dismissed in part*, 19 F.4th 279 (3d Cir. 2021).

Even if that were not enough, which it is, Plaintiff has also expressly alleged that "based on Brandon's identification and Defendant Officers' fabricated evidence implicating Mr. Nixon in the fire, Mr. Nixon was arrested and charged with arson and murder." ECF 1 (Compl.) ¶ 44. Absent those fabrications (and other violations of Nixon's due process rights), "the prosecution of Mr. Nixon could not and would not have been pursued." *Id*. ¶ 95. Those allegations too demonstrate that the fabrication of when Mahdi came home "affected the decision of the jury.'" *Jackson*, 925 F.3d at 815–16. As *Jackson v. City of Cleveland* explains, "the relevant question is not whether the fabricated evidence was *shown* to the jury; it is whether the statement *affected* the decision of the jury." 925 F.3d at 816 (emphasis in original). "And fabricated evidence that 'is used as [the] basis for a criminal charge' can form the basis for a § 1983 claim because, absent that evidence, there would have been no jury." *Id*. (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 294 n.19 (3d Cir. 2014)); *see also Price v. Montgomery County*, 72 F.4th 711, 723 (6th Cir. 2023) (finding that relevant jury "decision" for fabrication "includes when fabricated evidence prompts the state to empanel a grand jury"). That is exactly what Plaintiff alleged here.

### C. Plaintiff Has Sufficiently Pled that the Fabricated Polygraph Affected the Decision of the Jury

Plaintiff also pled that Defendant Hughes-Grubbs fabricated the results of Plaintiff's polygraph exam. ECF 1 (Compl.) ¶¶ 41–43. Defendants again argue that Plaintiff has not pled a connection between the polygraph and the decision of the jury. ECF 34 (Defs. Brief) at 12. For the same reasons described above, that too fails.

Just as he did for the Mahdi fabrication, Plaintiff pled that the fabricated polygraph results (which are part of the "Defendant Officers' fabricated evidence implicating Mr. Nixon in the fire") led to Plaintiff's being "arrested and charged" with arson and murder; and that absent that fabrication (along with others), no such prosecution would have occurred. ECF 1 (Compl.) ¶¶ 44, 95; *see also Marvaso v. Sanchez*, 971 F.3d 599, 612–13 (6th Cir. 2020) (finding the fact that "arrestee deceptively responded, during a polygraph examination, to questions about his involvement in the fire" part of the basis for probable cause); *Tanner v. Walters*, No. 1:19-CV-849, 2022 WL 7945001, at *10 (W.D. Mich. Oct. 14, 2022) (failed polygraph can have some persuasive weight in a probable cause inquiry). That is sufficient to plead a connection between the fabricated polygraph results and the decision of the jury. *See Jackson*, 925 F.3d at 816; *Price*, 72 F.4th at 723.

9

**D. Plaintiff Has Sufficiently Pled that the Fabricated Informant Testimony Affected the Decision of the Jury**

Finally, Plaintiff has alleged that the informant's statement and attendant testimony were fabricated by Jimenez. ECF 1 (Compl.) ¶¶ 49–57. Defendant Officers complain that "Plaintiff fails to assert how this allegedly fabricated evidence impacted his trial." ECF 34 (Defs. Brief) at 13. This argument borders on nonsensical. Plaintiff expressly alleged that he was wrongfully convicted based on the "informant's fabricated testimony." ECF 1 (Compl.) ¶ 57; *Jackson*, 925 F.3d at 817 (reasonable jury could conclude falsified statement affected jury "because the statement coerced [a key witness] to testify in conformance with it"); *Monson v. Ghougoian*, No. 18-10638, 2022 WL 17477140 at *2 (E.D. Mich. Dec. 6, 2022).

**III.   Plaintiff Sufficiently Pled His *Brady* Theory**

In addition to alleging that Defendant Officers fabricated evidence, Plaintiff alleged that they withheld material exculpatory and impeachment evidence that would have impacted the result of his criminal proceeding. In particular, Plaintiff alleged that Defendants withheld: (a) the Staples Memo and its contents; (b) evidence of an alternative perpetrator; and (c) evidence relating to how Defendant Jimenez induced the informant to adopt Defendant Officers' false narrative (namely,

10

by promising him he would get released early and in time for his daughter's high school graduation). ECF 1 (Compl.) ¶¶ 35, 47, 54, 57.[3]

In their Motion, Defendant Officers challenge only Plaintiff's allegations about the alternative offender and the informant; any argument that Plaintiff has not sufficiently pled a *Brady* theory for Defendant Officers' withholding of the Staples Memo therefore has been waived. *See Kuhn*, 709 F.3d at 624. And Defendant Officers' arguments about the alternative perpetrator and informant have no merit.

## A. Plaintiff's Alternative Perpetrator Allegations Are Not Vague

Plaintiff has alleged that the prosecutor directed Defendant Tolbert to follow up on evidence "that Ms. Vaughn's prior home had been firebombed by a jealous boyfriend." ECF 1 (Compl.) ¶¶ 46–47. When he and the other Defendant Officers did so, "the findings of their investigation suggested a perpetrator other than Plaintiff . . ." but they failed to disclose this information to the prosecutor. *Id*. ¶ 47. Defendant Officers argue that these allegations are too vague because they do not identify the evidence's "form, content, the date acquired, or even the identity of the alleged alternate suspect." ECF 34 (Defs. Brief) at 15. Defendant Officers offer no legal cite to suggest such details are necessary—likely because there is none. "At this stage of

---

[3] Defendant Officers argued that the Muscat Memo cannot be the basis of a *Brady* claim because it was authored by the prosecutor. Plaintiff agrees and has not based his *Brady* claim on the Muscat Memo. Regardless, the Muscat Memo is relevant evidence that demonstrates a motive for Defendant Officers fabricating the informant's testimony—the desperate need to drum up "evidence" for their case. ECF 1 (Compl.) ¶¶ 46–49.

the case . . . [p]laintiffs are not required to—nor could they be expected to—make detailed factual allegations . . . ." *Hoskins v. Knox County*, No. CV 17-84-DLB-HAI, 2018 WL 1352163, at *7 (E.D. Ky. March 15, 2018) (internal quotations omitted).

On that score, *Giron v. Tyco Electronics Corporation*, No. 2:16-CV-11803, 2016 WL 7405805 (E.D. Mich. Dec. 22, 2016) is instructive. In *Giron*, the plaintiff alleged that she was terminated in retaliation for refusing her boss's directive to charge different customers different prices for the same goods. *Id*. at *1. The defendants sought to dismiss the plaintiff's public policy claim, arguing that it did not contain sufficient facts. *Id*. The court rejected that contention. While the court acknowledged that the "complaint lacks facts detailing the incident, including the date and time of the directive, the names of the companies allegedly subject to different prices, the nature of the sale and the products sold, the reasons [the plaintiff] gave to [her boss] explaining her refusal, a description of [her boss's] threats to [the plaintiff] after she refused the directive and the time elapsed between [her boss's threats] and [the plaintiff's] termination," those facts "need not be alleged at this early stage" and "will likely come out during discovery." *Id*. at *2.

So too here: While it is true that Plaintiff has not alleged certain details surrounding the evidence of the alternative perpetrator that Defendant Officers uncovered but withheld, those facts are not necessary to set forth a "plausible" claim for relief. *Id*. at *2; *see also Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, No. 13–

3423, 579 Fed. Appx. 348, 352 (6th Cir. 2014) (unpublished) (Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary . . . .") (quoting Rule 8(a)(2)).

### B. Plaintiff Has Pled that the Failure to Disclose the Withheld Evidence Prejudiced Him

Alternatively, Defendant Officers argue that Plaintiff has not sufficiently pled that the withheld evidence prejudiced him. This argument—which spans two sentences—is perfunctory, at best, and should be deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner . . . are deemed waived"). Regardless, it has no merit.

To start, materiality under *Brady* is evaluated collectively: The Defendants' attempt to siphon off each individual piece of evidence and claim it to be immaterial is therefore a non-starter. *See Kyles*, 514 U.S. at 436-37. Moreover, Plaintiff has alleged that individually and collectively, the withheld evidence prejudiced him.

Starting with the evidence of the alternative offender, "evidence suggesting an alternate perpetrator is 'classic *Brady* material.'" *Williams v. Ryan*, 623 F.3d 1258, 1265 (9th Cir. 2010) (quoting *Boyette v. Lefevre*, 246 F.3d 76, 91 (2d Cir. 2001)). *See Brady v. Maryland*, 373 U.S. at 87–88 (discussing an undisclosed confession of a co-defendant); *Bies v. Sheldon*, 775 F.3d 386, 400 (6th Cir. 2014) ("nondisclosure of the identities of the other suspects . . . was an egregious breach of the State's *Brady* obligation."); *Jamison v. Collins,* 291 F.3d 380, 390–91 (6th Cir. 2002) (evidence of

13

alternative suspect is material); *see also Carrillo v. City of Los Angeles*, 798 F.3d 1210, 1224 (9th Cir. 2015) (alternative suspect evidence falls within *Brady*); *Mendez v. Artuz*, 303 F.3d 411, 413 (2d Cir. 2002) (suppression of evidence that "suppli[ed] a possible alternative perpetrator and motive" was material). When all facts and inferences are taken in Plaintiff's favor, his Complaint demonstrates that the failure to disclose that evidence and preclude Plaintiff from "show[ing] that another person could have committed the crime," was prejudicial. *See Beaman v. Souk*, 7 F. Supp. 2d 805, 825 (C.D. Ill. 2014), *aff'd sub nom. Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015); *Crawford v. Cain*, No. CIV. A. 04-0748, 2006 WL 1968872, at *19 (E.D. La. July 11, 2006), *aff'd*, 248 Fed. Appx. 500 (5th Cir. 2007) (unpublished). Indeed, Plaintiff has alleged that had this evidence been disclosed to the prosecutor, the prosecution of Plaintiff "could not and would not have been pursued." ECF 1 (Compl.) ¶ 95; *id.* ¶¶ 94, 98.

Similarly, the undisclosed promises made to January and the fact that Defendant Jimenez fed January information were material. Plaintiff not only pled as much, but here, where the case depended on January's testimony, his "credibility as a witness was therefore an important issue in the case . . . ." *Giglio v. U.S.*, 405 U.S. 150, 154–55 (1972). As a result, "evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." *Id.* Courts have repeatedly found that this type of information—*i.e.*, "the

14

details of how [defendants] induced the witness to finger [the plaintiff]"—is material and exculpatory, and therefore required to be disclosed under *Brady*. *Newsome v. McCabe*, 319 F.3d 301, 304 (7th Cir. 2003); *see also Jackson*, 925 F.3d at 815.

## IV.   Plaintiff's Illegal Detention Claim Is Timely

Plaintiff brought a claim for illegal detention without probable cause.[4] Defendant Officers are not moving to dismiss this claim, but instead argue that a false arrest claim that Plaintiff has not lodged is time-barred. Because Plaintiff is not pursuing a false arrest claim, this argument is moot. As Defendant Officers agree, Plaintiff's illegal detention claim is timely. *Watkins v. Healy*, No. 17-CV-13940, 2019 WL 3777631, at *6 (E.D. Mich. Aug. 12, 2019), *aff'd*, 986 F.3d 648 (6th Cir. 2021), *as corrected on denial of reh'g en banc* (March 16, 2021) (finding illegal detention claim accrued when plaintiff's criminal proceedings ended in his favor).

---

[4] Defendant Officers refer to this claim as "malicious prosecution," but the two are synonymous for purposes of the constitutional violation alleged. ECF 1 (Compl.) ¶¶ 100–06; *see also Gregory*, 444 F.3d at 747–50. Further, Defendant Officers complain that Plaintiff has brought his illegal detention claim under both the Fourth and Fourteenth Amendment. Plaintiff acknowledges that the Sixth Circuit has held that the Fourth Amendment is the exclusive avenue for challenging pretrial detention. *Jackson v. County of Washtenaw*, Nos. 07–2513, 08–1206, 310 Fed. Appx. 6, 7 (6th Cir. 2009) (unpublished). That case, however, predated *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019). In *McDonough*, the Supreme Court implied, without deciding, that a plaintiff may challenge the legality of pretrial detention under the due process clause and noted that "[c]ertain wrongs may affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *McDonough*, 139 S. Ct. at 2155 & n.2. Plaintiff thus alleges both bases for his claim to preserve the issue.

**V.     Plaintiff's Failure to Intervene and Supervisor Liability Claims Are Timely**

Defendant Officers argue that because Plaintiff's failure to intervene and supervisor liability claims "accrue at the same time as the underlying claim, they must be dismissed as untimely to the extent that they are based on any Fourth Amendment claim other than malicious prosecution." ECF 34 (Defs. Brief) at 17. This argument is meritless. As Defendants acknowledge, malicious prosecution *is* a Fourth Amendment basis for both claims and thus should be allowed to proceed.[5]

In *Hoskins v. Knox County*, the very case that Defendants cite as supporting dismissal, the court noted that "it would make little sense for the statute of limitations for a supervisor-liability claim to start running—and expire—before the statute of limitations for the underlying malicious-prosecution or fabrication-of-evidence claims have even started to run." 2018 WL 1352163, at *16. Indeed, "[l]ogic and common sense command that the same accrual date govern both the failure-to-intervene claim and the underlying § 1983 claims that the Defendants are alleged to have failed to intervene and prevent. Without further elaboration, the Plaintiffs' failure-to-intervene claim accrued—and began to run—at the same time as the malicious-prosecution and fabrication-of-evidence claims upon which it is based: when the criminal proceedings terminated in the Plaintiffs' favor." *Id.* at *17.

---

[5] As noted *supra*, in this case, "malicious prosecution" and "illegal detention without probable cause" are different labels for the same constitutional violation.

16

Further, in his Complaint, Plaintiff clearly states that Defendant Officers violated his "Fourth and Fourteenth Amendment rights" for failing to intervene and as supervisors of the investigation. ECF 1 (Compl.) ¶¶ 110 (Count III – failure to intervene), 115 (Count IV – supervisor liability). Defendant Officers make no argument seeking dismissal of failure to intervene and supervisor liability predicated on their violation of Plaintiff's Fourteenth Amendment rights, and as such, the issue is waived, and the claims should not be dismissed. *See Kuhn*, 709 F.3d at 624.

## VI.   Plaintiff Sufficiently Pled Failure to Intervene

In addition to seeking to dismiss the Count on timeliness grounds, Defendant Officers incorrectly argue that Plaintiff failed to sufficiently plead his failure to intervene claim. In particular, Defendant Officers argue that Plaintiff was required to—and failed to—allege which Defendant Officers failed to prevent which constitutional violation. That argument fails.

An officer "may be held liable when (1) the officer observed or had reason to know that [an unconstitutional action] would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Further, "the issue of whether an officer had sufficient time to intervene or was capable of preventing the harm is a question of fact for the jury unless, based on all the evidence, a reasonable jury could not possibly conclude otherwise." *Haliburton v. City of Ferndale*, No. 2:21-CV-10864,

17

2023 WL 581651, at *16 (E.D. Mich. Jan. 27, 2023) (citing *Bunkley v. City of Detroit*, 902 F.3d 552, 566 (6th Cir. 2018).

At the motion-to-dismiss stage, "[p]laintiffs are not required to make detailed factual allegations specifically linking [d]efendant[s] to particular actions." *Hoskins*, 2018 WL 1352163, at *16. Instead, "[p]laintiffs can broadly allege factual allegations against multiple defendants en masse. And the Court is required to accept those factual allegations as true." *Id*. This is because plaintiffs could not be expected to "make 'detailed factual allegations' about which officer committed which act." *Horn v. City of Covington*, No. 2:14-cv-73-DLB, 2015 WL 4042154, at *6 (E.D. Ky. July 1, 2015) (quoting *Iqbal*, 556 U.S. at 678); *see Guertin v. Michigan*, No. 16-CV-12412, 2017 WL 2418007, at *17 (E.D. Mich. June 5, 2017), *aff'd in part*, *rev'd in part*, 912 F.3d 907 (6th Cir. 2019) (rejecting argument that plaintiffs engaged in improper group pleading because "Defendants have more than fair notice of the claims against them . . . ."); *see also Muslim Community Ass'n of Ann Arbor and Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752, 760–61 (E.D. Mich. 2013); *Kreps v. Michigan Unemployment Ins. Agency*, No. 22-12020, 2023 WL 4494339, at *11 (E.D. Mich. July 12, 2023); *Rideout v. Shelby Twp*., No. 22-11597, 2023 WL 5917392, at *4 (E.D. Mich. Sept. 11, 2023).

As such, Plaintiff has adequately pled notice and opportunity for all Defendant Officers to surmount a motion to dismiss. For Defendant Jimenez, Plaintiff pled that

Jimenez had reason to know that Defendant Officers were working toward framing Plaintiff when he was approached by Tolbert and asked to "find a way to corroborate [Brandon's] testimony" regardless of what the evidence actually showed. ECF 1 (Compl.) ¶ 49; *see also id.* ¶¶ 30, 37, 48, 118–20, 137. Rather than intervene to prevent Plaintiff from being framed, Jimenez actively contributed by feeding the informant (Stanley January) facts of the case and eliciting a fabricated statement—which was never disclosed to the prosecution or defense. *Id*. ¶¶ 4, 23, 50–55, 57.

So too for Defendants Croxton and Hughes-Grubbs. *Id.* ¶¶ 40, 42, 108, 118–120, 134–35, 137, 143. Both Defendants had an opportunity to prevent the constitutional violations that occurred even prior to Plaintiff's arrest. *Id.* But instead, each actively participated in the frame-up: Croxton, by lying to Mahdi and falsely reporting that Mahdi arrived home later than he did—knowingly undermining Plaintiff's alibi; and for Hughes-Grubbs, by working with Staples and Tolbert to fabricate Plaintiff's polygraph results. *Id*. ¶¶ 23, 40–42, 114, 118–20, 137. As such, Plaintiff has sufficiently shown at the motion-to-dismiss stage that rather than intervene at any point throughout the investigation, Defendants Croxton and Hughes-Grubbs contributed to the framing. *See Anderson v. Knox Cnty*, No. CV 6:17-133-KKC, 2018 WL 7500205 at *9 (E.D. Ky. Oct. 3, 2018).

Finally, with regard to the supervisory Defendants—Staples and Tolbert—there is no question that Plaintiff pled that both were aware of the plan to frame

Plaintiff and the steps other Defendant Officers took to do so, and that both failed to intervene to prevent the constitutional injury from happening. Worse yet, they encouraged it. ECF 1 (Compl.) ¶¶ 30, 35–37, 114, 118–20, 134–35, 137. On that score, Staples actively directed his subordinates to fabricate evidence to inculpate Plaintiff after determining that it was "obvious" that Brandon had been "coached." *Id*. ¶¶ 4, 23, 35, 36, 41, 57, 114. Indeed, Staples knew that to close the case, he needed "evidence," regardless of whether it was fabricated. *See Haliburton*, 2023 WL 581651, at *15–17 (holding that observing officer is on notice to intervene in Fourth Amendment violation and that if the officer had time to contribute to the constitutional violation, then it is reasonable that he had time to intervene).

The same is true for Defendant Tolbert. As supervisor of the Homicide Division, Plaintiff pled that Tolbert was in a special position to oversee all the actions of Defendant Officers. ECF 1 (Compl.) ¶ 113. Moreover, after receiving both the Staples and Muscat Memos, he was uniquely aware of the problems with the prosecution of Plaintiff. *Id*. ¶¶ 35, 118–20, 134–35. Rather than follow the evidence—including of an alternative perpetrator—Tolbert assigned Jimenez the task of finding "evidence" from cellmates of Plaintiff—an officer who was not involved in the original investigation and whose history of misconduct would have been well known to his supervisor. *Id*. ¶¶ 4, 23, 37, 47, 48, 50–55, 57, 58, 114, 137. As such, Plaintiff has sufficiently pled that Tolbert knew about the violations of

20

Plaintiff's constitutional rights and, despite having ample opportunity to prevent them, took affirmative steps to contribute. *See Haliburton*, 2023 WL 581651, at *15–17. Taking all facts pled as true, Plaintiff's failure to intervene claim against Defendant Officers should not be dismissed.

## VII. Plaintiff Sufficiently Pled Supervisor Liability Against Defendants Staples and Tolbert

Defendant Officers argue that Plaintiff failed to sufficiently allege how Defendants Tolbert and Staples encouraged constitutional violations and that the supervisor liability claim against them should be dismissed. They are incorrect.

"[A] supervisory official's failure to supervise, control or train the offending individual" is actionable where "the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (internal quotations omitted); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (holding that supervisory liability requires some "active unconstitutional behavior" on the part of the supervisor). The supervisor need not have physically put his hands on the injured party or even physically been present at the time of the constitutional violation. *See Campbell v. City of Springboro*, 700 F.3d 779, 790 (6th Cir. 2012). It is enough that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (citing *Shehee*, 199 F.3d at 300); *see also Phillips*

*v. Roane Cty.*, 534 F.3d 531, 543 (6th Cir. 2008); *cf. Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002).

Plaintiff has sufficiently pled facts to demonstrate that Tolbert and Staples "directly participated" in and "encouraged" the constitutional violations at issue here. *Shehee*, 199 F.3d at 300. For starters, Staples and Tolbert directly participated in the investigation. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (explaining that supervisors are liable where they "participated directly in the alleged constitutional violation") (citation omitted); *Hoskins*, 2018 WL 1352163, at *16 (finding supervisor could be liable where supervisor "directly participated, encouraged, authorized, or knowingly acquiesced in the alleged fabrication of evidence, coercion of witnesses, manipulation of evidence, and concealment of material exculpatory evidence"). As described more fully above in Section I, Staples and Tolbert withheld critical information from the prosecution—and thereby the defense. That included not only that it was "obvious[]" that Brandon had been "coached by family members"—a finding memorialized in the Staples Memo—but also evidence of an alternative perpetrator, and that January's statement had been fabricated by Jimenez through (undisclosed) promises. ECF 1 (Compl.) ¶¶ 35, 37, 47, 51–57, 114, 137; *Hoskins*, 2018 WL 1352163, at *16.

Tolbert and Staples also actively "encouraged" Defendant Officers under their command to frame Plaintiff. Plaintiff pled three examples of this. First, both Staples

and Tolbert "directed and/or approved of Defendant Croxton's treatment of a material witness to fabricate an inaccurate witness statement and falsely undermine Mr. Nixon's alibi." ECF 1 (Compl.) ¶ 114; *see id.* ¶ 40. Second, Staples and Tolbert "directed and/or approved of Defendant Hughes-Grubbs' fabricated polygraph result." *Id*. ¶114; *see id.* ¶¶ 37, 41, 42. Third, they both "directed and/or approved of Defendant Jimenez procuring fabricated testimony from a jailhouse informant." *Id*. ¶114; *see id.* ¶¶ 49, 50–55. Indeed, Tolbert hand selected Jimenez to speak with the informant to generate "evidence" to corroborate Brandon's story notwithstanding the fact that Jimenez was not one of the detectives assigned to the criminal investigation. *Id.* ¶¶ 48–49. As such, Plaintiff has adequately pled facts that show Staples and Tolbert, at the very least, implicitly authorized the unconstitutional conduct of Defendant Officers. *See, e.g., Peatross*, 818 F.3d at 242 (citing *Shehee*, 199 F.3d at 300); *Phillips*, 534 F.3d at 543; *cf. Doe*, 296 F.3d at 440.

## VIII.  Plaintiff's Conspiracy Claim Should Not Be Dismissed

The Defendant Officers make three arguments for why Plaintiff's conspiracy claim should be dismissed: that it is time barred, that it is barred by the intracorporate conspiracy doctrine, and that it is insufficiently pled. For all the reasons described below, those arguments fail.

**A. Plaintiff's Conspiracy Claim Is Timely**

First, Defendant Officers argue that the statute of limitations on Plaintiff's conspiracy claim ran in 2008. This argument runs afoul of well-settled case law barring Plaintiff from bringing a claim that would impugn the validity of his conviction until that conviction has been set aside.

Section 1983 due process and malicious prosecution causes of action do not accrue until the conviction on which they are based has been invalidated. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994) (holding that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated"); *Eidson v. State of Tennessee Dep't of Children's Servs*., 510 F.3d 631, 638 (6th Cir. 2007) (holding that a post-conviction § 1983 malicious prosecution claim does not accrue until a final adjudication in plaintiff's favor in state court); *Cristini v. City of Warren*, No. 07-11141, 2012 WL 5508369, at \*17–18 (E.D. Mich. Nov. 14, 2012) (holding that a plaintiff's *Brady* claim does not accrue until final adjudication of the plaintiff's criminal proceedings).[6] That is because proving those claims would undermine a plaintiff's conviction through a collateral attack. *Heck*, 512 U.S. at 486.

---

[6] This principle is well-established in this District, Circuit, and by the Supreme Court. *See McDonough*, 139 S. Ct. at 2160; *Watkins*, 429 F. Supp. 3d at 424, *aff'd*, 986 F.3d 648 (6th Cir. 2021), *as corrected on denial of reh'g en banc* (Mar. 16, 2021); *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014).

A conspiracy claim is a derivative cause of action that requires (1) a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy. *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985); *see also Patrick v. City of Chicago*, 81 F.4th 730, 734–35 (7th Cir. 2023) (federal conspiracy is a derivative claim and not an independent cause of action). As a derivative action, the second prong of conspiracy must be premised on a violation of a plaintiff's constitutional or statutory rights. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

In this case, Plaintiff has predicated his conspiracy claim on Defendant Officers' violation of his Fourth and Fourteenth Amendment rights. ECF 1, ¶¶ 117–23. Because those underlying claims could not be brought until Nixon's conviction was set aside, so too for his conspiracy claim. *See Holland v. Cnty. of Macomb*, No. 16-2103, 2017 WL 3391653, at *2 (6th Cir. Mar. 17, 2017) (finding conspiracy claim *Heck*-barred—along with due process and malicious prosecution claims—because plaintiff's conviction and sentence had not been invalidated and if plaintiff were to prevail on those claims, "his conviction would be called into question"). As such, Plaintiff's conspiracy claim did not accrue until the final adjudication of his criminal proceedings on February 18, 2021 when his conviction was vacated, and the charges dismissed. Plaintiff timely filed his Complaint on June 28, 2023, within three years

of that date. *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988); *see*

*Rapp v. Putman*, No. 15 C 1995, 644 F. App'x 621, 625 (6th Cir. 2016).

The only case Defendant Officers cite for the proposition that the statute of

limitations has run on Plaintiff's conspiracy claim is an unpublished district court

opinion addressing a prisoner's *pro se* complaint under 28 U.S.C. § 1915A, *Bills v.*

*Adair*, No. 08-12207, 2009 WL 440642 (E.D. Mich. Feb. 23, 2009). In *Bills*, the

plaintiff argued that the defendants conspired to torture him into pleading guilty to a

crime for which he was still convicted (and incarcerated). *Id*. at *3. In ruling on the

defendants' motion to dismiss, the district court found both that the plaintiff was

aware of the conduct underlying his conspiracy claim prior to filing his complaint,

and also that the conspiracy claim was barred by *Heck* because "the allegations

would imply that his plea was not voluntary, and the object of the conspiracy was to

accomplish this goal." *Id*. at *7, 10.

To the extent that *Bills* suggests that Plaintiff should have brought his

conspiracy claim within three years of when he became aware of the Defendant

Officers' alleged misconduct—notwithstanding the *Heck* bar on such a claim—*Bills*

is simply erroneous. Indeed, *Bills* acknowledged that "[t]he date on which the statute

of limitations begins to run in a § 1983 action is a question of federal law" and federal

law makes clear that due process, malicious prosecution, and derivative claims like

conspiracy are not "actionable," and thus do not accrue, until a plaintiff's conviction

is invalidated. *Id.* at *6–7; *See also Cristini*, 2012 WL 5508369, at *17–18; *Watkins*, 429 F. Supp. 3d at 424; *D'Ambrosio*, 747 F.3d at 384; *Holland*, 2017 WL 3391653, at *2; *McDonough*, 139 S. Ct. at 2160; *Heck*, 512 U.S. at 489–90. To the extent that *Bills* is consistent with that well-settled law and holds that Nixon could not have brought his conspiracy claim until his conviction was vacated, *Bills* supports Plaintiff—and not Defendant Officers.

## B. The Intracorporate Conspiracy Doctrine Does Not Bar Plaintiff's Claim

Second, Defendant Officers incorrectly argue that Plaintiff's conspiracy claim should be dismissed based on the intracorporate conspiracy doctrine. *Jackson* explains that the intracorporate conspiracy doctrine "applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity . . . allegedly conspired together to deprive the plaintiff of his rights." 925 F.3d at 818. However, Plaintiff's conspiracy allegations are not limited to Defendant Officers, and so Defendants' argument fails.

To that end, Plaintiff has alleged that "Defendant Officers . . . agreed among themselves and *with other individuals* to act in concert in order to deprive Mr. Nixon of his constitutional rights." ECF 1 (Compl.) ¶ 118 (Count V – federal conspiracy) (emphasis added); *see also id*. ¶ 142 (Count VIII – state conspiracy) ("Defendant Officers, acting in concert with other known and unknown coconspirators . . . .").

There is at least one nonpolice person who was part of the conspiracy and is not of the same entity as Defendant Officers: the informant, Stanley January.

Plaintiff alleged that Defendant Jimenez promised January a reduced sentence in exchange for providing a false statement that would inculpate Plaintiff—a statement that was fed to January by Jimenez to secure Plaintiff's conviction. ECF 1 (Compl.) ¶¶ 53–55. One reading of those allegations is that Defendant Officers conspired with January. *Cf. Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000) (private party can conspire with state officials).[7] That Defendant Officers and January "may have had different motives" for participating in the conspiracy— Defendant Officers seeking to close a case and January seeking release from custody—"is immaterial." *Stinson v. City of Milwaukee*, No. 09-C-1033, 2013 WL 5447916, at *15 (E.D. Wis. Sept. 30, 2013), *rev'd and remanded sub nom. Stinson v. Gauger*, 799 F.3d 833 (7th Cir. 2015), *as corrected* (Aug. 26, 2015), *reh'g en banc granted, opinion vacated* (Dec. 3, 2015), *on reh'g en banc*, 868 F.3d 516 (7th Cir. 2017). As such, Defendant Officers' argument fails.

---

[7] To the extent that other parts of Plaintiff's Complaint suggest that the informant, Stanley January, was coerced into giving a fabricated statement, Plaintiff is pleading in the alternative for purposes of this count that the informant was a willing participant in the conspiracy. *See Smith v. Cnty. of Lenawee*, No. 11-1523, 505 Fed. Appx. 526, 540 (6th Cir. Nov. 12, 2012) (a plaintiff is entitled to plead in the alternative).

### C. Plaintiff Sufficiently Pled Conspiracy

Third, Defendant Officers incorrectly argue that Plaintiff failed to properly plead the elements of a conspiracy. The standard for proving a § 1983 conspiracy claim is showing an agreement between two or more persons to injure another by unlawful action. *Hooks*, 771 F.2d at 943–44. Express agreement among all the conspirators is not necessary nor must every conspirator know all the details of the plan or all the participants involved. *Id.* The only thing a plaintiff must show is (1) that there was a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. *Id.*; *see also Rieves v. Town of Smyrna, Tenn.*, 67 F.4th 856, 862 (6th Cir. 2023); *Memphis, Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905–06 (6th Cir. 2004). "[C]ircumstantial evidence may provide adequate proof of conspiracy." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (citing *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000)).

At the motion to dismiss stage, Plaintiff has sufficiently alleged facts that state a conspiracy claim upon which relief can be granted. First, Plaintiff demonstrated that there was a plan to fabricate and withhold evidence to initiate "a criminal proceeding against Mr. Nixon . . . without any probable cause for doing so." ECF 1 (Compl.) ¶¶ 134–35; *see id.* ¶¶ 3, 4, 23, 30, 35, 36, 47, 49, 114, 118. Second, Plaintiff

included facts displaying that the co-conspirators "agreed among themselves and with other individuals to act in concert in order to deprive Mr. Nixon of his constitutional rights, including his right to due process" by falsely pinning the murder on Plaintiff. *Id.* ¶ 118; *see id.* ¶¶ 30, 37, 48, 49, 57, 58, 114, 118–20, 134–35, 137. Third, Plaintiff included many allegations against Defendant Officers that show each individually "engaged in and facilitated overt acts" in furtherance of the conspiracy that caused Plaintiff's injury. *Id.* ¶ 120; *see id.* ¶¶ 4, 35, 40, 42, 47, 50–55, 114, 137. As such, Plaintiff's conspiracy cause of action should not be dismissed. *See, e.g., Harris v. Goins*, 156 F. Supp. 3d 857, 866 (E.D. Ky. 2015) (because plaintiff showed "that the defendants had a 'shared plan' and took actions in furtherance of that conspiratorial plan, the allegation will survive a motion to dismiss."); *Marvaso*, 971 F.3d at 606 (denying motion to dismiss where plaintiff alleged a plan, conspiratorial objective, and overt acts in support of that objective).

## IX.    Plaintiff's State Law Causes of Action

Plaintiff is voluntarily dismissing his state-law claims of malicious prosecution (Count VII) and state-law conspiracy (Count VIII).

## **<u>CONCLUSION</u>**

For the aforementioned reasons, Defendant Officers' Motion to Dismiss should be denied except as to Plaintiff's state law claims (VII and VIII).

Respectfully submitted,

/s/ Gayle Horn

*One of the Attorneys for Plaintiff*

Jon Loevy
Arthur Loevy
Gayle Horn
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

Julie Hurwitz
Kathryn Bruner James
Goodman Hurwitz & James, P.C.
1394 E. Jefferson Avenue
Detroit, MI 48207
313.567.6170
313.251.6068 (fax)

## **CERTIFICATE OF SERVICE**

I, Gayle Horn, an attorney, hereby certify that I served the foregoing document

on all parties of record via the Court's CM/ECF filing system on October 20, 2023.

/s/ Gayle Horn

*One of Plaintiff's Attorneys*

31