IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH NIXON,                                    Case No: 23-cv-11547

        Plaintiff,                              HON. SUSAN K. DECLERQ

vs

CITY OF DETROIT, DETECTIVE MOISES
JIMENEZ, COMMANDER JAMES
TOLBERT, DETECTIVE KURTISS STAPLES,
SGT. EDDIE CROXTON, OFFICER ALMA
HUGHES-GRUBBS, AND OTHER AS-OF-
YET UNKNOWN EMPLOYEES OF THE CITY
OF DETROIT,

        Defendants.

---

## DEFENDANTS MOISES JIMENEZ, JAMES TOLBERT, KURTISS STAPLES, EDDIE CROXTON, AND ALMA HUGHES-GRUBBS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COME Defendants Moises Jimenez, James Tolbert, Kurtiss Staples, Eddie Croxton, and Alma Hughes-Grubbs (collectively "Defendant Officers"), by and through their attorneys, NATHAN & KAMIONSKI, LLP, and for their Answer and Affirmative Defenses to Plaintiff Kenneth Nixon's Complaint in this civil action state as follows:

1

## INTRODUCTION

1.      On September 21, 2005, Plaintiff Kenneth Nixon was convicted of an arson-murder that he did not commit and was sentenced to life in prison without parole.

**Defendant Officers' Answer: Defendants admit only that Plaintiff was convicted on September 21, 2005 and was ultimately sentenced to life in prison without parole. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 1 of the Complaint and therefore leave Plaintiff to his proofs.**

2.      After serving nearly 16 years in prison, on February 18, 2021, he was finally exonerated, and his innocence was established.

**Defendant Officers' Answer: Defendants admit only that Plaintiff's conviction was vacated. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 2 of the Complaint and therefore leave Plaintiff to his proofs.**

3.      The story of how Mr. Nixon came to be wrongfully convicted begins and ends with the Defendants. Rather than seriously investigate the arson-homicide, the Defendants knowingly manipulated and then relied on obviously coached false evidence from the 13-year-old brother of two of the victims to arrest Mr. Nixon.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 3 of the Complaint.**

4.      Worse yet, Defendants completely ignored the prosecutor's sounding of the alarm bell regarding how thin the evidence was against Plaintiff; they neither renewed their investigation nor followed up on any new or old leads. Instead, in a

concerted effort to cover up the truth, Defendants coerced a jailhouse informant to give fabricated testimony and then deliberately concealed from both the prosecution and defense the manner in which that false evidence was created.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 4 of the Complaint.**

5.     Based on the 13-year-old boy's coached and false testimony and the informant's fabricated evidence, Plaintiff was wrongfully convicted of arson, murder and attempted murder.   He was sentenced to life in prison without the possibility of parole.

**Defendant Officers' Answer: Defendants admit only that Plaintiff was convicted of arson, murder, and attempted murder and was ultimately sentenced to life in prison without parole.   Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 5 of the Complaint and therefore leave Plaintiff to his proofs.**

6.     Plaintiff, however, never gave up on proving his innocence.  More than a decade after his conviction, in or around 2016, the Cooley Law Innocence Project began representing Plaintiff and in or around 2018, the Wayne County Prosecutor's Office Conviction Integrity Unit ("CIU") undertook a re-investigation of Plaintiff's case.

**Defendant Officers' Answer: Defendants    are    without    sufficient information to admit or deny the allegations in Paragraph 6 of the Complaint and therefore leave Plaintiff to his proofs.**

7.     After re-opening the investigation and analyzing the evidence, the CIU

determined that Plaintiff had been wrongfully convicted.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 7 of the Complaint and therefore leave Plaintiff to his proofs.**

8.     On February 18, 2021, Wayne County Circuit Court Judge Bruce Morrow entered a Stipulated Order vacating Plaintiff's conviction; all charges against him were then dismissed.

**Defendant Officers' Answer: Defendants admit the allegations in Paragraph 8 of the Complaint.**

9.     Finally a free man, Mr. Nixon now seeks redress for his nearly 16 years of wrongful incarceration.

**Defendant Officers' Answer: Defendants admit only that Plaintiff purports to proceed as stated.   Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 9 of the Complaint and therefore leave Plaintiff to his proofs.**

10.    In addition to compensating Mr. Nixon for the years that he spent wrongfully convicted of an arson-murder he did not commit and his attendant loss of freedom, and his continued suffering, this action seeks to remedy Defendant City of Detroit's unlawful policies, practices, and/or customs of routinely conducting unlawful interrogations, and of failing to adequately train, supervise, and/or discipline its officers that led Defendant Officers to violate Kenneth Nixon's constitutional and state law rights.

**Defendant Officers' Answer: Defendants admit only that Plaintiff**

4

purports to proceed as stated.  **Defendants deny the remaining allegations contained in Paragraph 10 of the complaint and specifically deny any unlawful action.**

## JURISDICTION AND VENUE

11.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of Michigan.

**Defendant Officers' Answer: Defendants admit only that Plaintiff purports to proceed as stated.**

12.    This Court has jurisdiction over Plaintiff's constitutional claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over any and all state constitutional and state law claims pursuant to 28 U.S.C. § 1367(a).

**Defendant Officers' Answer: Paragraph 12 of the Complaint contains only legal conclusions to which no answer is required.  To the extent an answer is required, Defendants leave Plaintiff to his proofs.**

13.    Plaintiff's claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

**Defendant Officers' Answer: Paragraph 13 of the Complaint contains only legal conclusions to which no answer is required.  To the extent an answer is required, Defendants leave Plaintiff to his proofs.**

14.    Venue is proper under 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to this claim occurred.

**Defendant Officers' Answer: Paragraph 14 of the Complaint contains only legal conclusions to which no answer is required.  To the extent an**

5

**answer is required, Defendants leave Plaintiff to his proofs.**

15.    The   amount   in   controversy   exceeds   Seventy-Five   Thousand ($75,000.00) dollars.

**Defendant Officers' Answer: Defendants admit only that Plaintiff purports to have damages exceeding $75,000.**

## THE PARTIES

16.    Plaintiff KENNETH NIXON is currently a 37-year-old native of Detroit, Michigan, where, but for his time wrongfully in prison, he has resided his whole life.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 16 of the Complaint and therefore leave Plaintiff to his proofs.**

17.    He is the father of two children and the President of the Organization of Exonerees. The Organization of Exonerees is a non-profit organization that advocates on behalf of innocent persons who are or have been wrongfully convicted of crimes, and campaigns for criminal justice reform. Mr. Nixon is the Director of Outreach and Community Partnership for the nonprofit organization Safe and Just Michigan. He is also studying political science at Wayne State University.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 17 of the Complaint and therefore leave Plaintiff to his proofs.**

18.    At all times relevant hereto, Defendants Sergeant EDDIE CROXTON, former Commander JAMES TOLBERT, Detective MOISES JIMENEZ, Detective

KURTISS STAPLES, ALMA HUGHES-GRUBBS and other unidentified employees of the Detroit Police Department ("Defendant Officers") were police officers or otherwise employed by the Detroit Police Department. All are sued in their individual capacities and at all times relevant hereto acted under color of regulations, usage, custom and state law and within the scope of their authority and employment and pursuant to the policies and practices of Defendant CITY OF DETROIT during the investigation and prosecution of the crime at issue.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 18 of the Complaint and therefore leave Plaintiff to his proofs.**

19.    Defendant CITY OF DETROIT is a Michigan municipal corporation authorized as such by the laws of the State of Michigan, that operates a police department as a part of its responsibilities and services. At all times relevant herein, Defendant CITY OF DETROIT, acting through and by its policymaking officials, acted under color of regulation, usage, custom, and law and pursuant to its policies and practices as did all the individual Defendants herein. The City is or was the employer of each of the Defendant Officers at all relevant times.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 19 of the Complaint and therefore leave Plaintiff to his proofs.**

## STATEMENT OF FACTS

### The Charleston Fire

20.     Very late at night on May 19, 2005, a fire broke out at 19428 Charleston Street, Detroit, Michigan.

**Defendant Officers' Answer: Defendants admit the allegations in Paragraph 20 of the Complaint.**

21.     Naomi Vaughn lived at 19428 Charleston Street with her then-boyfriend Ronrico Simmons and Ms. Vaughn's five children. Tragically, two of Ms. Vaughn's children perished in the fire at her home.

**Defendant Officers' Answer: Defendants admit the allegations in Paragraph 21 of the Complaint.**

22.     Detroit firefighters responded to the scene. They later determined that someone had thrown a Molotov cocktail into a second-story bedroom window, igniting the fire.

**Defendant Officers' Answer: Defendants admit the allegations in Paragraph 22 of the Complaint.**

23.     During the course of their investigation, Defendants deliberately, knowingly, and/or recklessly ignored any and all other leads, withheld exculpatory evidence, and fabricated evidence to wrongfully charge and cause the conviction of Mr. Nixon of this crime.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 23 of the Complaint.**

**Kenneth Nixon's Innocence**

24.     Plaintiff Kenneth Nixon had absolutely nothing to do with this crime. At the time of the fire, Mr. Nixon was at home with Latoya Caulford, his then-girlfriend and the mother of his child, and some of Ms. Caulford's family members.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 24 of the Complaint and therefore leave Plaintiff to his proofs.**

25.     At the time of the fire, Ms. Caulford was living with her cousin, Mario Mahdi, and Mr. Nixon regularly stayed there to be with his girlfriend and son.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 25 of the Complaint and therefore leave Plaintiff to his proofs.**

26.     Mr. Nixon was working for a towing company. He had been working earlier that day and had towed several cars.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 26 of the Complaint and therefore leave Plaintiff to his proofs.**

27.     By approximately 10:00 pm on the night of the fire, Mr. Nixon was at home with Ms. Caulford and their son, and he remained there until Detroit police officers awoke the household and arrested him around 5:00 am the following morning.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 27 of the Complaint and therefore leave Plaintiff to his proofs.**

## The Police Investigation

28.     Notwithstanding his absolute innocence, Mr. Nixon was arrested

shortly after the fire based on a statement made by one of Naomi Vaughn's children,

13-year-old Brandon Vaughn ("Brandon").

> **Defendant Officers' Answer: Defendants admit only that Plaintiff was arrested.  Defendants deny the remaining allegations in Paragraph 28 of the Complaint.**

29.     Brandon had met Mr. Nixon through his mother's boyfriend Ronrico

Simmons. Mr. Nixon and Mr. Simmons had been good friends but had a falling out

several months earlier—in January 2005—after Mr. Nixon found out that Mr.

Simmons and Latoya Caulford had had a brief affair.

> **Defendant Officers' Answer: Defendants    are    without    sufficient information to admit or deny the allegations in Paragraph 29 of the Complaint and therefore leave Plaintiff to his proofs.**

30.     Brandon gave a number of statements to the police identifying Mr.

Nixon as having started the fire, all of which were known at the time by Defendants

to be inconsistent and unreliable.

> **Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in paragraph 30 of the Complaint and therefore leaves Plaintiff to his proofs.**

> **Defendant Tolbert's Answer: Tolbert admits only that Brandon gave multiple statements to the police after the fire.  Tolbert denies the remaining allegations in Paragraph 30 of the Complaint.**

> **Defendant Staples's Answer: Staples admits only that Brandon gave**

10

multiple statements to the police after the fire. Staples denies the remaining allegations in Paragraph 30 of the Complaint.

**Defendant Croxton's Answer:** Croxton is without sufficient information to admit or deny the allegations in paragraph 30 of the Complaint and therefore leaves Plaintiff to his proofs.

**Defendant Hughes-Grubbs's Answer:** Hughes-Grubbs is without sufficient information to admit or deny the allegations in paragraph 30 of the Complaint and therefore leaves Plaintiff to his proofs.

31.     For example, shortly after the fire, Brandon told police officers and the arson investigator that he was upstairs in his bedroom when he heard a "boom" and then the second floor erupted in flames. Brandon allegedly ran downstairs and outside where he saw Mr. Nixon getting into a green car; he could not identify the driver of the car.

**Defendant Jimenez's Answer:** Jimenez is without sufficient information to admit or deny the allegations in paragraph 31 of the Complaint and therefore leaves Plaintiff to his proofs.

**Defendant Tolbert's Answer:** Tolbert admits only that Brandon gave multiple statements to the police after the fire and that said written statements speak for themselves. Tolbert denies the remaining allegations in Paragraph 31 of the Complaint.

**Defendant Staples's Answer:** Staples admits only that Brandon gave multiple statements to the police after the fire and that said written statements speak for themselves. Staples denies the remaining allegations in Paragraph 31 of the Complaint.

**Defendant Croxton's Answer:** Croxton is without sufficient information to admit or deny the allegations in paragraph 31 of the Complaint and therefore leaves Plaintiff to his proofs.

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in paragraph 31 of the Complaint and therefore leaves Plaintiff to his proofs.**

32.     Just a few hours later, and *after* the firefighters determined that a Molotov cocktail was used to start the fire, Brandon gave a different story, telling Defendant Staples that he was outside on his front porch when he allegedly saw Mr. Nixon throw a glass bottle into the second story of the house and then saw Mr. Nixon get into the passenger side of a car, but he could not see who was driving it.

**Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in Paragraph 32 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Tolbert's Answer: Tolbert admits only that Brandon gave multiple statements to the police after the fire and that said written statements speak for themselves.    Tolbert denies the remaining allegations in Paragraph 32 of the Complaint.**

**Defendant Staples's Answer: Staples admits only that Brandon gave multiple statements to the police after the fire and that said written statements speak for themselves.  Staples denies the remaining allegations in Paragraph 32 of the Complaint.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 32 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 32 of the Complaint and therefore leaves Plaintiff to his proofs.**

33.     The next day Brandon changed his story once again, saying that he now

allegedly saw Mr. Nixon's girlfriend Latoya Caulford driving the getaway car, having previously and repeatedly denied being able to identify the driver.

> **Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in Paragraph 33 of the Complaint and therefore leaves Plaintiff to his proofs.**

> **Defendant Tolbert's Answer: Tolbert admits only that Brandon gave multiple statements to the police after the fire and that said written statements speak for themselves.   Tolbert denies the remaining allegations in Paragraph 33 of the Complaint.**

> **Defendant Staples's Answer: Staples admits only that Brandon gave multiple statements to the police after the fire and that said written statements speak for themselves.  Staples denies the remaining allegations in Paragraph 33 of the Complaint.**

> **Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 33 of the Complaint and therefore leaves Plaintiff to his proofs.**

> **Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 33 of the Complaint and therefore leaves Plaintiff to his proofs.**

34.     Ronrico Simmons also gave inconsistent statements to the police, including about how the fire started and whether he and Plaintiff had had a feud or whether Plaintiff and Ms. Caulford were involved in the fire.

> **Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in Paragraph 34 of the Complaint and therefore leaves Plaintiff to his proofs.**

> **Defendant Tolbert's Answer: Tolbert admits only that Simmons gave multiple statements to the police after the fire and that said written**

statements speak for themselves. Tolbert denies the remaining allegations in Paragraph 34 of the Complaint.

**Defendant Staples's Answer: Staples admits only that Simmons gave multiple statements to the police after the fire and that said written statements speak for themselves. Staples denies the remaining allegations in Paragraph 34 of the Complaint.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 34 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 34 of the Complaint and therefore leaves Plaintiff to his proofs.**

35. So fraught were these inconsistent statements that Defendant Staples admitted in a memo to Defendant Tolbert that it was "obvious[]" that Brandon had been "coached by family members." Defendants Staples and Tolbert withheld this memo from the prosecutor and the defense.

**Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in Paragraph 35 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Tolbert's Answer: Tolbert admits only Staples sent him a memo regarding the investigation of the fire. Tolbert denies the remaining allegations in Paragraph 35 of the Complaint.**

**Defendant Staples's Answer: Staples admits only that he sent Tolbert a memo regarding the investigation of the fire. Staples denies the remaining allegations in Paragraph 35 of the Complaint.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 35 of the Complaint and**

therefore leaves Plaintiff to his proofs.

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 35 of the Complaint and therefore leaves Plaintiff to his proofs.**

36.     Defendant Staples wrongfully relied on Brandon's statements to arrest and charge Plaintiff, despite knowing that they were false.

**Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in Paragraph 36 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 36 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Staples's Answer: Staples denies the allegations in Paragraph 36 of the Complaint.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 36 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 36 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendants Fabricate Evidence to Try to Corroborate Brandon's False Identification**

37.     Rather than investigate the fire and determine the identity of the true perpetrator, Defendant Officers short-circuited the police investigation and fabricated evidence to corroborate Brandon's coached and false identification of Plaintiff.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 37 of the Complaint.**

38.     For example, one of the family members that was home with Mr. Nixon at the time of the Charleston Fire was Mario Mahdi, Latoya Caulford's cousin.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 38 of the Complaint and therefore leave Plaintiff to his proofs.**

39.     When Mr. Nixon was arrested, Mr. Mahdi was also at home. At that time, the police told Mr. Mahdi to get on the ground, handcuffed him and placed a gun to his neck.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 39 of the Complaint and therefore leave Plaintiff to his proofs.**

40.     The police then drove Mr. Mahdi past the crime scene on their way to the police station where he was interrogated. Rather than listen to what Mr. Mahdi had to say, Defendant Sgt. Croxton lied to Mr. Mahdi and told him as a "fact" that Plaintiff started the fire. Defendant Croxton then intentionally and falsely reported that Mr. Mahdi arrived home later than he actually did, thus knowingly undermining Plaintiff's alibi.

**Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in Paragraph 40 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 40 of the Complaint and**

16

therefore leaves Plaintiff to his proofs.

**Defendant Staples's Answer: Staples is without sufficient information to admit or deny the allegations in Paragraph 40 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Croxton's Answer: Croxton denies the allegations in Paragraph 40 of the Complaint.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 40 of the Complaint and therefore leaves Plaintiff to his proofs.**

41.    Additionally, because he had absolutely nothing to do with the fire, Plaintiff agreed to submit to a polygraph. Defendant Staples told Plaintiff that if he passed the polygraph, he could go home.

**Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in Paragraph 41 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 41 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Staples's Answer: Staples denies informing Plaintiff that if he passed the polygraph he could go home.  Staples is without sufficient information to admit or deny the remaining allegations in Paragraph 41 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 41 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 41**

**of the Complaint and therefore leaves Plaintiff to his proofs.**

42.     On May 20, 2005, Defendant Alma Hughes-Grubbs administered a polygraph to Plaintiff, which he passed. However, Defendant Hughes-Grubbs fabricated that Plaintiff had failed the polygraph.

> **Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in Paragraph 42 of the Complaint and therefore leaves Plaintiff to his proofs.**
>
> **Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 42 of the Complaint and therefore leaves Plaintiff to his proofs.**
>
> **Defendant Staples's Answer: Staples is without sufficient information to admit or deny the allegations in Paragraph 42 of the Complaint and therefore leaves Plaintiff to his proofs.**
>
> **Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 42 of the Complaint and therefore leaves Plaintiff to his proofs.**
>
> **Defendant Hughes-Grubbs's Answer: Hughes-Grubbs denies the allegations in Paragraph 42 of the Complaint.**

43.     In fact, when Mr. Nixon was given a polygraph by an independent examiner a few years later, he passed. That is because Mr. Nixon is innocent of this crime.

> **Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 43 of the Complaint and therefore leave Plaintiff to his proofs.**

44.     Nonetheless, based on Brandon's identification and the Defendant

18

Officers' fabricated evidence implicating Mr. Nixon in the fire, Mr. Nixon was arrested and charged with arson and murder.

**Defendant Officers' Answer: Defendants admit only that Plaintiff was arrested and charged with arson and murder.  Defendants deny the remaining allegations in Paragraph 44 of the Complaint,**

45.     He was falsely imprisoned continuously from May 20, 2005, the date of his arrest, until his exoneration and release on February 18, 2021.

**Defendant Officers' Answer: Defendants admit only that Plaintiff was incarcerated from the time of his arrest until his release.  Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 45 of the Complaint and therefore leave Plaintiff to his proofs.**

### The Withheld Muscat Memo and Fabricated Jailhouse Informant

46.     On August 3, 2005, Wayne County prosecutor Patrick Muscat wrote a Memorandum to Defendant Tolbert ("Muscat Memo"). In the Muscat Memo, Mr. Muscat described the arson-murder as "an extremely high profile case" that had "serious problems." Mr. Muscat directed Defendant Tolbert to "find a way to corroborate [Brandon's] testimony" because there was a "desperate need" for more evidence.

**Defendant Officers' Answer: Defendants admit only that Plaintiff has produced a memo purportedly written by Wayne County prosecutor Patrick Muscat and that said memo speaks for itself.**

47.     Mr. Muscat also directed Defendant Tolbert to follow-up on evidence that Ms. Vaughn's prior home had been firebombed by a jealous boyfriend. While

the findings of their investigation suggested a perpetrator other than Plaintiff of the arson for which he was being prosecuted, on information and belief, Defendant Officers failed to disclose this evidence to Mr. Muscat or to Plaintiff during his criminal proceedings.

> **Defendant Jimenez's Answer: Jimenez denies withholding any exculpatory evidence from the prosecution in Plaintiff's case. Jimenez is without sufficient information to admit or deny the remaining allegations in Paragraph 47 of the Complaint.**

> **Defendant Tolbert's Answer: Tolbert admits only that he and Mr. Muscat discussed the investigation into the fire. Tolbert denies the remaining allegations in Paragraph 47 of the Complaint.**

> **Defendant Staples's Answer: Staples denies withholding any exculpatory evidence from the prosecution in Plaintiff's case. Staples is without sufficient information to admit or deny the remaining allegations in Paragraph 47 of the Complaint.**

> **Defendant Croxton's Answer: Croxton denies withholding any exculpatory evidence from the prosecution in Plaintiff's case. Croxton is without sufficient information to admit or deny the remaining allegations in Paragraph 47 of the Complaint.**

> **Defendant Hughes-Grubbs's Answer: Hughes-Grubbs denies withholding any exculpatory evidence from the prosecution in Plaintiff's case. Hughes-Grubbs is without sufficient information to admit or deny the remaining allegations in Paragraph 47 of the Complaint.**

48.     Instead, Defendants myopically focused on shoring up evidence of Plaintiff's purported guilt, which included Defendant Tolbert asking Defendant Jimenez to speak with Plaintiff's cellmates.

**Defendant Jimenez's Answer: Jimenez admits only that Tolbert asked him to speak with other inmates. Jimenez denies the remaining allegations in Paragraph 48 of the Complaint and specifically denies "shoring up evidence," to the extent said phrase means fabricating evidence.**

**Defendant Tolbert's Answer: Tolbert admits only that he asked Jimenez to speak with other inmates. Tolbert denies the remaining allegations in Paragraph 48 of the Complaint and specifically denies "shoring up evidence," to the extent said phrase means fabricating evidence.**

**Defendant Staples's Answer: Staples denies "shoring up evidence," to the extent said phrase means fabricating evidence. Staples is without sufficient information to admit or deny the remaining allegations in Paragraph 48 of the Complaint.**

**Defendant Croxton's Answer: Croxton denies "shoring up evidence," to the extent said phrase means fabricating evidence. Croxton is without sufficient information to admit or deny the remaining allegations in Paragraph 48 of the Complaint.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs denies "shoring up evidence," to the extent said phrase means fabricating evidence. Hughes-Grubbs is without sufficient information to admit or deny the remaining allegations in Paragraph 48 of the Complaint.**

49.     On information and belief, Defendant Tolbert asked Defendant Jimenez to conduct this follow-up investigation—instead of one of the original detectives on the Charleston Fire investigation—because Defendant Tolbert, as Commander of Major Crimes, knew that Defendant Jimenez would "find a way to corroborate [Brandon's] testimony" regardless of what the evidence actually showed.

**Defendant Jimenez's Answer: Jimenez is without sufficient information to admit or deny the allegations in Paragraph 49 of the Complaint and**

21

therefore leaves Plaintiff to his proofs.

**Defendant Tolbert's Answer: Tolbert denies the allegations in Paragraph 49 of the Complaint.**

**Defendant Staples's Answer: Staples is without sufficient information to admit or deny the allegations in Paragraph 49 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 49 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 49 of the Complaint and therefore leaves Plaintiff to his proofs.**

50.     On information and belief, Defendant Jimenez could not find a single

cellmate of Plaintiff's who could implicate Plaintiff in any way.

**Defendant Jimenez's Answer: Jimenez denies the allegations in Paragraph 50 of the Complaint.**

**Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 50 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Staples's Answer: Staples is without sufficient information to admit or deny the allegations in Paragraph 50 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 50 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 50**

**of the Complaint and therefore leaves Plaintiff to his proofs.**

51.    Consequently, Defendant Jimenez turned to an informant he had worked with before, who had been on the same cellblock as Plaintiff Nixon for approximately three (3) days in May 2005.

> **Defendant Jimenez's Answer: Jimenez admits only that he spoke to an inmate who had been incarcerated with Plaintiff.  Jimenez is without information sufficient to admit or deny the remaining allegations in Paragraph 51 of the Complaint and therefore leaves Plaintiff to his proofs.**

> **Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 51 of the Complaint and therefore leaves Plaintiff to his proofs.**

> **Defendant Staples's Answer: Staples is without sufficient information to admit or deny the allegations in Paragraph 51 of the Complaint and therefore leaves Plaintiff to his proofs.**

> **Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 51 of the Complaint and therefore leaves Plaintiff to his proofs.**

> **Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 51 of the Complaint and therefore leaves Plaintiff to his proofs.**

52.    Defendant Jimenez told the informant that he needed the informant to help him with a case.

> **Defendant Jimenez's Answer: Jimenez admits only that he spoke to an inmate who had been incarcerated with Plaintiff.  Jimenez denies the remaining allegations in Paragraph 52 of the Complaint.**

**Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 52 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Staples's Answer: Staples is without sufficient information to admit or deny the allegations in Paragraph 52 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 52 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 52 of the Complaint and therefore leaves Plaintiff to his proofs.**

53.     Rather than ask the informant about any conversations he had had with Plaintiff and what the informant knew about the Charleston Fire, Defendant Jimenez fed the informant the information he wanted the informant to say, including the false statement that Plaintiff confessed to the informant that he had committed the crime.

**Defendant Jimenez's Answer: Jimenez denies the allegations in Paragraph 53 of the Complaint.**

**Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 53 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Staples's Answer: Staples is without sufficient information to admit or deny the allegations in Paragraph 53 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 53 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 53 of the Complaint and therefore leaves Plaintiff to his proofs.**

54.    In exchange for adopting Defendant Jimenez's false narrative inculpating Mr. Nixon in the crime, Defendant Jimenez promised the informant that he would get a reduced sentence on his own pending case and that the informant would get out of prison in time to see his daughter graduate from high school.

**Defendant Jimenez's Answer: Jimenez denies the allegations in Paragraph 54 of the Complaint.**

**Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 54 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Staples's Answer: Staples is without sufficient information to admit or deny the allegations in Paragraph 54 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 54 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 54 of the Complaint and therefore leaves Plaintiff to his proofs.**

55.    The informant agreed to parrot back the fabricated statements that Defendant Jimenez fed him, including that Mr. Nixon confessed to committing the crime, in exchange for the promise that he would be released early.

**Defendant Jimenez's Answer: Jimenez denies the allegations in Paragraph 55 of the Complaint.**

**Defendant Tolbert's Answer: Tolbert is without sufficient information to admit or deny the allegations in Paragraph 55 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Staples's Answer: Staples is without sufficient information to admit or deny the allegations in Paragraph 55 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Croxton's Answer: Croxton is without sufficient information to admit or deny the allegations in Paragraph 55 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs is without sufficient information to admit or deny the allegations in Paragraph 55 of the Complaint and therefore leaves Plaintiff to his proofs.**

56.    The informant's statement was entirely false. Mr. Nixon never confessed to him that he was responsible for the Charleston Fire. Mr. Nixon is innocent of the Charleston Fire.

**Defendant Officers' Answer: Defendants are without information sufficient to admit or deny the allegations in Paragraph 56 of the Complaint and therefore leave Plaintiff to his proofs.**

57.    No one ever disclosed to the prosecutor or the defense the promises that Defendant Jimenez made to the informant in exchange for his testimony in Plaintiff's criminal case, or the fact that the information in the informant's statement was fed to him and fabricated by Defendant Jimenez.

**Defendant Jimenez's Answer: Jimenez denies the allegations in Paragraph 57 of the Complaint.**

**Defendant Tolbert's Answer: Tolbert denies withholding exculpatory evidence from the prosecution in Plaintiff's case.  Tolbert is without**

sufficient information to admit or deny the remaining allegations in Paragraph 57 of the Complaint and therefore leaves Plaintiff to his proofs.

**Defendant Staples's Answer: Staples denies withholding exculpatory evidence from the prosecution in Plaintiff's case. Staples is without sufficient information to admit or deny the remaining allegations in Paragraph 57 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Croxton's Answer: Croxton denies withholding exculpatory evidence from the prosecution in Plaintiff's case. Croxton is without sufficient information to admit or deny the remaining allegations in Paragraph 57 of the Complaint and therefore leaves Plaintiff to his proofs.**

**Defendant Hughes-Grubbs's Answer: Hughes-Grubbs denies withholding exculpatory evidence from the prosecution in Plaintiff's case. Hughes-Grubbs is without sufficient information to admit or deny the remaining allegations in Paragraph 57 of the Complaint and therefore leaves Plaintiff to his proofs.**

58.    Nor did anyone ever disclose to the defense the Muscat Memo or its contents.

**Defendant Officers' Answer: Defendants are without information sufficient to admit or deny the allegations in Paragraph 58 of the Complaint and therefore leave Plaintiff to his proofs.**

### Mr. Nixon's Trial

59.    Based on Brandon's "coached" testimony and the informant's fabricated testimony, Mr. Nixon was convicted of arson, murder, and attempted murder.

**Defendant Officers' Answer: Defendants admit only that Plaintiff was convicted of arson, murder, and attempted murder. Defendants are without sufficient information to admit or deny the basis for the jury's conviction and therefore leave Plaintiff to his proofs. Defendants deny the remaining allegations in Paragraph 59 of the Complaint and specifically deny "coaching" witness or "fabricating" evidence.**

60.     At his sentencing, Mr. Nixon stated: "I just would like you to know that you're about to sentence an innocent man to prison."

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 60 of the Complaint and therefore leave Plaintiff to his proofs.**

61.     He was then sentenced to two life terms in prison without parole on the murders and 10-20 years on each of the arson and attempted murder convictions.

**Defendant Officers' Answer: Defendants admit the allegations in Paragraph 61 of the Complaint.**

### Mr. Nixon's Exoneration

62.     Never giving up hope of proving his innocence, Plaintiff continued to pursue appeals and other means to secure his freedom.

**Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 62 of the Complaint and therefore leave Plaintiff to his proofs.**

63.     The Cooley Law Innocence Project took up Plaintiff's cause in or about 2016 and, in or about 2018, convinced the CIU to undertake a re-investigation of Mr. Nixon's case.

**Defendant Officers' Answer: Defendants are without sufficient**

information to admit or deny the allegations in Paragraph 63 of the Complaint and therefore leave Plaintiff to his proofs.

64.     Following that re-investigation, on February 18, 2021, Wayne County Circuit Court Judge Bruce Morrow entered a Stipulated Order vacating Plaintiff's conviction; all charges against Mr. Nixon were then dismissed.

**Defendant Officers' Answer: Defendants admit only that Plaintiff's conviction was vacated.  Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 64 of the Complaint and therefore leave Plaintiff to his proofs.**

### The City of Detroit's Policy and Practice of Conducting Flawed Investigations

65.     The constitutional violations that caused Plaintiff's wrongful conviction were not isolated events. To the contrary, they were the result of Defendant City of Detroit's longstanding policies and practices of pursuing wrongful convictions through reliance on profoundly flawed investigations and fabricated "informant" testimony.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 65 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 65 of the Complaint.**

66.     Defendant City of Detroit, acting through the Detroit Police Department ("DPD") has a long history of using testimony of jailhouse snitches without any regard to the accuracy of their statements.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 66 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 66 of the Complaint.**

67.     In the decade prior to Mr. Nixon's arrest, in particular, DPD officers engaged in a persistent and widespread pattern and practice of offering bribes and favors to inmates in exchange for false incriminating testimony to "solve" homicide cases.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 67 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 67 of the Complaint.**

68.     In the 1990s through the 2000s, homicide detectives regularly offered perks (e.g., food and drink, drugs, conjugal visits, television privileges, and leniency) to detainees in exchange for testimony against other detainees; officers provided prewritten witness statements for detainees to memorize and/or they provided confidential information from the case files in order to fabricate credibility. For example,

a. Informant Edward Allen spent two years detained on the ninth floor of DPD headquarters and provided testimony against five other detainees in exchange for favors, including a sexual relationship with homicide detective Monica Childs, who prompted him to give false testimony against Larry Smith Jr. in 1994 (who was exonerated in 2021);

b. Informant Joe Twilley claims 40 to 50 different inmates confessed their

crimes to him, and police say he provided testimony in at least 20 cases, including falsely testifying to Ramon Ward's "confession" in 1994 (who was then exonerated in 2020), and a similar false "confession" of Bernard Howard the same year (who was also exonerated in 2020);

c. Informant Oliver Cowan helped secure at least six murder convictions, including Roman Ward (mentioned above), and he gave false testimony provided to him in a prewritten statement implicating Lacino Hamilton in 1994 (who was exonerated in 2020); and

d. Informant Ellis Frazier Jr. falsely testified in 2001 that, while occupying a holding cell adjacent to Marvin Cotton, Mr. Cotton implicated himself in a fatal shooting; he later confessed that the false statement was provided to him by a homicide detective, and Mr. Cotton and his co-defendant were exonerated in 2020.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 68 of the Complaint does not require an answer. To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 68 of the Complaint, including its subparts.**

69.     This widespread practice within the DPD was well known, approved, and encouraged by command officers and policymakers for Defendant City prior to Plaintiff's arrest. For example, in 1995, a Wayne County prosecutor raised concerns about the DPD's misconduct relating to informants. Those concerns went unanswered and were again raised just two years prior to Plaintiff's arrest during an evidentiary hearing in another matter. Yet the practice persisted for decades and, on information and belief, continues to date.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 69 of the Complaint does not require an answer. To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny**

the allegations in Paragraph 69 of the Complaint.

70.     Similarly, at all relevant times herein, DPD had a practice of arresting material witnesses without probable cause, transporting them without reasonable suspicion or consent, using unreasonable and excessive means – including arresting, transporting, using excessive force, pointing guns at, and/or lying to witnesses – to harass and intimidate witnesses into signing false or misleading written statements in order to fabricate inculpatory evidence and/or falsely undermine exculpatory evidence. For example:

a. Janetta Toles was arrested by DPD officers in 1997 and held for four days and interrogated regarding suspected criminal activity by other people in her apartment building; in Ms. Toles' civil suit, a DPD homicide sergeant admitted that holding innocent witnesses overnight was common practice and part of their training at the time;

b. In statistics reported to the FBI in 1998 and 1999, the DPD was making a disproportionate number of arrests related to homicide cases that far exceeded the number of homicides themselves.

c. In 2000, Maribel Franco-Rosario was held for three-and-a-half days for questioning by DPD homicide detectives, including Defendant Jimenez, based only on their suspicion of her husband;

d. In 2001, DPD officers arrested Barbara Berry along with several family members and a friend and interrogated them (including a seven-year-old) about a murder suspect; the adults were detained for fourteen hours, and none of them were suspected of committing any crime;

e. Also in 2001, high ranking officials for Defendant City acknowledged that they needed to take steps to ensure that unlawful witness detention would no longer occur; and

f. These practices continued for several years, including throughout 2005 and the arrest of Mr. Mahdi.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 70 of the Complaint does not require an answer.   To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 70 of the Complaint, including its subparts.**

71.    This practice was well known, approved, and encouraged by command officers and official policymakers for Defendant City prior to Plaintiff's arrest. On information and belief, these practices continue to date.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 71 of the Complaint does not require an answer.   To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 71 of the Complaint.**

72.    DPD also has a longstanding pattern and practice of withholding exculpatory evidence from prosecutors and criminal defendants, which has directly caused dozens, if not hundreds, of wrongful convictions, including the wrongful conviction of Mr. Nixon. This practice was well known, approved, encouraged, and ratified by command officers and official policymakers for Defendant City prior to Plaintiff's arrest and continues to date.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 72 of the Complaint does not require an answer.   To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 72 of the Complaint.**

73.    73. Defendant City's deliberate indifference to these systemic issues,

policies, and patterns of practice directly and affirmatively were a moving force in the wrongful conviction of Plaintiff and the violation of his constitutional rights, as described herein.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 73 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 73 of the Complaint.**

**The City of Detroit's Failure to Train, Supervise and Discipline**

74.    In addition, the Defendant City of Detroit's failure to train, supervise and discipline its police officers was a moving force in the violation of Plaintiff's constitutional rights, as set forth herein.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 74 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 74 of the Complaint.**

75.    Defendant City, acting through the DPD, failed to train its police officers on the appropriate use of inmates as informants or witnesses in criminal cases. Specifically, the City failed to provide guidance, training or supervision to ensure the accuracy and veracity of the testimony of jailhouse informants and/or to prevent the fabrication of testimony in exchange for favors, leniency, or other benefits.

**Defendant Officers' Answer: As Count VI of the Complaint has been**

34

**dismissed, (ECF No. 67, PageID.3076) Paragraph 75 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 75 of the Complaint.**

76.     The need for such guidance, training and supervision is, and was at all relevant times hereto, patently obvious for any law enforcement agency that has utilized informants. In the City of Detroit in 2005, and at all relevant times hereto, the pattern of unconstitutional conduct in the use of jailhouse informants, as described above, was so widespread that high-ranking officers and policymakers were aware of the need for new or different supervision and training and, yet, declined to provide it.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 76 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 76 of the Complaint.**

77.     At all relevant times hereto, the City also failed to provide training and/or supervision to its officers regarding the treatment of witnesses; specifically, Defendant City provided no safeguards against harassment and intimidation of material witnesses and to protect against false or misleading witness statements unduly influenced by police.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 77 of the Complaint does not require an answer.  To the extent an answer is required,**

**Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 77 of the Complaint.**

78.    The need for such guidance, training and supervision is, and was at all relevant times hereto, obvious for any law enforcement agency, and particularly in the City of Detroit in 2005, where the pattern of unconstitutional conduct in using jailhouse informants, as described above, was so widespread that high-ranking officers and official policymakers were aware of the need for new or different training and supervision and yet were deliberately indifferent to the need for said guidance, training and supervision, and/or intentionally declined to provide it.

**As Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 78 of the Complaint does not require an answer.   To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 78 of the Complaint.**

79.    Even when there were determinations of misconduct, regarding use of inmates as informants or witnesses and/or the treatment of said witnesses, Defendant City, acting through its high-ranking officers and/or official policymakers in the DPD, failed to discipline said officers or hold them accountable in any meaningful way, thereby ratifying said misconduct.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 79 of the Complaint does not require an answer.   To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 79 of the Complaint.**

80.    At all relevant times hereto, Defendant City also failed to provide training and/or supervision to its police officers on ensuring the full disclosure of exculpatory and impeachment evidence to prosecutors, criminal defendants and their counsel.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 80 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 80 of the Complaint.**

81.    The need for such guidance, training and supervision is, and was at all relevant times hereto, obvious for any law enforcement agency. In the City of Detroit in 2005 and at all relevant times hereto, the pattern of unconstitutional conduct in withholding exculpatory and impeachment evidence, as described above, was so widespread that high-ranking officers and official policymakers were aware of the need for new or different training and supervision and were deliberately indifferent to the need and/or intentionally declined to provide it.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 81 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 81 of the Complaint.**

82.    Even when there were determinations of misconduct, regarding use of inmates as informants or witnesses and/or the treatment of said witnesses, Defendant City, acting through its high-ranking officers and/or official policymakers in the

DPD, failed to discipline said officers or hold them accountable in any meaningful way, thereby ratifying said misconduct.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 82 of the Complaint does not require an answer.   To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 82 of the Complaint.**

### Defendants' Repeated Misconduct

83.    Finally, Defendant City failed to supervise and discipline the Officer Defendants in this matter as well as officers who had pervasive histories of using jailhouse informants to provide false testimony, arresting and intimidating material witnesses to provide false or misleading statements, and/or withholding exculpatory information from prosecutors and criminal defendants, thereby ratifying said misconduct.

**Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 83 of the Complaint does not require an answer.   To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 83 of the Complaint.**

84.    Defendant Tolbert, for example, was alleged to have been among a group of DPD commanding officers who interfered with the high-profile investigation of the murder of Tamara Greene to protect then-Mayor Kwame Kilpatrick, and he later manufactured evidence against a 14-year-old child, Davontae Sanford, causing Sanford's wrongful conviction for a quadruple homicide for which

Sanford was wrongfully imprisoned for nearly 9 years. Defendant Tolbert has also since been placed on the Wayne County Prosecutor's "Giglio list" for giving false testimony.

> **Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 84 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 84 of the Complaint.**

85.     Defendant Jimenez has a long history of misconduct allegations that were ignored by DPD officials until after his retirement in 2021, including claims that at least twice he arrested homicide witnesses without probable cause in order to extricate information, that he presented false evidence in a request for warrant, and that he withheld evidence in two murder cases, which led to the wrongful conviction of Alexandre Ansari.

> **Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 85 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 85 of the Complaint.**

86.     Supervising officers with policymaking authority were aware of these unconstitutional practices and showed deliberate indifference to, acquiescence in, and/or approval of them.

> **Defendant Officers' Answer: Defendants are without sufficient information to admit or deny the allegations in Paragraph 86 of the**

**Complaint and therefore leave Plaintiff to his proofs.**

## DAMAGES

87.     Defendants' actions deprived Plaintiff Kenneth Nixon of his civil rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and his state law rights.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 87 of the Complaint.**

88.     This action seeks damages for the period from May 20, 2005, the date he was falsely arrested and imprisoned, through each and every year to the present and into the future.

**Defendant Officers' Answer: Defendants admit only that Plaintiff seeks damages as stated.   Defendants deny the remaining allegations in Paragraph 88 of the Complaint and specifically deny Plaintiff's entitlement to any damages.**

89.     Kenneth Nixon's liberty was curtailed upon his arrest on May 20, 2005, and continued for the duration of his incarceration until his release on February 18, 2021.

**Defendant Officers' Answer: Defendants admit only that Plaintiff was incarcerated following his arrest.   Defendants deny the remaining allegations in Paragraph 89 of the Complaint.**

90.     Defendants' unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad faith acts and omissions caused Mr. Nixon to be falsely arrested, tried, wrongfully convicted and incarcerated for nearly sixteen (16) years for crimes

he did not commit.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 90 of the Complaint.**

91.     Defendants' unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad faith acts and omissions caused Kenneth Nixon severe injuries and damages, which continue to date and will continue into the future, for all of which he is entitled monetary relief, including but not limited to:

a. Seizure and loss of liberty;

b. Personal and physical injuries, including assaults, illness and inadequate medical care; Pain and suffering;

d. Severe mental anguish, emotional and psychological distress, humiliation, indignities, embarrassment and degradation;

e. Permanent loss of natural psychological development including the loss of young adulthood, past and future;

f. Loss of family relationships;

g. Damage to business and property;

h. Legal expenses; and

i. Loss of earnings and earning potential.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 91 of the Complaint, including all subparts.**

92.     The conduct of Defendants was reckless and outrageous, entitling

41

Plaintiff to an award of punitive damages from any and all the individual Defendants, herein, as well as costs and reasonable attorney fees, pursuant to 42 U.S.C. §1988.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 92 of the Complaint.**

### COUNT ONE[1]—42 U.S.C. § 1983
### Fourteenth Amendment Due Process

93.    Mr. Nixon incorporates each paragraph of this Complaint as if fully restated here word for word.

**Defendant Officers' Answer: To the extent Paragraph 93 of the Complaint requires an answer, Defendants incorporate their answers to each paragraph of the Complaint.**

94.    As described more fully above, the Defendant Officers, while acting individually, jointly, severally and in conspiracy with one another, as well as under color of law and within the scope of their employment, deliberately, recklessly and/or intentionally deprived Mr. Nixon of his constitutional clearly established Fourteenth Amendment due process right to fair criminal proceedings by, among other things, fabricating inculpatory evidence and withholding exculpatory and/or impeachment evidence.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 94 of the Complaint.**

95.    Absent the Defendant Officers' violations of Mr. Nixon's constitutional

---

[1] As detailed in the Court's Order (ECF No. 67, PageID.3048-3056), Count I consists of a fabrication of evidence claim and a claim under *Brady v. Maryland*.

right to a fair criminal proceeding, the prosecution of Mr. Nixon could not and would not have been pursued.

> **Defendant Officers' Answer: Defendants deny the allegations in Paragraph 95 of the Complaint.**

96.    The misconduct described in this count was undertaken pursuant to the policies and practices of the City of Detroit, in the manner more fully described below, in Count Five.

> **Defendant Officers' Answer: As Count VI of the Complaint has been dismissed, (ECF No. 67, PageID.3076) Paragraph 96 of the Complaint does not require an answer.   To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 96 of the Complaint.**

97.    As a direct and proximate result of Defendant Officers' fabrication of false inculpatory evidence, acting pursuant to the customs, policies and/or practices of Defendant City of Detroit, Defendant Officers violated Kenneth Nixon's clearly established Fourteenth Amendment due process rights, including the right to a fair trial, along with his Fourth Amendment right to be free from unreasonable seizures, Mr. Nixon was wrongfully convicted and suffered the injuries and damages described above.

> **Defendant Officers' Answer: Defendants deny the allegations in Paragraph 97 of the Complaint.**

98.    Acting with recklessness, deliberate indifference and/or intent, by withholding material exculpatory and impeachment evidence prior to, during, and

after trial, Defendant Officers, acting pursuant to the customs, policies and/or practices of Defendant City of Detroit, violated Kenneth Nixon's clearly established Fourteenth Amendment right to due process of law as announced by the United States Supreme Court in *Brady v. Maryland* and its progeny, undermining confidence in the outcome of the trial, and directly and proximately causing Plaintiff Kenneth Nixon to be wrongfully arrested, prosecuted, convicted, and imprisoned, and to suffer the constitutional violations, injuries and damages described above.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 98 of the Complaint.**

99.    As a direct and proximate result of the foregoing actions, Plaintiff Nixon has suffered the following injuries, among others:

a. Unreasonable seizure and loss of liberty;

b. Personal and physical injuries, including assaults, illness and inadequate medical care;

c. Pain and suffering;

d. Severe mental anguish, emotional and psychological distress, humiliation, indignities, embarrassment and degradation;

e. Permanent loss of natural psychological development including the loss of the adolescent years of his childhood and his early manhood, past and future;

f. Loss of family relationships;

g. Damage to business and property;

h. Legal expenses;

i. Loss of earnings and earning potential; and

j. Continuing injuries and damages as fully set forth above.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 99 of the Complaint, including all subparts.**

### COUNT TWO[2]—42 U.S.C. § 1983
**Fourth Amendment Due Process – Unreasonable Seizure and Illegal Detention and Prosecution**

100.   Mr. Nixon incorporates each paragraph of this Complaint as if fully restated here word for word.

**Defendant Officers' Answer: To the extent Paragraph 100 of the Complaint requires an answer, Defendants incorporate their answers to each paragraph of the Complaint.**

101.   As described more fully above, Defendants Officers, individually, jointly, severally and in conspiracy with one another, as well ass under color of law and within the scope of their employment and authority, accused Mr. Nixon of criminal activity and exerted influence to initiate, continue, and perpetuate a criminal prosecution against Plaintiff that was lacking in probable cause, unreasonably instituted, by suppressing exculpatory evidence, fabricating false evidence, and failing to adequately investigate the crime or even follow up on the lead to another more likely suspect, in spite of the fact that they knew Mr. Nixon was innocent, all in violation of his constitutional rights.

**Defendant Officers' Answer: Defendants deny the allegations in**

---

[2] As detailed in the Court's Order (ECF No. 67, PageID.3048-3056), only Plaintiff's Fourth Amendment claim remains in Count II.

**Paragraph 101 of the Complaint.**

102.  In so doing, the Defendants caused Mr. Nixon to be deprived of his liberty without probable cause, detained without probable cause, and subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 102 of the Complaint.**

103.  The prosecution of Plaintiff ultimately terminated in his favor when his conviction was vacated and all charges dismissed in February 2021, post-conviction proceedings.

**Defendant Officers' Answer: Defendants admit only that Plaintiff's conviction was vacated.  Defendants deny the remaining allegations in Paragraph 103 of the Complaint.**

104.  The actions of these Defendants violated Plaintiff's clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and thereby caused his wrongful conviction and the injuries and damages set forth above.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 104 of the Complaint.**

105.  The misconduct described above was undertaken pursuant to the policies and practices of Defendant City of Detroit, in the manner more fully described below in Count Five.

**Defendant Officers' Answer: As Count VI of the Complaint has been**

**dismissed, (ECF No. 67, PageID.3076) Paragraph 105 of the Complaint does not require an answer.  To the extent an answer is required, Defendant Officers do not have sufficient information to admit or deny the allegations in Paragraph 105 of the Complaint.**

106.   As a direct and proximate result of the foregoing actions, Plaintiff Nixon has suffered the following injuries, among others:

a. Seizure and loss of liberty, resulting in:

b. Personal and physical injuries, including assaults, illness and inadequate medical care;

c. Pain and suffering;

 d. Severe mental anguish, emotional and psychological distress, humiliation, indignities, embarrassment and degradation;

e. Permanent loss of natural psychological development including the loss of the adolescent years of his childhood and his early manhood, past and future;

f. Loss of family relationships;

g. Damage to business and property;

h. Legal expenses;

i. Loss of earnings and earning potential; and

j. Continuing injuries and damages as fully set forth above.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 106 of the Complaint, including all subparts.**

<u>**COUNT THREE—42 U.S.C. § 1983**</u>
**Failure to Intervene**

107.   Mr. Nixon incorporates each paragraph of this Complaint as if fully restated here.

**Defendant Officers' Answer: To the extent Paragraph 107 of the Complaint requires an answer, Defendants incorporate their answers to each paragraph of the Complaint.**

108.   In the manner described more fully above, by their conduct and under color of law, during the constitutional violations described herein, one or more of the Defendant Officers stood by without intervening to prevent the violation of Mr. Nixon's constitutional rights, even though they had the opportunity and duty to do so.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 108 of the Complaint.**

109.   The Defendant Officers' actions and omissions in the face of a constitutional duty to intervene were the direct and proximate cause of Mr. Nixon's constitutional violations and injuries, including but not limited to loss of liberty, physical harm and emotional distress.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 109 of the Complaint.**

110.   The actions of these Defendants violated Plaintiff's clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and thereby caused his wrongful conviction and the injuries and damages set forth above.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 110 of the Complaint.**

111.   The misconduct described in this count was undertaken pursuant to the

policies and practices of the City of Detroit, in the manner more fully described below in Count Five.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 111 of the Complaint.**

112. As a direct and proximate result of the foregoing actions, Plaintiff Nixon has suffered the following injuries, among others:

a. Seizure and loss of liberty, resulting in:

> i. Restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, movement, educational opportunities, vocational opportunities, athletic opportunities, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression;

b. Personal and physical injuries, including assaults, illness and inadequate medical care;

c. Pain and suffering;

d. Severe mental anguish, emotional and psychological distress, humiliation, indignities, embarrassment and degradation;

e. Permanent loss of natural psychological development including the loss of the adolescent years of his childhood and his early manhood, past and future;

f. Loss of family relationships;

g. Damage to business and property;

h. Legal expenses;

i. Loss of earnings and earning potential; and

j. Continuing injuries and damages as fully set forth above.

**Defendant Officers' Answer: Defendants deny the allegations in Paragraph 112 of the Complaint, including all subparts.**

## <u>COUNT FOUR—42 U.S.C. § 1983</u>
### SUPERVISOR LIABILITY

113.   Supervisory Defendant Staples was the officer in charge of the investigation and prosecution of Mr. Nixon. Defendant Tolbert was the supervisor of the Homicide Division and was personally involved in overseeing this "high profile" case.

**Defendant Croxton's Answer: Defendants Jimenez, Croxton, and Hughes-Grubbs are without sufficient information to admit or deny the allegations in Paragraph 113 of the Complaint and therefore leave Plaintiff to his proofs.**

**Defendant Tolbert's Answer: Tolbert admits only that he was the supervisor of the Homicide Division.  Tolbert denies the remaining allegations in Paragraph 113 of the Complaint.**

**Defendant Staples' Answer: Staples admits only that he was the officer in charge of the investigation of the fire.  Staples denies the remaining allegations in Paragraph 113 of the Complaint and specifically denies being in charge of the prosecution of Plaintiff.**

114.   Supervisory Defendants Staples and Tolbert gave direct orders causing the violation of Mr. Nixon's constitutional rights and/or encouraged or knowingly approved of the actions of other officers under their authority in their actions that violated the constitutional rights of Mr. Nixon, to wit:

a. They directed and/or approved of Defendant Croxton's treatment of a material witness to fabricate an inaccurate witness statement and falsely undermine Mr. Nixon's alibi,

b. They directed and/or approved of Defendant Hughes-Grubbs' fabricated polygraph result, and

c. They directed and/or approved of Defendant Jimenez procuring fabricated testimony from a jailhouse informant.

**Defendant Croxton's Answer: Defendants Jimenez, Croxton, and Hughes-Grubbs are without sufficient information to admit or deny the allegations in Paragraph 114 of the Complaint and therefore leave Plaintiff to his proofs.**

**Defendant Tolbert's Answer: Tolbert denies the allegations in Paragraph 114 of the Complaint.**

**Defendant Staples's Answer: Staples denies the allegations in Paragraph 114 of the Complaint.**

115.   The actions of these Defendants violated Plaintiff's clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and thereby caused his wrongful conviction and the injuries and damages set forth above.

**Defendant Croxton's Answer: Defendants Jimenez, Croxton, and Hughes-Grubbs are without sufficient information to admit or deny the allegations in Paragraph 115 of the Complaint and therefore leave Plaintiff to his proofs.**

**Defendant Tolbert's Answer: Tolbert denies the allegations in Paragraph 115 of the Complaint.**

**Defendant Staples's Answer: Staples denies the allegations in Paragraph 115 of the Complaint.**

116.   As a direct and proximate result of the foregoing actions, Plaintiff Nixon has suffered the following injuries, among others:

a. Unreasonable seizure and loss of liberty;

b. Personal and physical injuries, including assaults, illness and inadequate medical care;

c. Pain and suffering;

d. Severe mental anguish, emotional and psychological distress, humiliation, indignities, embarrassment and degradation;

e. Permanent loss of natural psychological development including the loss of the adolescent years of his childhood and his early manhood, past and future;

f. Loss of family relationships;

g. Damage to business and property;

h. Legal expenses;

i. Loss of earnings and earning potential; and

j. Continuing injuries and damages as fully set forth above.

**Defendant Croxton's Answer: Defendants Jimenez, Croxton, and Hughes-Grubbs are without sufficient information to admit or deny the allegations in Paragraph 116 of the Complaint and therefore leave Plaintiff to his proofs.**

**Defendant Tolbert's Answer: Tolbert denies the allegations in Paragraph 114 of the Complaint.**

**Defendant Staples's Answer: Staples denies the allegations in Paragraph 114 of the Complaint.**

### <u>COUNT FIVE—42 U.S.C. § 1983</u>
### Conspiracy to Deprive Constitutional Rights

Count V of the Complaint has been dismissed.  (ECF No. 67, PageID.3076.)

As such, paragraphs 117-123 of the Complaint require no response.

## COUNT SIX—42 U.S.C. §1983
### City of Detroit Municipal Liability Under *Monell:*
### Policy and Practice Claim

Count VI of the Complaint has been dismissed.  (ECF No. 67, PageID.3076.)

As such, paragraphs 124-132 of the Complaint require no response.

## COUNT SEVEN—State Law Claim
### Malicious Prosecution

Count VII of the Complaint has been dismissed.  (ECF No. 67, PageID.3076.)

As such, paragraphs 133-140 of the Complaint require no response.

## COUNT EIGHT—State Law Claim
### Civil Conspiracy

Count VIII of the Complaint has been dismissed.  (ECF No. 67, PageID.3076.)

As such, paragraphs 141-145 of the Complaint require no response.

## PRAYER FOR RELIEF

WHEREFORE, Defendants Moises Jimenez, James Tolbert, Kurtiss Staples, Eddie Croxton, and Alma Hughes-Grubbs, respectfully request that this Honorable Court enter a judgment no cause of action, or in the alternative, that the present cause be dismissed, with prejudice, with costs and attorneys' fees awarded to Defendants.

## RELIANCE UPON JURY TRIAL DEMAND

NOW COME, Defendants Moises Jimenez, James Tolbert, Kurtiss Staples, Eddie Croxton, and Alma Hughes-Grubbs, by and through their attorneys, NATHAN & KAMIONSKI LLP, and hereby give notice of their reliance on Plaintiff's demand for trial by jury.

## **DEMAND FOR COMPULSORY JOINDER**

NOW COME, Defendants Moises Jimenez, James Tolbert, Kurtiss Staples, Eddie Croxton, and Alma Hughes-Grubbs, by and through their attorneys, NATHAN & KAMIONSKI LLP, and demand that Plaintiff join any and all claims arising out of the transactions, acts, or occurrences, allegedly giving rise to the present action.

## **AFFIRMATIVE DEFENSES**

NOW COME, Defendants Moises Jimenez, James Tolbert, Kurtiss Staples, Eddie Croxton, and Alma Hughes-Grubbs, by and through their attorneys, NATHAN & KAMIONSKI LLP, and state their Affirmative Defenses as follows:

1.     Plaintiff's Complaint fails to state a cause of action upon which relief can be granted.

2.     Defendants generally deny any allegation of wrongdoing and assert further that they have not violated any of Plaintiff's constitutional rights.

3.     Plaintiff's claims are, in whole or in part, barred under the doctrine of *in pari delicto*.

4.     Plaintiff's claims are barred, in whole or in part, by contributory negligence.

5.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

6.     Plaintiff's claims are barred, in whole of in part, by the doctrine of

unclean hands.

7.      Plaintiff's claims are, in whole or in part, barred under the doctrine of estoppel.

8.      No punitive damages may be awarded against Defendants because they were acting in their official capacity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

9.      Defendants acted within the scope of their authority and with a reasonable, good-faith belief that their actions were lawful and proper, and they are therefore protected by qualified immunity.

10.      Plaintiff's claims are barred, in whole or in part, by the doctrine of qualified immunity, as it was not clearly established in March 2005 that the alleged conduct constituted a constitutional violation in these particularized circumstances.

11.      Plaintiff's claims are barred, in whole or in part, by his failure to mitigate damages.

12.      Plaintiff's claims are, or may, be barred by the applicable statute of limitations.

13.      Plaintiff has failed to join every legal or equitable claim which arises out of the alleged transaction or occurrence which is the subject matter of Plaintiff's instant action.

14.      Plaintiff is not entitled to the relief sought against Defendants because

Defendants did not act or fail to act as alleged by the Plaintiff.

15.     Plaintiff is not entitled to the relief sought against Defendant because there was no causal connection between Defendants alleged actions and the deprivation of Plaintiff's constitutional rights.

16.     That any alleged injuries to Plaintiff were due to and caused by the negligence and/or omission of the Plaintiff to care for himself, which carelessness, and/or negligence, and/or omissions were the proximate cause of the damage, if any, to the Plaintiff.

17.     To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of Plaintiff, any witness, or other party, any verdict or judgment obtained by Plaintiff must be reduced by an amount commensurate with the degree or fault attributed to Plaintiff and/or others.

18.     Defendants did not act with malice and their actions were objectively reasonable.

19.     Defendants, by and through his undersigned counsel, do not waive any deficiency or omission in any pleadings heretofore or hereafter filed by any other party to the above-captioned matter, and hereby reserve the right to assert and file any additional affirmative and special defenses as may become known through discovery proceedings in accordance with the rules and practices of this Court, or

otherwise.

20.     Defendants have absolute immunity for any testimony they provided.

*Briscoe v. LaHue*, 460 U.S. 325 (1983).

21.     Defendants reserve the right to assert and file any affirmative and/or

special defenses that may become known through discovery or otherwise.

Dated: October 14, 2024                         Respectfully submitted,

                                                NATHAN & KAMIONSKI, LLP

                                                ***/s/ Christopher J. Raiti***
                                                Avi Kamionski (IL 6283191)
                                                Shneur Nathan (IL 6294495)
                                                Christopher J. Raiti (P68600)
                                                Andrea M. Frailey (P82466)
                                                Kristine Baker (P83893)
                                                500 Griswold Street, Suite 230
                                                Detroit, MI 48226
                                                313-335-3811
                                                craiti@nklawllp.com

                                                *Attorneys for Defendants Moises*
                                                *Jimenez, James Tolbert, Kurtiss*
                                                *Staples, Eddie Croxton, and Alma*
                                                *Hughes-Grubbs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2024, I electronically filed the foregoing pleading with the Clerk of the Court by using the CM/ECF system, which will send notification to all registered parties.

*/s/ **Kimberly A. Moin***
Kimberly A. Moin, Paralegal