IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| KENNETH NIXON, | ) | |
| | ) | Case No. 23-cv-11547 |
| *Plaintiff*, | ) | |
| | ) | Hon. Susan K. DeClercq |
| v. | ) | District Judge |
| | ) | |
| MOISES JIMENEZ, *et al.*, | ) | Hon. Elizabeth A. Stafford |
| | ) | Magistrate Judge |
| *Defendants*. | ) | |
| | ) | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION
OF DOCUMENTS BY CITY OF DETROIT**

Plaintiff Kenneth Nixon, pursuant to his undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i) for an order compelling non-party City of Detroit to produce documents responsive to Plaintiff's subpoenas served on the City. Defendants do not oppose the relief requested herein. A memorandum in support of this motion is attached.

Respectfully submitted,

**KENNETH NIXON**

/s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

| | |
|---|---|
| Julie Hurwitz | Jon Loevy |
| Kathryn James | Gayle Horn |
| Dayja Tillman | Alyssa Martinez |
| GOODMAN HURWITZ & JAMES | LOEVY & LOEVY |
| 1394 E Jefferson Ave. | 311 N. Aberdeen |
| Detroit, MI 48207 | Chicago, Illinois 60607 |
| (313) 567-6170 | (312) 243-5900 |
| jhurwitz@goodmanhurwitz.com | alyssa@loevy.com |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| KENNETH NIXON, | ) | |
| | ) | Case No. 23-cv-11547 |
| *Plaintiff*, | ) | |
| | ) | Hon. Susan K. DeClercq |
| v. | ) | District Judge |
| | ) | |
| MOISES JIMENEZ, *et al.*, | ) | Hon. Elizabeth A. Stafford |
| | ) | Magistrate Judge |
| *Defendants*. | ) | |
| | ) | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL PRODUCTION
<u>OF DOCUMENTS BY CITY OF DETROIT</u>**

2

**INTRODUCTION**

Plaintiff Kenneth Nixon brings this Section 1983 action against certain police officer defendants who caused him to be wrongfully imprisoned for nearly 16 years for the tragic fire that resulted in the deaths of two people—a crime he did not commit.[1] Dkt. 1, Compl. at ¶¶ 1-10. Plaintiff alleges that Defendants fabricated false evidence to corroborate a misidentification they knew to be the result of coaching (*id.* ¶¶ 37-45), coerced a jailhouse snitch (and repeat informant for the Detroit Police Department) into adopting their fabricated statement inculpating Plaintiff in exchange for undisclosed benefits (*id.* ¶¶ 46-58), suppressed exculpatory evidence—including a report indicating that the eyewitness had been coached (*id.* ¶¶ 37-58, 83-86), and coerced and fabricated a witness statement to destroy Plaintiff's alibi (*id.* ¶¶ 38-40). This was neither the first nor the last time that certain Defendants have engaged in such misconduct. *Id.* ¶¶ 68-70.

As part of discovery in this case, Plaintiff served a Rule 45 document subpoena on the Detroit Police Department ("DPD") and one on the Detroit Fire Department ("DFD") seeking police reports, internal affairs records, polygraph materials, disciplinary histories, training materials, and other documents pertaining to this case. These materials are highly relevant to Plaintiff's claims and proportional to the needs of the case. Despite proper service, granted extensions, meet-and-confer efforts, and partial production, the City has failed to provide complete or adequate responses.

Plaintiff now seeks an order compelling the City to comply with its discovery obligations. Plaintiff has been seeking responsive documents for eight months and cannot afford to allow the City continued latitude to produce materials and respond on its own unspecified timeline. Nor

---

[1] Plaintiff also sued the City of Detroit for its policies and practices of conducting flawed investigations and its failure to supervise. However, due to Plaintiff's award under the Michigan Wrongful Imprisonment Compensation Act ("WICA"), the City was dismissed as a defendant. *See* Dkt. 67.

3

can he allow the City to continue shifting its obligation pursuant to the subpoena to identify and produce documents onto Plaintiff. Fact discovery is currently set to close on November 26, 2025. The City's delay has not only prejudiced Plaintiff's ability to conduct follow-up discovery and created the possibility that certain depositions may need to be reopened, but it has also hindered the parties' ability to proceed with the remaining depositions in this case, including those of the Defendants. For these reasons, Plaintiff respectfully requests that the Court compel the City to provide timely and complete responses as outlined herein.

## RELEVANT FACTUAL HISTORY

On December 11, 2024, Plaintiff served two subpoenas under Rule 45—one to the Detroit Fire Department (Ex. A) and one to the Detroit Police Department (Ex. B)—with responses due January 8, 2025. Counsel for the City of Detroit accepted service for both. The subpoenas requested the following categories of documents:

1. Documents within the possession, custody, or control of the Detroit Fire Department pertaining to the Charleston Street Fire (DFD Subpoena Request Nos. 1-4, 6-9)

2. Documents within the possession, custody, or control of the Detroit Fire Department pertaining to a previous fire that occurred at 19377 Harlow Street, the victim's then-home (DFD Subpoena Request No. 5)

3. Documents within the possession, custody, or control of the Detroit Police Department pertaining to the Charleston Street Fire (DPD Subpoena Request Nos. 1-5, 8, 9)

4. Documents within the possession, custody, or control of the Detroit Police Department pertaining to personnel, training, and disciplinary records for the Defendant Officers (DPD Subpoena Request Nos. 13-14, 16-18)

5. Documents within the possession, custody, or control of the Detroit Police Department pertaining to polygraph documents from the Charleston Street Fire Investigation (DPD Subpoena Request Nos. 5, 9)

6. Documents within the possession, custody, or control of the Detroit Police Department pertaining to physical evidence and the storage of physical evidence in connection with the Charleston Street Fire (DPD Subpoena Request Nos. 6, 7, 9)

7. Documents within the possession, custody, or control of the Detroit Police Department pertaining to certain key witnesses in the Charleston Street Fire Investigation (DPD Subpoena Request No. 12)

8. Documents within the possession, custody, or control of the Detroit Police Department pertaining to a previous fire that occurred at 19377 Harlow Street, the victim's then-home (DFD Subpoena Request No. 20)

9. Documents within the possession, custody, or control of the Detroit Police Department pertaining to communications made during, and about, the Charleston Street Fire Investigation and Plaintiff's subsequent WICA award (DPD Subpoena Request Nos. 10, 11, 19)

10. Documents within the possession, custody, or control of the Detroit Police Department relating to any written policy, procedure, or practice of the City of Detroit for certain subjects relevant to the Charleston Street Fire Investigation (DPD Subpoena Request No. 15)

The parties later agreed to extend the deadline to January 22, 2025, with the understanding that the City would make a rolling production of documents. Plaintiff also agreed to provide personal identifying information for the individuals listed in Request No. 12 to aid the City's search for responsive documents.

On January 29, 2025, the City made its only production, which consisted of (1) incomplete and improperly redacted DPD Management Awareness System reports, (2) a heavily redacted homicide file with no privilege log, and (3) a few DPD 2005 policies. To date, no documents have been produced in response to the subpoena to the DFD. The City also served the same boilerplate objection ("overly broad, unduly burdensome, not proportional to the needs of this case, will cause undue expense, may be protected by privilege, and may fall outside the City's retentional policy") to every request. *See* Ex. C (DFD Subpoena Response); Ex. D (DPD Subpoena Response). As the production was grossly insufficient, and no privilege log had been provided, Plaintiff requested a meet and confer with the City of Detroit.

On May 9, 2025, counsel for Plaintiff conferred with counsel for the City of Detroit about the deficient subpoena responses. The parties reached agreement on certain documents to be produced, and the City represented that it would investigate the range of responsive documents in its possession and would produce the documents it believed to be relevant and proportionate to the needs of this case. *See* Ex. E (Meet and Confer Memorialization). Several months passed, and Plaintiff did not receive any update or supplemental production of documents.

Plaintiff again followed up on July 11, 2025, requesting an update, identifying every item Plaintiff believes to be outstanding, and reminding the City of the agreement the parties had reached. *Id.* The City responded with a skeletal privilege log containing bare assertions and improper withholding rationales and otherwise refused to produce documents or shifted the burden onto Plaintiff to identify what was missing—something he had already done.[2] *See* Ex. F (Memorialization Email Response); Ex. G (City Privilege Log).

Plaintiff has been patient with the City but the Defendant depositions are scheduled to begin September 16, 2025, and Plaintiff needs these critical documents in order to proceed with those depositions. As of the date of filing, Plaintiff has not received any update or any supplemental production from the City. The City has only produced only a small, incomplete set of the requested documents, without asserting valid and timely objections or moving to quash. Plaintiff thus brings this motion for an order compelling the City of Detroit to comply with the subpoenas and, for any documents it deems privileged, to provide a detailed privilege log so that Plaintiff may assess such designations. Counsel for Plaintiff conferred with Defendants, and they do not oppose the relief requested herein.

---

[2] The City also represented that certain records may be past retention but has not produced the applicable retention policy.

**LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Showing relevance is an "extremely low bar." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 632 (E.D. Mich. 2021) (citations omitted). The scope of discovery for subpoenas under Federal Rule of Civil Procedure 45 is the same as under Rule 26(b)(1), with the only caveat being a party serving a subpoena on a nonparty must "take reasonable steps to avoid imposing undue burden or expense." *In re Subpoena of Ctr. for Mil. Readiness*, No. MC 18-51013, 2018 WL 6722247, at *4 (E.D. Mich. Nov. 6, 2018), *adopted*, 2019 WL 4733602 (E.D. Mich. Sept. 28, 2019) (citing Rule 45(d)(1)). If a nonparty fails to properly respond to a subpoena, the issuing party may seek an order from the court compelling production or inspection of the documents. Fed. R. Civ. P. 45(d)(2)(B)(i).

**ARGUMENT**

**I.     The Subpoenas Seek Documents that Are Relevant and Proportional**

Rule 26(b)(1)—and by extension, Rule 45—permits discovery of any non-privileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Relevance for discovery purposes is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on" the claims. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Courts consistently emphasize that Rule 26 is to be liberally construed to permit broad discovery. *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) (holding that "Rule 26 is to be liberally construed to permit broad discovery") (citing *Rui He v. Rom*, No. 1:15-CV-1869, 2016 WL 909405, at *2 (N.D. Ohio Mar. 10, 2016)). Indeed, courts within this District

have recognized that the showing necessary to establish relevance is an "extremely low bar." *Waskul*, 569 F. Supp. 3d at 632 (citations omitted); *see also Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 860 (E.D. Mich. 2017); *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Ohio 2014) (noting that Fed. R. Evid. 401 deems evidence relevant if it has "any tendency to make a fact more or less probable").

The subpoenas here seek categories of documents that are not merely relevant, but central to Plaintiff's claims. These include investigative files, witness-related materials, polygraph records, physical evidence logs, training and disciplinary files of the Defendant Officers, and City policies governing investigations.

Each category bears directly on the issues in this case. The investigative files demonstrate how the Charleston Street Fire investigation was conducted—particularly critical given that Defendants have responded to interrogatories by completely disclaiming memory of the underlying events. Ex. H (Defendant Officers' Responses to Plaintiff's Interrogatories). The witness-related materials are equally important, both for understanding how statements were obtained and because Plaintiff alleges that witnesses were coerced and pressured into adopting fabricated accounts. The polygraph records are central because Plaintiff has specifically alleged that the polygrapher falsified results as part of the conspiracy to frame him for the arson-murder. Physical evidence logs are necessary to establish the chain of custody, especially as to the very items Defendants claimed demonstrated Plaintiff's guilt. Training and disciplinary files show whether the Defendant Officers deviated from accepted standards, which bears on intent, and are relevant under Rule 404(b).

In short, these records go to the very heart of the claims in this case: how the Charleston Street Fire investigation was conducted, what evidence was fabricated or suppressed, and the

conduct of the Defendant Officers that led to Plaintiff's wrongful conviction. These are not tangential requests—they are the primary documents necessary to prove Plaintiff's claims. Courts routinely mandate production under these circumstances. *See, e.g., Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019); *Waskul*, 569 F. Supp. 3d at 640; *Perry v. City of Pontiac*, No. 07-14036, 2011 WL 4345239, at *9 (E.D. Mich. Sept. 16, 2011).

The requested materials are also proportional to the needs of this litigation. Courts have recognized that civil rights actions carry particular weight in proportionality determinations. *Cratty*, 296 F. Supp. 3d at 860 (citing Hon. Elizabeth D. Laporte & Jonathan M. Redgrave, *A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure 26*, 9 Fed. Cts. L. Rev. 19, 61 (2015)) ("Generally, an action to vindicate a citizen's civil rights is considered of high importance."). The issues at stake here could not be more significant: Plaintiff's wrongful conviction and the loss of nearly two decades of liberty. The amount in controversy is also substantial. In these circumstances, the discovery Plaintiff seeks from the City is plainly proportional to the needs of the case.

Moreover, courts have held that proportionality determinations favor production when relevant documents are uniquely within the possession of one entity. *See Waskul*, 569 F. Supp. 3d at 634 (finding that exclusive control of relevant documents weighs in favor of compelling production); *see also Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) ("[A] plaintiff should not be denied access to information necessary to establish [its] claim") (citation and internal quotation marks omitted).

Here, the City is the sole custodian of the requested records. Plaintiff has no independent access to these materials, nor do the Defendant Officers—each of whom confirmed in discovery responses that the documents sought "are in the possession, custody, or control of the City of

9

Detroit." *See* Ex. I (Defendant Officers' Responses to Plaintiff's Requests for Production). The requested records are critical to resolving the claims and defenses in this case. In wrongful conviction litigation, municipalities typically serve as custodians of the core investigative and evidentiary materials, and, in Plaintiff's counsel's experience, provide the bulk of discovery. The subpoenas here seek precisely those foundational categories of "bread and butter" discovery— investigative files, training policies, physical evidence logs, and polygraph reports—all of which are exclusively in the City's possession. Absent production of these materials, Plaintiff will be severely prejudiced in attempting to establish the misconduct at issue, including fabrication of evidence and suppression of exculpatory material. Plaintiff's requests are narrowly tailored, directly relevant, and thus well within the bounds of proportional discovery in a wrongful conviction case.

**II.     The City's Objections Are Waived and, in Any Event, Deficient**

**A. The City's Objections Are Untimely and Therefore Waived**

Rule 45(d)(2)(B) requires that objections to a subpoena be served within the earlier of the compliance date or 14 days after service. Plaintiff served the subpoenas on December 11, 2024, with a compliance deadline of January 22, 2025 (following an extension). The City did not serve objections until January 29, 2025—well beyond the 14-day window and after the extended compliance date had passed. Because the City failed to timely serve written objections, it has waived them.

Courts consistently hold that objections served outside the Rule 45 timeframe are waived absent unusual circumstances or good cause. *See, e.g., Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813, at *5 (E.D. Mich. Dec. 10, 2008) (finding written objections untimely when dated one day after the compliance date); *Schnatter v. 247 Grp., LLC*, 343 F.R.D. 325, 330

(W.D. Ky. 2022) ("If the producing party fails to show unusual circumstances and good cause, failure to timely object constitutes waiver."); *Simon Prop. Grp., Inc. v. Taubman Centers, Inc.*, No. CIV.A 07-X-51024-DT, 2008 WL 205250, at *5 (E.D. Mich. Jan. 24, 2008), *aff'd sub nom. Simon Prop. Grp. v. Taubman Centers, Inc.*, No. 07-51024, 2008 WL 906271 (E.D. Mich. Mar. 31, 2008) ("Courts treat a failure to file timely objections as a waiver of the contested issue . . . . Therefore, Taubman has waived any objection to this subpoena."); *Am. Elec. Power Co. v. United States,* 191 F.R.D. 132, 136 (S.D. Ohio 1999) ("The failure to serve written objections to a subpoena within the time specified by Rule 45 typically constitutes a waiver of such objections." (citations omitted)); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463 (3d ed. 2008) ("A failure to object within the fourteen-day period usually results in waiver of the contested issue."); *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) ("[W]e think it is clear that Rule 45 contemplates assertion of all objections to document production within 14 days, including those based on the act of production privilege."); *McCoy v. Sw. Airlines Co.,* 211 F.R.D. 381, 385 (C.D. Cal. 2002) ("[A] nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objection, including attorney-client privilege, has been waived."). Because the City failed to object in a timely manner, its objections are waived, and it must comply fully with the subpoenas.

### B. The City's Boilerplate Objections Are Legally Insufficient

Even if timely, the City's objections would still fail because they consist entirely of boilerplate recitations. For ***every single request***, the City responded with the ***exact same generic refrain***: that the request was "overly broad, unduly burdensome, not proportional to the needs of this case, will cause undue expense, may be protected by privilege, and may fall outside the

11

City's retention policy." *See* Exs. C-D. Such formulaic responses are legally meaningless. Courts in this Circuit consistently hold that boilerplate objections amount to no objection at all. *Peterson v. Corby*, 347 F.R.D. 192, 195 (E.D. Mich. 2024) ("Boilerplate objections are legally meaningless and amount to a waiver of an objection."); *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209-10 (E.D. Mich. 2018) (same); *Sobel v. Imprimis Pharmaceuticals*, 2017 WL 5035837, at *4 (E.D. Mich. Oct. 26, 2017) (same); *Waskul*, 569 F. Supp. 3d at 637 (same); *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, No. 14-cv-10922, 2016 WL 3418554, at *3 (E.D. Mich. June 22, 2016) ("The filing of boilerplate objections is tantamount to filing no objections at all."). The City's objections here are the very definition of boilerplate objections and precisely the practice courts reject. The City's objections should therefore be deemed waived.

### C. The City Risks Waiver of Privilege by Failing to Provide a Proper Privilege Log

Rule 45(e)(2)(A) requires that a party withholding documents on privilege grounds must "expressly make the claim" and "describe the nature of the withheld documents" in sufficient detail to permit an assessment of the claim. The City has not complied with this obligation. It produced no privilege log with its initial response, and months later served only a skeletal log consisting of conclusory assertions and improper bases for withholding. *See* Ex. G. For example, the City redacted the entirety of Defendant Officers' complaint histories on the stated basis that the material "Exceeds scope of Rule 26, contains privileged work product." *Id*. at 1. Likewise, the City redacted numerous pages of the arson-murder investigative file, asserting "personal identifiable information"—a rationale that is neither a recognized privilege nor consistent with the terms of the protective order in this case.[3] *Id.* The remainder of the log is similarly deficient.

---

[3] The City also logs certain portions of the Detroit Fire Department File but has not produced any such file. *See* Ex. G at 1.

12

Courts in this District have made clear that failure to provide a timely and adequate privilege log may result in waiver of privilege. *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 118, 119–20 (E.D. Mich. 2019) (setting forth requirements for privilege logs); *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (same); *In re DG Acquisition Corp.*, 151 F.3d at 81; *McCoy,* 211 F.R.D. at 385. Here, the City's privilege log was neither timely nor adequate. As such, to the extent this Court does not find that the City has already waived privilege, the City must supplement its log with the specificity Rule 45 requires or risk waiver of any claimed privilege.

## CONCLUSION

For the foregoing reasons, and because the depositions of Defendant Officers are scheduled to being on September 16, 2025, Plaintiff respectfully requests that the Court issue an order compelling the City of Detroit to produce all documents responsive to Plaintiff's December 11, 2024 subpoenas within seven days of this order, and to provide a complete and proper privilege log for any withheld materials. Plaintiff further requests such other relief as the Court deems just and proper.

Respectfully submitted,

**KENNETH NIXON**

/s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

| | |
|---|---|
| Julie Hurwitz | Jon Loevy |
| Kathryn James | Gayle Horn |
| Dayja Tillman | Alyssa Martinez |
| GOODMAN HURWITZ & JAMES | LOEVY & LOEVY |
| 1394 E Jefferson Ave. | 311 N. Aberdeen |
| Detroit, MI 48207 | Chicago, Illinois 60607 |
| (313) 567-6170 | (312) 243-5900 |
| jhurwitz@goodmanhurwitz.com | alyssa@loevy.com |

13

## **CERTIFICATE OF SERVICE**

I, Alyssa Martinez, an attorney, hereby certify that the foregoing document was served upon all counsel of record via the Court's CM/ECF filing system on August 25, 2025, which will send notification to the attorneys of record.

/s/ Alyssa Martinez
*One of Plaintiff's Attorneys*