

Alyssa Martinez &lt;alyssa@loevy.com&gt;

---

# Nixon v. Jimenez, et al. - Subpoena Meet and Confer Follow-Up

**Alyssa Martinez** &lt;alyssa@loevy.com&gt;  Fri, Jul 11, 2025 at 12:33 PM
To: Christopher Michels &lt;Christopher.Michels@detroitmi.gov&gt;

Dear Mr. Michels:

I hope this finds you well. I wanted to follow up on the meet and confer we had back in May. I realized I didn't get a chance to send a follow-up email at the time to memorialize our discussions, so please see below and let me know if there is anything you disagree with. I also wanted to note that we have not received any supplemental or rolling document production in the two months since we met and conferred. Could you please let us know when we might expect the documents? I'm also attaching the subpoena responses we received for ease of reference.

**DFD Documents**

Plaintiff has not received any documents in response to his subpoena to the Detroit Fire Department. On the call, the City represented that it believes that if a fire results in a death, that the files are transferred to the homicide section. Please confirm this and produce any existing documents within DFD's possession, including any documents pertaining to the Charleston fire and personnel files for firefighters employed by DFD at the time of the Charleston fire. If those documents have been destroyed pursuant to a retention policy, please confirm that.

Plaintiff also subpoenaed any documents within DFD's possession pertaining to a fire that occurred at 19377 Harlow Street, Detroit, Michigan on or about December 22, 2001, and the City represented that it would investigate as to whether any such documentation exists.

**MAS Reports**

The parties discussed the MAS reports produced in response to the subpoena. Plaintiff first identified the MAS report for Alma Hughes-Grubbs as being cut off and requested that the City produce the entire document, which it agreed to do. Plaintiff also noted that the format of the MAS reports looked different for Tolbert and Hughes-Grubbs, so Plaintiff requested the City please ensure that this was the most up-to-date version of the report. Lastly, Plaintiff requested a privilege log be produced for the "citizen complaint" section that is redacted from Moises Jimenez, Eddie Croxton, and Kurtiss Staples's MAS reports so that Plaintiff may challenge those redactions if necessary. The City agreed to do so.

Plaintiff asked whether the trainings identified on the MAS report were the extent of trainings officers received while with DPD, and the City stated it would investigate.

**DPD Polygraph Documents**

Plaintiff has not received any documents pertaining to the polygraph examination conducted in this case. The City stated that it would search for the relevant polygraph documents in this case and produce them if they exist but represented that they may have been destroyed pursuant to the retention policy. If they have been destroyed, please confirm that.

**Physical Evidence Storage**

Plaintiff believes he may still be missing certain documents from the City pertaining to the physical evidence involved in this case. The City represented that it has different repositories for evidence storage depending on what the item is and could make certain items available for inspection. At this juncture, Plaintiff merely requests the City produce any documentation pertaining to the physical evidence in this case, including those within the Crime Lab and Forensic Services related to Ken Nixon or the Charlston street fire investigation, that have not already been produced in the homicide file. (If helpful, here is some identifying information: File/Case No. 05-154/155, Detroit Fire Department Fire No. 10763, Case No. 0505200005, or Homicide # 05-154, 55).

**Other DPD Documents**

Plaintiff requested a number of specific documents as part of his subpoena that are not captured above, including any 911 or 311 transcripts/recordings; Daily Activity Logs, run sheets, or records documenting Defendants' activities on the dates on key events; complaint histories for the involved officers; a floor plan of any relevant DPD facilities; certain documents

related to the criminal histories of five key witnesses in the case; and a privilege log for the redacted homicide file (and any other documents being withheld on privilege grounds).

Re: transcripts or audio recordings of any calls made for emergency services relating to the Charleston fire, please produce any that exist.

Re: records that would catalogue the movements/actions of officers involved, the City represented that these documents were likely destroyed pursuant to the retention policy but would investigate. Please confirm whether any such exist.

Re: complaint histories for the involved officers, the City stated that it would check for any records pertaining to the officers at issue but that it might consider those records privileged. The City advised that the BOP commissioners may also have separate files detailing complaints made against these officers and that these documents would not be in the possession, custody, or control of the City. Please produce the complaint histories that the City has, along with any privilege log for documents it deems privileged and withholds.

Re: floor plan, the City stated that there likely weren't any responsive documents and, to the extent there are, objected to providing any floor plan that would depict what a certain precinct looked like in 2005 and stated it was a safety concern. Plaintiff stated that the parties may need to seek Court intervention but would not involve the Court if no such documents existed. The City stated it would investigate whether any such document exists, so please let us know the result of the City's investigation.

Re: documents pertaining to five witnesses, Plaintiff requested any documents within the City's possession, including criminal histories and arrest reports, for five key individuals: Brandon Darcel Vaughn, 5/2/1992; Naomi Lee Vaughn, 3/25/1970; Ronrico [no middle name or middle name unknown] Simmons, 3/23/1980; Jamil George Kosho, 10/12/1975; and Stanley James January, Jr, 3/23/1961. The City asked via email for additional information in Dec. 2024 about these witnesses and the ability to do rolling productions—which Plaintiff provided and agreed to. To date, Plaintiff has not received any documents pertaining to these individuals. During the meet and confer, the City stated that it likely would not produce a rap sheet for these individuals and that it did not know if it has any criminal history printouts. The City advised Plaintiff that certain records of convictions (but not arrests) could be found on ICHAT. Plaintiff requested that the City produce whatever documents it has in its possession, with the understanding that it is not asking the City to pull documents from a public database like ICHAT, and that it is not requesting LIEN information.

Re: privilege log, the parties discussed the redactions made to the homicide file produced in this case, and the City stated it would provide a privilege log for the file.

**Electronically-Stored Information ("ESI")**

The City stated it does not currently know the answers to Plaintiff's questions on ESI, including (1) whether the DPD utilized email in 2005, (2) whether work phones were issued to DPD officers in 2005, (3) how emails from 2005 (to the extent they exist) were archived, and (4) how any archived emails or email accounts can be searched. The City stated it would investigate.

**Personnel Files**

No personnel files have been produced in this case. During the meet and confer, Plaintiff stated that he believed there may be two separate personnel files for the officers involved, with one being held in the Personnel Bureau and one with Major Crimes. The City represented it would search for any personnel files and would produce them if they still existed, but that they likely did not due to the applicable retention policy. Please produce any existing personnel files or confirm that they were destroyed pursuant to the retention policy based on year of retirement.

**Policies + Training Manuals**

In this litigation, the City has produced applicable record retention policies, a crime scene investigation directive, a training directive index for 2005, and a policy on confinement of material witnesses. Plaintiff asked the City to produce the other directives that were effective in 2005, including but not limited to Directive 202.1 — Arrests, Directive 202.2 — Search and Seizure, Directive 203.9 — Custodial Questioning, Witness Identification and Questioning (UF-005), Detention of Material Witness (UF-006), Crisnet Contact Form. Plaintiff also asked the City to produce any policy handbook or table of contents available that cover the policies in effect in 2005 and responsive to request no. 15.

As you may know, we have a discovery conference with the Court next Thursday and one of the items we need to give an update on is our subpoenas to DPD and DFD. We also have key witness and defendant depositions soon approaching and some of these documents, i.e., criminal histories and the polygraph documents, are of particular importance in being able to conduct those depositions. As such, please let us know when we may anticipate documents in response to the above and a privilege log for the homicide file, MAS reports, and any other withheld documents.

Thank you,
Alyssa

**Alyssa Martinez** (she/her)



Office: (312) 243-5900

311 N Aberdeen St, Chicago, IL 60607

www.loevy.com

---

2 attachments

- **Response to DPD Subpoena (2).pdf**
  194K

- **Response to DFD Subpoena (Nixon) (2).pdf**
  125K