# U.S. DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KENNETH NIXON,                      Case No. 5:23-cv-11547-JEL-EAS

    Plaintiff,                          Hon. Susan K. DeClercq
                                        District Judge

                                        Hon. Elizabeth A. Stafford
MOISES JIMENEZ, et al.                  Magistrate Judge

    Defendants.

_____

### PLAINTIFF'S MOTION TO ENFORCE THIS COURT'S ORDER [ECF No. 94] TO REQUIRE THE CITY TO PRODUCE ALL DOCUMENTS RESPONSIVE TO PLAINTIFF'S SUBPOENAS AND FOR A FINDING THAT ANY CLAIMED PRIVILEGES HAVE BEEN WAIVED

Plaintiff, Kenneth Nixon, pursuant to his undersigned counsel, respectfully moves this Court to order non-party City of Detroit to comply with this Court's Order Granting Plaintiff's Motion to Compel Production of Subpoenaed Documents by Third-Party [ECF No. 94], and produce all documents responsive to Plaintiff's subpoenas, including documents that the City has withheld on the basis of alleged privilege. Plaintiff also seeks an order finding that non-party City has waived any privileges asserted, pursuant to Paragraph 3 of this Court's Order [ECF No. 94], insofar as it has failed to provide an adequate privilege log for those withheld documents. A memorandum in support of this motion is attached.

Respectfully submitted,

/s/ Alyssa Martinez
*Plaintiff's Attorney*

Julie H. Hurwitz (P34720)        Jon Loevy
Kathryn James (P71374)           Gayle Horn
Dayja S. Tillman (P86526)        Alyssa Martinez
GOODMAN HURWITZ & JAMES, PC      LOEVY & LOEVY
1394 E. Jefferson Ave.           311 N. Aberdeen
Detroit, MI 48207                Chicago, IL 60607
(313) 567-6170                   (312) 243-5900

*Counsel for Plaintiff*

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.    Whether the City of Detroit waived any claim of privilege by serving an untimely privilege log?

       Plaintiff's answer: Yes.

II.    Whether the City of Detroit's privilege log is so deficient under Fed. R. Civ. P. 45 that any claim of privilege is waived?

       Plaintiff's answer: Yes.

III.    Whether the City's privilege designations are improper as to the documents identified?

       Plaintiff's answer: Yes

IV.    Whether the City of Detroit should be compelled to produce the requested documents?

       Plaintiff's answer: Yes.

V.    Whether the City of Detroit may redact personal identifying information from investigative files despite the Protective Order entered in this case?

       Plaintiff's answer: No.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

Federal Rule of Civil Procedure 45(e)(2)(A)

*CommonSpirit Health v. Health Trust Purchasing Group, L.P.*, No. 3:21-cv-0460 (M.D. Tenn. 2021)

*Sanford v. City of Detroit*, 355 F. Supp. 3d 619 (E.D. Mich. 2019)

*Star Lodge LLC v. Endurance Am. Specialty Ins. Co*., No. 2:19-cv-10905 (E.D. Mich. 2019)

*Garber-Cislo v. State Farm Auto. Ins. Co*., No. 10-cv-13301 (E.D. Mich. 2010)

*Clark v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:17-cv-419-GNS-CHL (W.D. Ky. 2017)

*McCloskey v. White*, No. 3:09-cv-1273 (N.D. Ohio 2009)

*Metris-Shamoon v. City of Detroit*, 335 F.R.D. 387 (E.D. Mich. 2018)

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KENNETH NIXON,                           Case No. 5:23-cv-11547-JEL-EAS

     Plaintiff,                          Hon. Susan K. DeClercq
                                        District Judge

                                        Hon. Elizabeth A. Stafford
MOISES JIMENEZ, et al.                      Magistrate Judge

     Defendants.

_____

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO**
**ENFORCE THIS COURT'S ORDER TO REQUIRE THE CITY**
**TO PRODUCE ALL DOCUMENTS RESPONSIVE TO**
**PLAINTIFF'S SUBPOENAS AND FOR A FINDING**
**THAT ANY CLAIMED PRIVILEGES HAVE BEEN WAIVED**

**Introduction**

Non-party City of Detroit has been dragging its feet to produce documents

responsive to Plaintiff's properly served subpoenas, pursuant to Fed.R.Civ.P.45(g),

in this case. Plaintiff, through his counsel, first served the subpoenas at issue on

December 11, 2024.  Plaintiff filed a Motion to Compel, on August 25, 2024, [ECF

No. 91] which this Court granted on August 28, 2025, ordering the City to produce

"all documents responsive to Plaintiff's . . . subpoenas," and to provide a "complete

and detailed privilege log," [ECF No. 94, PageID.3495]. Finally, on September 4,

2025, the City responded with a partial production and a two-page privilege log (with

16 entries) that neither properly identifies what was withheld nor the basis on which it was withheld. The City's continued intransigence and failure to comply with this Court's clear Order should result in the City being ordered to produce *all* responsive documents, with a finding that any improper, nine-months-late privilege assertions be waived.

## Background

As set forth more fully in Plaintiff's motion to compel [ECF No.91], Plaintiff has been seeking documents from the City of Detroit for the past nine months. Of relevance for this particular motion, on December 11, 2024, Plaintiff served two subpoenas on the City of Detroit: one directed to the Detroit Police Department ("DPD") [ECF No. 91-2] and one to the Detroit Fire Department ("DFD") **[**ECF No. 91-1]. The City responded on January 29, 2025, with: (1) incomplete and improperly redacted DPD Management Awareness System ("MAS") reports; (2) a heavily redacted homicide file with no privilege log; and (3) a few DPD 2005 policies. After multiple meet-and-confers over the next five months, the City produced a privilege log, on July 14, 2025, [ECF No.91-7], ("July Log"), but produced no additional documents. Plaintiff thereafter filed his Motion to Compel, arguing that: (1) the subpoenas sought documents that were relevant and proportional; and, that (2) the City's objections were waived and deficient. [ECF No.91, PageID 3274-78].

On August 28, 2025, this Court ordered the City to produce "all documents responsive to Plaintiff's December 11, 2024 subpoenas to the Detroit Police Department and the Detroit Fire Department" within seven days of receipt of the Court's order. [ECF No.94, PageID.3495]. To the extent that there were privileged materials, the Court explained in no uncertain terms that:

> For any documents withheld or redacted on the basis of privilege, the City shall serve on Plaintiff a **complete and detailed privilege log** that complies with Fed. R. Civ. P. 45(e)(2)(A), identifying the nature of the documents, communications, or tangible things withheld, and the specific privilege asserted, in sufficient detail to permit evaluation of the claim.

*Id.,* ¶ 2. (emphasis in original). This Court expressly cautioned the City that it's "failure to timely provide an adequate privilege log may result in a finding that any claimed privileges have been **waived.**" *Id.,* at PageID.3496, ¶ 3 (emphasis in original).

On August 29, 2025, Plaintiff served a copy of the Court's order on the City of Detroit. [ECF No. 96]. On September 4, 2025, the City of Detroit produced some of the outstanding documents to Plaintiff; namely, a redacted DFD file for a separate fire on Harlow Street; a MAS report for Defendant Hughes-Grubbs; several policies from 2005; and two one-page reports pertaining to physical evidence in this case.[1]

---

[1] Plaintiff has been conferring with the City to identify additional documents that Plaintiff requested but that were neither logged as being withheld nor privileged. In particular, Plaintiff has asked the City to search for the "Fatal Fire File" that Lt. Maoirana testified would be created for each fire investigated by DFD where there was a fatality. Ex. 1 (Email from Martinez to Michels dated 9/9/25). Plaintiff has

The City of Detroit also produced a new privilege log ("September Privilege Log" or "September Log."). Ex. 2 (September Privilege Log). The September Log is largely duplicative of the July Log except the City has now asserted privilege over the personnel files of two of the five Defendants (Croxton and Jimenez) and over an undisclosed number of "Incident Reports" regarding an undisclosed number of criminal investigations that relate in some undisclosed manner to Jamil Kosho, Stanley January, Brandon Vaughn and Ronrico Simmons. Ex. 2 (September Privilege Log).

The City's very belated privilege log is woefully deficient and fails to comply with both Rule 45(e)(2)(A) and this Court's August 25 Order. For that reason and those that follow, the City should be ordered to produce all of the documents responsive to Plaintiff's subpoenas, including the documents it has purportedly claimed privilege over.

## Argument

The City should be ordered to produce documents listed on its privilege log for three reasons: (1) the City's months-long delay in producing a privilege log (and a supplemental log) warrants a finding of waiver; (2) the City's inadequate privilege log, in violation of this Court's Order also warrants a finding of waiver; and (3) the

---

also asked the City to search for documents relating to Plaintiff's polygraph, including providing the City with information about persons who may have knowledge about where those documents are located. *Id*.

City's assertions of privilege, to the extent that they were made, are improper and baseless.

## I.     The City's Delay in Producing a Privilege Log Warrants a Finding of Waiver

To start, the City should be deemed to have waived any privilege that it asserted because of its months-long delay in producing a privilege log. *See CommonSpirit Health v. Health Trust Purchasing Group, L.P.*, No. 3:21-0460, 2022 WL 19403855, at *2 (M.D. Tenn. Oct. 17, 2022) (explaining that a "district court did not err in concluding that a more than five-month delay in producing a privilege log constituted waiver"); *id*. (although waiver is not automatic, "evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver") (quoting *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-cv-208-CRS, 2017 WL 6939338, at *14 (W.D. Ky. Feb. 16, 2017)). Indeed, the initial July Privilege Log, [ECF No. 91-7], was produced seven months after the subpoenas were served; and the September Privilege Log, [Ex. 2], was produced nine months after Plaintiff's subpoenas were served. The City has not explained why it took seven—and then nine—months to produce a two-page, sixteen-entry privilege log.  Nor could there be a reasonable explanation for such inordinate delay. As a result, and on this basis alone, the City should be found to have waived any purported privilege. *See CommonSpirit Health*, 2022 WL 19403855 at *2.

## II.        The City's Privilege Log is Deficient

Even if delay alone is not a sufficient basis to find waiver, the privilege logs themselves are so woefully deficient as to warrant a finding of waiver. *See Casale v. Nationwide Children's Hosp.*, No. 2:11-CV-1124, 2013 WL 12203243 at *2 (S.D. Ohio Sept. 13, 2013) (failure to properly assert a privilege on a log may constitute waiver); *see also Star Lodge LLC v. Endurance Am. Specialty Ins. Co.*, No. 2:19-CV-10905, 2020 WL 8187478, at *5 (E.D. Mich. Nov. 10, 2020), *report & recommendation adopted*, No. 2:19-CV-10905, 2020WL 8187480 (E.D. Mich. Dec. 22, 2020) (same).

Fed. R. Civ. P. ("Rule") 45(e)(2)(A)(ii) requires that a party claiming privilege "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Although Rule 45 does not specify what information must be included, courts have found the following information necessary:

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
2. The date upon which the document was prepared;
3. The date of the document (if different from #2)
4. The identity of the person(s) who prepared the document
5. The identity of the person(s) for whom the document was prepared, as well as the identifies of those to whom the document and copies of the document were directed . . . .;
6. The purpose of preparing the document . . . ;
7. The number of pages of the document;

8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of each asserted privilege.

*Garber-Cislo v. State Farm Automobile Ins. Co.*, No. 10-13301, 2011 WL 13217308, at *5 (E.D. Mich. Dec. 8, 2011), *modified on reconsideration*, No. 10-13301, 2012 WL 13005593 (E.D. Mich. Mar. 8, 2012) (internal quotations omitted); *see also Clark v. Louisville Jefferson Cnty. Metro Govt.*, No. 3:17-CV-419-GNS-CHL, 2022 WL 4389549, at *10 (W.D. Ky. Sept. 22, 2022) (explaining that "[c]ourts have found insufficient privilege logs that "utilize[ ] general categories of persons and entities without identifying anyone by name and position;" "contain only boiler plate descriptions and allegations of protection or privilege;" "identify only the dates of the documents, a brief description providing no substantive information;" "or that attempt to use the subject line of emails as the sole description or summary of the contents of the listed correspondence") (internal quotations omitted).

The City's privilege log includes virtually none of the information set forth above, nor does it comply with this Court's express order that any privilege log be "complete and detailed." In fact, all that the log includes is the "Document"— presumably a document title—and the purported privilege asserted. As such, "[t]he lack of a subject matter for several items identified on the privilege log . . . makes it impossible . . . to assess the applicability of the privilege." *Star Lodge LLC*, 2020 WL 8187478, at *5. For example, the City has listed on its September Privilege Log

the following generic documents: "Incident Reports regarding Stanley January;" "Incident Reports regarding Brandon Vaughn;" "Incident Reports regarding Jamil Kosho;" and "Incident Reports regarding Ronrico Simmons" (hereinafter referred to as "Incident Reports"). Ex. 2 (September Privilege Log). It is unclear how many "Incident Reports," the City is withholding, what the timeframe is for those Incident Reports, who created those Incident Reports, and what "regarding" a particular witness even means. For example, was that particular witness—say, Brandon Vaughn—the subject of the Incident Report, a witness listed in that Incident Report, or a victim in the Incident Report.

The same failure infects the other Incident Reports listed on the privilege log; that is, the ones listed on both the July and September privilege logs that have page numbers attached to them—"Incident Reports relating to Brandon Vaughn, p. 1-93;" "Incident Reports relating to Jamil Kosho, p. 1-18;" "Incident Reports relating to Ronrico Simmons, p. 1-39;" "Incident Reports relating to Stanley January, p. 1-3." (hereinafter referred to as "Paginated Incident Reports"). ECF No.91-7 (July Privilege Log); Ex. 2 (September Privilege Log). It is frankly unclear whether the Paginated Incident Reports are the same as the other Incident Reports because the description of the documents is so deficient. But assuming they are not, the entries for the Paginated Incident Reports also fail. While there is a page number for each of them, that is the sole additional descriptor provided: there is no additional

information about what these Paginated Incident Reports relate to, what role the witnesses have in those Paginated Incident Reports, the timeframe in which they occurred, or even the officer who created them.

Similarly, the City has identified "Personnel File of Eddie Croxton" and "Personnel File of Moises Jimenez" on the September Privilege Log without any additional information. Ex. 2 (September Privilege Log). Presumably, personnel files have numerous documents in them—applications for employment, commendations and recommendations, training documents, attendance and assignment information, and information about complaints and/or discipline[2], among others. The City has not offered any description of what documents are contained within the personnel files that it has withheld, how many pages the personnel files are, or who prepared any of those documents.[3] Simply stating "Personnel File" without more is glaringly insufficient.

_____

[2] It is well settled, for example, that within the context of §1983, police officers' personnel histories are eminently discoverable, particularly regarding citizen complaints, internal investigations, and disciplinary history. *See, e.g. Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019) (finding, even absent a *Monell* claim, "Plaintiff is entitled to discovery of Defendants' employment records relating to any disciplinary actions or findings contained therein . . . the Defendants must produce all disciplinary actions contained in their employment/personnel files, not just those related to *Brady* violations, coerced confessions, or fabricated evidence.").

[3] And, as noted above, the City has stated it will not produce any documents pertaining to the disciplinary histories of the officers but has not logged any of those documents or made clear what the basis for withholding such clearly relevant documents is.

Nor does the privilege log articulate even what privilege applies. For example, and as explained more fully below, for a number of entries, the City's asserted privilege is "See Response to Request 12" or "See Response to Request 13." Ex. 2 (September Privilege Log). That is not a privilege. Similarly, claims that documents are being withheld because they "exceeds scope of Rule 26" is not a proper invocation of privilege, and this Court has already ordered these documents be produced. Ex. 2 (September Privilege Log).

## III.     The City's Asserted Privileges are Inapplicable

Finally, the privileges that the City asserts—to the extent that they were asserted—are not applicable or are improper. As the party asserting the privilege, the City has the burden to demonstrate the privilege applies; they have failed to do so here. *Cooey v. Strickland*, 269 F.R.D. 643, 647 (S.D. Ohio 2010) (party asserting the privilege has the burden of proving it applies).

### a. MAS Reports

First, the City has redacted certain information from the MAS Reports[4] for Defendants Jimenez, Croxton and Staples. In particular, the City has redacted

---

[4] Personnel records (including MAS Reports) have been designated confidential pursuant to the Protective Order in this case. ECF 79, PageID 3224, ¶ 3(h). Thus, Plaintiff will file a motion to file Exhibits 3-5 under seal, or alternatively, to submit them for *in camera* review, pursuant to the Protective Order (ECF 79, PageID 3224, ¶ 3(h)) and Local Rule 5.3 (b). These exhibits will be submitted to the Court following decision on that forthcoming motion.

information about any "citizen complaints." Ex. 3 (MAS Report for Croxton); Ex. 4 (MAS Report for Jimenez); Ex. 5 (MAS Report for Staples).[5] The City's asserted privilege is "Exceeds the scope of Rule 26, contains privileged work product." Ex. 2 (September Privilege Log). "Exceeds the scope of Rule 26" is not a privilege assertion; as such, that argument can easily be dismissed. Moreover, in ruling that these materials had to be disclosed, the Court has already found that they fall within the scope of Rule 26. [ECF No. 94].

As for "work product," it is unclear how or in what way work product could apply to citizen complaints. *McCloskey v. White*, No. 3:09 CV 1273, 2011 WL 6371869, at *3 (N.D. Ohio Dec. 20, 2011) (work product created in the ordinary course of business, including police business, is not privileged). That is particularly so here where the withheld information is simply a listing of the Complaints—not the  investigation of them. That there is no such applicable privilege is borne out by the City's production of Defendant Tolbert's MAS Report—that Report contains information about Tolbert's complaints, civil and criminal litigation, and discipline, among others. Disclosing that—without any assertion of privilege—but withholding

---

[5] Notably, in the MAS Report that was produced for Tolbert, there is information not only about "Citizen Complaints," but also "ALLEGATIONS OF MISCONDUCT," "DISCIPLINARY," "MISCONDUCT," "ACR CORRECTIVE ACTION," "CIVIL LITIGATION," AND "CRIMINAL PROCEEDINGS." Ex. 6 (MAS Report for Tolbert). Because the privilege log is deficient in describing the nature of withheld documents, it is unclear whether this information is being withheld or simply is not part of Croxton's, Jimenez's, and Staples's MAS Reports.

the very same information for Defendants Croxton, Jimenez, and Staples demonstrates that the information about a police officer's citizen complaint history is not work product. Ex. 6 (MAS Report for Tolbert).

The City, therefore, should be required to produce these complete documents without the redactions.

### b. Incident Reports

The same failure infects the City's asserted privilege for the Incident Reports and Paginated Incident Reports. For each of the undisclosed number of Incident Reports, the City's asserted privilege was "See response to Request 12." Ex. 2 (September Privilege Log). That is, of course, not an actual privilege. Moreover, the response to Request 12 states alternatively that the documents requested "*may* be protected by privilege," and that the request "seeks protected LEIN information as well as information protected by the law enforcement investigation privilege." ECF No. 91-4, PAGEID.3318-19 (DPD Response to Subpoena) (emphasis added). From this, it is unclear whether the City is claiming the documents *are* privileged—or just that they *could be*. But even assuming the City intended to assert a privilege, they failed to properly do so.

To prevail on a claim of "law enforcement privilege," the City must satisfy three requirements, none of which have been met here:

(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege

12

must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

*Metris-Shamoon v. City of Detroit*, 335 F.R.D. 387, 391–92 (E.D. Mich. 2020)

(quoting *Hamama v. Adducci*, No. 17-cv-11910, 2018 WL 2445042, at *1 (E.D.

Mich. May 31, 2018)). The City did not make a formal claim of privilege by the

Chief of the Detroit Police Department (who presumably has control over the

Incident Reports); the assertion of the privilege was not based on any personal

consideration by the Chief; and, as noted above, the information has not been

specified nor has any explanation been offered for why these Incident Reports fall

within the scope of the privilege.

The same is true for the Paginated Incident Reports. The City has asserted that

they are privileged because they contain "work product" and are protected "under

the investigator's privilege." Ex. 2 (September Privilege Log). It is near impossible

to appreciate how work product could possibly apply to an Incident Report—a

routine police report generated about a particular criminal incident—and certainly

not without more information about the Incident Reports. "[W]ork product created

for ordinary business purposes is not privileged . . . . This includes police reports . .

. created during routine traffic stops and during other routine law enforcement

activities." *McCloskey*,  2011 WL 6371869, at *3.

Nor is the City on any stronger footing asserting the "investigator's privilege" for Incident Reports. It is unclear what the "investigator's privilege" is.[6] To the extent that the "investigator's privilege" is somehow shorthand for the "law enforcement privilege," that assertion fails before it even gets to the starting gate because none of the prerequisites for its application have been met. There has been no assertion by the Chief of the Police Department, no indication that the Chief has personally reviewed the disputed materials; and no explanation for why the privilege should apply. *Metris-Shamoon*, 335 F.R.D. at 391–92.

The City should be ordered to produce the Incident Reports and Paginated Incident Reports on the privilege log.

### c. Personnel Files & Disciplinary Histories

The City has withheld the personnel files for two of the Defendant Officers—Defendants Croxton and Jimenez—on the basis of privilege.[7] Notably, these personnel files were not listed on the original July 2025 privilege log, [ECF No. 91-7], and as such (and given the nine-month delay in asserting privilege over them),

---

[6] While the courts have discussed a "private investigator-client privilege" under Michigan law, Plaintiff is not aware of any such privilege applying to a public police officer. *State Farm Mut. Automobile Ins. Co. v. Elite Health Centers, Inc.,* No. 2:16-CV-13040, 2019 WL 1242716, at *2–6 (E.D. Mich. Mar. 18, 2019). Indeed, were such a privilege to apply, it could potentially shield from discovery information about police investigations, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

[7] According to the City, "the personnel files of James Tolbert, Kurtiss Staples, and Alma Hughes-Grubbs have been destroyed because they are outside the City's retention policy." ECF No. 91-4, PAGEID. 3319-20 (DPD Resp. to Subpoena).

14

any such claimed privilege should be deemed forfeited. *CommonSpirit Health*, 2022 WL 19403855 at *2. Regardless, the privilege that the City has asserted in its log over the entirety of the personnel files is "See Response to Request 13." Ex. 2 (September Privilege Log). Again, that is not an actual privilege and it does not comply with Rule 45 or this Court's order.

Nor is the reference to Request 13 a satisfactory substitute. Request 13 sought information about any "Complaints" (a defined term) alleging "official misconduct" by the Individual Defendants. ECF No. 91-4, PAGEID. 3319-20 (DPD Resp. to Subpoena). While "Complaints" may be part of a personnel file—although given the paltry description, it is unclear whether they are part of either withheld personnel file here—they do not constitute the entirety of that file. Moreover, the only reference to "privilege" in the City's response to Request 13 is that Complaints "may be protected by privilege." *Id*. That too is not an actual assertion of privilege and falls far short of the burden the City has to prove that privilege applies. The personnel files of Croxton and Jimenez should be produced, including any Complaints therein.[8]

---

[8] The remainder of the City's objections do not relate to privilege and have already been ruled upon by this Court in its order directing the City to produce "all documents responsive to Plaintiff's December 11, 2024 subpoenas to the Detroit Police Department and the Detroit Fire Department." [ECF No. 94, PageID.3495, at ¶ 1]. Moreover, to the extent there is concern about the sensitive nature of the information, that can be cured by marking the documents "confidential" subject to

In the same vein, the City should also be required to produce all documents relating to Complaints alleging misconduct by any of the Defendant Officers, as well as documents reflecting their disciplinary histories. As set forth above, these materials are plainly relevant and discoverable. The City neither logged these documents nor asserted any valid basis for withholding them. Any objection or claim of privilege has therefore been waived, and the documents should be produced.

### d. Redacted DFD/DPD Files

The City has also redacted personal identifiable information from the DFD file for the Harlow Street fire investigation and the DPD file for the Charleston Street arson/homicide investigation (which forms the basis of this Complaint). Ex. 2 (September Privilege Log). The City has not provided a basis for having done so— particularly since there is a protective order in place in this case to protect such information. [ECF No. 79][9]. In other words, the unredacted files can be marked confidential and be produced subject to the terms of the protective order in this case.

---

the terms of the protective order, which was provided to the City months ago. [ECF No. 79, PageID.3224, ¶ 3(h)].

[9] Plaintiff believes the current protective order would be sufficient to cover the redacted personal identifying information. For example, the protective order covers "records or materials related to non-party witnesses of a sensitive nature" as well as "investigations of any kind." [ECF No. 79, PageID.3224, ¶¶ 3(g) and (h)]. Additionally, to the extent that the City does not believe that the protective order would cover the materials it has redacted, Plaintiff is willing to enter into a separate order to cover those materials, as the parties did with the Michigan Attorney General's Office. [ECF No. 80].

Doing so is particularly appropriate because otherwise Plaintiff has no way of searching for and locating potential witnesses; only the City does. That asymmetry of information is prejudicial, especially since any concerns about privacy or the disclosure of private information can be accommodated by marking the materials confidential.

### L.R. 7.1 Statement

After the City produced some documents and a privilege log in a response to this Court's August 28 order, Plaintiff reached out to the Court for guidance on how the Court would like Plaintiff to address what Plaintiff believed to be a deficient (and belated) privilege log. The Court indicated that Plaintiff should file a motion, which Plaintiff is now doing. The Individual Defendants do not concur in the Plaintiff's motion.

### Conclusion and Relief Requested

For all of the reasons set forth above, Plaintiff respectfully requests that this Court enter an Order as follows:

1. That non-party City of Detroit comply with this Court's Order Granting Plaintiff's Motion to Compel Production of Subpoenaed Documents by Third-Party (ECF No. 91) [ECF No. 94], and produce all documents responsive to Plaintiff's subpoenas, including documents that the City has withheld on the basis of alleged privilege; and

2. That non-party City has waived any privileges asserted, pursuant to Paragraph 3 of this Court's Order [ECF No. 94], insofar as it has failed to provide an adequate privilege log for those withheld documents.

Plaintiff further requests that this Court order any and all other relief as it deems reasonable and just under the circumstances.

Respectfully Submitted

/s/ Alyssa Martinez
*Plaintiff's Attorney*

Julie H. Hurwitz (P34720)          Jon Loevy
Kathryn B. James (P71374)         Gayle Horn
Dayja S. Tillman (P86526)          Alyssa Martinez
GOODMAN HURWITZ & JAMES      LOEVY & LOEVY
1394 E. Jefferson Ave.              311 N. Aberdeen
Detroit, MI 48207                  Chicago, IL 60607
(313) 567-6170                     (312) 243-5900

*Counsel for Plaintiff*