## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KENNETH NIXON, | ) | |
| | ) | Case No. 23-cv-11547-SKD-EAS |
| *Plaintiff,* | ) | |
| | ) | Hon. Susan K. DeClercq |
| *v.* | ) | District Judge |
| | ) | |
| MOISES JIMENEZ, *et al.*, | ) | Hon. Elizabeth A. Stafford |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S MOTION TO COMPEL PHYSICAL INSPECTION AND PRODUCTION OF DOCUMENTS

Plaintiff Kenneth Nixon, pursuant to his undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i) for a third order compelling non-party City of Detroit to produce documents responsive to Plaintiff's subpoenas served on the City and an order compelling the City to produce the investigative file for inspection. Defendants do not concur in the relief requested herein. A memorandum in support of this motion is attached.

Respectfully submitted,

**KENNETH NIXON**

By: /s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

Julie Hurwitz                                    Jon Loevy

Kathryn James
Dayja Tillman
GOODMAN HURWITZ & JAMES
684 W. Baltimore Ave, Ste 201
Detroit, MI 48202
(313) 567-6170
kjames@goodmanhurwitz.com

Gayle Horn
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
alyssa@loevy.com

**STATEMENT OF ISSUES PRESENTED**

Whether Plaintiff should be permitted to inspect the original homicide file due, in part, to discrepancies in versions that have been produced in discovery.

> Plaintiff's position: Yes.
>
> City of Detroit's position: No.
>
> Defendants' position: No.

Whether the City of Detroit must produce all outstanding requested records to Plaintiff's December 2024 subpoenas.

> Plaintiff's position: Yes.
>
> City of Detroit's position: No.
>
> Defendants' position: No.

For any such records that cannot be produced, and due to misrepresentations about what documents exist, whether the City of Detroit must provide a detailed statement regarding steps taken to search for outstanding records by the person who conducted the search.

> Plaintiff's position: Yes.
>
> City of Detroit's position: No.
>
> Defendants' position: No.

**MOST APPROPRIATE AUTHORITY**

Federal Rule of Civil Procedure 45(d)(2)(B)(i)

*In re Subpoena of Ctr. for Mil. Readiness*, No. MC 18- 51013, 2018 WL 6722247 (E.D. Mich. Nov. 6, 2018)

*Sanford v. City of Detroit*, 355 F. Supp. 3d 619 (E.D. Mich. 2019)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| KENNETH NIXON, | ) | |
| | ) | Case No. 23-cv-11547-SKD-EAS |
| *Plaintiff,* | ) | |
| | ) | Hon. Susan K. DeClercq |
| *v.* | ) | District Judge |
| | ) | |
| MOISES JIMENEZ, *et al.*, | ) | Hon. Elizabeth A. Stafford |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF MOTION TO COMPEL PHYSICAL INSPECTION**
**AND PRODUCTION OF DOCUMENTS**

Plaintiff Kenneth Nixon, by and through his undersigned attorneys, respectfully moves for an order from this Court compelling the City of Detroit to produce the physical investigative file for inspection and a third order compelling the City to produce all outstanding documents responsive to Plaintiff's December 2024 subpoenas. In support thereof, Plaintiff states as follows:

### INTRODUCTION

Plaintiff brings this motion after more than a year of conferrals and two prior Court orders directing production of responsive materials, yet the City still has not complied with its discovery obligations under the Federal Rules. Key categories of documents remain outstanding despite repeated requests and follow-up; and the City is making representations that it has no records responsive to Plaintiff's

1

requests even though such a representation is actively contradicted by documents that have been produced thus far. Furthermore, the City has produced a version of the investigative file for the Charleston Fire, but that version is materially different from versions produced earlier in this litigation by Defendants, creating a serious and unresolved discrepancy that impacts Plaintiff's claims in this case— particularly his *Brady* claims. Those claims depend on determining what materials were in the police's possession and whether they were disclosed to prosecutors and defense counsel, making the completeness and consistency of the investigative file critical. The City also produced a nearly illegible version of the homicide file jacket, which contains important information about the case and officer-in-charge that the parties are not able to make out. Compounding these deficiencies, the City refuses to permit a physical inspection that would allow Plaintiff to verify what is actually contained within the file and reconcile the differences between the versions produced in this case. Plaintiff therefore seeks an order compelling completion of production and inspection necessary to resolve the ongoing uncertainty regarding what documents are actually in the investigative file.

## RELEVANT FACTUAL BACKGROUND

At the outset of this litigation, the parties exchanged initial disclosures pursuant to Rule 26(a)(1). In those disclosures, the individual police Defendants disclosed (but did not produce copies of) 227 pages of Detroit Police Department

("DPD") records, which Plaintiff reasonably understood to constitute the criminal investigative file for the Charleston Fire. Ex. A (Defendants' First Rule 26(a)(1) Disclosures). The individual police Defendants later served amended disclosures and produced a file that Plaintiff understood to be the criminal investigative file that was 286 pages long. Ex. B (Defendants' Second 26(a)(1) Disclosure).

The City of Detroit was originally named as a Defendant but was dismissed prior to producing any documents. ECF No. 67. As a result, in December 2024, Plaintiff served Rule 45 subpoenas on the City—directed to both the Detroit Police Department (DPD) and the Detroit Fire Department (DFD)—seeking, among other things, the complete investigative file relating to the Charleston Fire. ECF Nos. 91-1, 91-2. The City substantially delayed the production of responsive documents and produced minimal records. Of note, however, the City produced a version of the investigative file that differed from that produced prior in the litigation. This new version totaled 301 pages, exceeding the previously produced versions by 74 and 15 pages respectively.

However, many buckets of responsive documents were not produced. After repeated follow-up and a plainly deficient production, Plaintiff moved to compel the City to conduct a search and provide a fulsome response to his subpoenas. ECF No. 91. This Court granted that motion and ordered the City to produce responsive materials. ECF No. 94. Despite the order, the City continued to delay production of

3

responsive materials, so Plaintiff sought an order to enforce this Court's order, ECF No. 97, which was granted, ECF No. 100.

Even after the Court's intervention and subsequent privilege adjudications, Plaintiff identified additional categories of responsive materials that had not been produced—several of which only came to light for the parties through deposition testimony of the individual Defendants and third-party witnesses but would have been known by the City. These include: (1) a legible color copy of the homicide jacket (*i.e.*, the investigative file folder); (2) the "case book" maintained at the homicide desk; (3) Case Trax system records relating to the Charleston Fire investigation; (4) a witness statement from Lisa Caulford, and (5) DPD policy documents governing polygraph materials, procedures, and retention in 2005 (or *any* retention policy adopted by the City covering these materials from 2005 to present).[1] In addition to the shifting contents of the investigative file, the failure to produce these records further raised serious concerns regarding the completeness and reliability of the City's search for, and production of, responsive materials.

Plaintiff undertook extensive, good-faith efforts to resolve these deficiencies without Court intervention. On November 10, 2025, Plaintiff contacted counsel for the City, Attorney Chris Michels, identifying the outstanding materials and

---

[1] Each of these categories of documents fall under a specific request in Plaintiff's December 2024 subpoenas as made clear in the subpoenas themselves and the groupings of requests laid out in Plaintiff's Motion to Compel, ECF No. 91 at PageID.3271-72.

requesting supplementation. Ex. C (Case Correspondence) at 9. Plaintiff followed up on November 18 and December 1, receiving no response until December 3—at which point the City produced only a very poor copy of the homicide jacket, some outstanding documents from the Court's prior privilege adjudications, and nothing further. *Id.* at 7–8. Plaintiff again followed up on December 23 and again on January 7, 2026. *Id.* at 6–7. The City responded on January 8, stating it would attempt to locate responsive materials and requesting additional information regarding Ms. Caulford, which Plaintiff promptly provided. *Id.* at 5–6.

Given the inconsistent productions and the apparent absence of key documents, Plaintiff requested a physical inspection of the investigative file— consistent with an inspection previously conducted by Plaintiff's counsel with the City's Law Department in a similar matter. *Id.* at 5; *see also Calhoun v. Kane, et al.*, Case No. 24-cv-10184, ECF No. 90 (E. D. Mich. April 28, 2025) (Ex. D). The City did not respond to that request. After further follow-up on January 13, the City indicated only that it would see whether an inspection could be facilitated, while providing no substantive update regarding the outstanding materials. Ex. C at 4.

On February 2, 2026, after still receiving no meaningful response, Plaintiff again followed up regarding the missing documents and inspection request. *Id.* at 3. The City subsequently advised, for the first time, that it objected to any physical

5

inspection absent a court order, but provided no explanation or legal basis for that position. *Id.* at 2–3.

Being at impasse on the inspection, Plaintiff continued to seek compliance with this Court's previous orders on the outstanding documents. On April 9, 2026, Plaintiff again requested supplementation. *Id.* at 1–2. In response, the City produced a 2005 polygraph SOP, the same nearly-illegible copy of the homicide jacket, and represented that it had conducted a search but located no case book or Case Trax records. The City made no mention of the Caulford statement. *Id.* The City also reaffirmed its refusal to permit a physical inspection of the investigative file. *Id.*

The City's representations, however, are contradicted by its own productions. For example, materials produced by the City referencing Case Trax records undermine the City's assertion that no such records exist. *See* Ex. E (Case Trax Documents from Investigative File). Coupled with the evolving and inconsistent versions of the investigative file already produced, these deficiencies provide ample reason to conclude that responsive materials remain outstanding and that the City has failed to conduct a proper search as mandated by the Federal Rules and this Court twice over.

Despite prior court orders, multiple follow-ups, and months of effort to resolve these issues without judicial intervention, the City has failed to produce a

complete investigative file and continues to withhold access to the very materials necessary to verify its compliance. Plaintiff therefore seeks this Court's intervention to compel both a physical inspection of the investigative file and the production of all outstanding responsive documents—including, but not limited to, the documents identified above.

## LEGAL STANDARD

Federal Rule of Civil Procedure 34 permits parties to inspect and copy relevant evidence within a non-party's possession, custody, or control pursuant to Rule 45. Rule 45 lays out that "[a] command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials." Rule 45 relies on the standard set forth in Rule 26(b), which permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Laethem Equip. Co. v. Deere and Co.,* No. 05–CV–10113, 2007 WL 2873981, at *4 (E.D. Mich. Sept. 24, 2007). Under Rule 26(b), relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Showing relevance is an "extremely low bar." *Waskul v. Washtenaw Cnty.*

*Cmty. Mental Health*, 569 F. Supp. 3d 626, 632 (E.D. Mich. 2021) (citations omitted).

The scope of discovery under Federal Rule of Civil Procedure 45 is the same as under Rule 26(b)(1), with the only caveat being a party serving a subpoena on a nonparty must "take reasonable steps to avoid imposing undue burden or expense*." In re Subpoena of Ctr. for Mil. Readiness*, No. MC 18- 51013, 2018 WL 6722247, at \*4 (E.D. Mich. Nov. 6, 2018), *adopted*, 2019 WL 4733602 (E.D. Mich. Sept. 28, 2019) (citing Rule 45(d)(1)). If a nonparty fails to properly permit an inspection, the issuing party may seek an order from the court compelling inspection of the documents. Fed. R. Civ. P. 45(d)(2)(B)(i).

## ARGUMENT

Plaintiff seeks straightforward relief expressly contemplated by the Federal Rules: (1) an order requiring nonparty City of Detroit to permit inspection of central, highly relevant evidence within its exclusive control, and (2) an order requiring nonparty City of Detroit to comply with two previous Court orders. The City's refusal—despite prior Court orders, months of meet-and-confer efforts, and multiple inconsistent productions—cannot be reconciled with its obligations under Rules 26 and 45.

8

**I.     The Investigative File Is Highly Relevant to Plaintiff's Claims, and Inspection is Necessary**

The materials Plaintiff seeks are not peripheral—they are the case. Plaintiff alleges that Defendants fabricated evidence, suppressed exculpatory material, and otherwise manipulated the evidentiary record in connection with the Charleston Street Fire investigation, resulting in Plaintiff's wrongful conviction. The investigative file, and the related materials maintained by the City, are the primary repository of that evidence.

Courts consistently recognize that where a plaintiff challenges the integrity of a criminal investigation, the underlying investigative file is quintessentially relevant. *See Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 624 (E.D. Mich. 2019) (finding an investigative file to be directly relevant in a wrongful conviction lawsuit). These materials bear on virtually every element of Plaintiff's claims, including fabrication, suppression, causation, and damages. Under Rule 26(b)(1), that is more than sufficient.

The need for these materials is particularly acute here. Defendants have largely (and for some, completely) disclaimed memory of the investigation in their interrogatory responses, leaving the documentary record as the only reliable account of what occurred. ECF Nos. 91-9. The investigative file thus serves as the primary evidence of how the case was built, what information was available to Defendants, and whether exculpatory or impeaching material was withheld.

9

Without access to the complete file, and an understanding of what constitutes the complete file, Plaintiff is effectively deprived of the ability to test Defendants' version of events and establish Defendants' liability.

Plaintiff's demand for an inspection of the file is not a tangential request or fishing expedition. The investigative file constitutes the primary documents that are necessary to prove Plaintiff's claims, particularly Plaintiff's *Brady* claims. By definition, a claim for suppression of exculpatory evidence turns on what was in the government's possession and whether it was disclosed. That inquiry cannot be resolved without full access to the underlying investigative materials. Courts routinely permit broad discovery in this context—including by mandating production, inspection, copying, and testing—because "[a] plaintiff should not be denied access to information necessary to establish [his] claim." S*ee Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007); *see also Sanford*, 355 F. Supp. 3d at 622; *Waskul*, 569 F. Supp. 3d at 640; *Perry v. City of Pontiac*, No. 07-14036, 2011 WL 4345239, at *9 (E.D. Mich. Sept. 16, 2011).

Equally important, the investigative file is exclusively within the City's possession, custody, and control. Where, as here, critical evidence is uniquely held by a nonparty, courts are especially inclined to compel production and inspection. *See Waskul*, 569 F. Supp. 3d at 634 (finding that exclusive control of relevant documents weighs in favor of compelling production). In this case, Plaintiff has no

independent access to the file, nor do the Defendant Officers—each of whom confirmed in discovery responses that the documents sought "are in the possession, custody, or control of the City of Detroit." ECF No. 91-9. Absent full access, Plaintiff will be severely prejudiced in proving the core misconduct at issue. Equally so, Defendants will be prejudiced from identifying what documents were (and were not) part of the investigative file.

The City's misrepresentations regarding Case Trax records further underscore the need for a compelled inspection. While Case Trax is a different form of document storage, the fact that the City made a representation of having conducted a complete search and found nothing—a representation that is categorically false—has bearing on why Plaintiff needs to be able to inspect the investigative file. Ex. C at 1 ("Confirmation of no CaseBook or Case Trax."). Of note, Case Trax was a system through which officers could document progress during an investigation. Ex. F (Deposition snippet from Defendant Tolbert discussing Case Trax). Particularly because many of the Defendants and witnesses do not have a memory of events that occurred over two decades ago, Case Trax can be an important way to identify the investigative steps that were taken and to refresh witnesses' recollection.

The Federal Rules require a responding nonparty to conduct a reasonable, good-faith search for responsive materials, particularly where—like here—the

11

responding nonparty is the sole custodian of the relevant systems and records. Yet the City has represented that no Case Trax documents exist for this investigation, even though the investigative file *produced by the City* contains references to Case Trax entries and materials generated from that system. That contradiction cannot be reconciled with a diligent search. At best, it reflects an incomplete or inadequate search; at worst, it reflects the withholding of responsive documents. Either way, it demonstrates that the City's collection efforts cannot be taken at face value. Under these circumstances, a physical inspection is necessary to verify what records are actually maintained within the investigative file and related systems, to identify responsive materials that were overlooked or omitted, and to ensure that the City complies with its obligation to conduct a thorough search and produce all responsive documents.

Finally, the discrepancies between the produced versions of the investigative file underscores the need for inspection. Two different versions of the investigative file—each with varying page counts and contents—have been produced—with a third range identified in the individual Defendants' Fist 26(a)(1) Disclosure.[2] These inconsistencies are not minor; they go directly to the completeness and reliability

---

[2] Although the individual Defendants initially produced a copy of the investigative file, the City, as the custodian of that file, maintained possession and control of the documents and accordingly transmitted them to the Defendants.

of the discovery produced. Under these circumstances, a physical inspection is not only relevant—it is necessary.

## II.      Any Minimal Burden Associated with Inspection Is Outweighed by the Critical Need for Complete and Reliable Discovery

The City cannot meet its burden of demonstrating that permitting inspection would impose an undue burden or expense under Rule 45 (assuming, arguendo, that this is the basis for its objection; as noted above, the City has not articulated any substantive grounds for its objection beyond a "because I said so"). Plaintiff's request is narrowly tailored, proportional to the needs of the case, and necessitated by the City's deficient productions.

First, the request for physical inspection is justified by the City's inconsistent and incomplete document productions. The existence of multiple, conflicting versions of the investigative file raises serious questions about whether all responsive materials have been located and produced. A physical inspection is the most efficient—and likely the only reliable—means of resolving those discrepancies. Without it, Plaintiff is forced to navigate between different iterations of the file and accept the City's shifting representations at face value, despite evidence that those representations are inaccurate.

Second, the City's position that no additional materials exist is undermined by the record. As explained above, the City has denied the existence of Case Trax records, yet references to those records appear within the materials it produced.

13

Similarly, key categories of documents identified through deposition testimony remain unaccounted for, including the "case book" and Caulford statement. These contradictions further justify inspection and demonstrate that Plaintiff's request is grounded in concrete deficiencies—not speculation.

Third, any burden on the City is minimal. Plaintiff does not seek to disrupt City operations or impose expansive new search obligations. He seeks only to inspect the existing investigative file and related materials already maintained by the City. Courts routinely permit such inspection where, as here, the integrity and completeness of document productions are in question. *See* Ex. D.

Moreover, any legitimate confidentiality concerns can be—and routinely are—addressed through a protective order. Indeed, Plaintiff's counsel has conducted similar inspections of City investigative files in other cases under agreed-upon protections. *Id.* And, in this case, Plaintiff has already agreed to, and entered, specific protective orders for other parties responding to discovery requests. ECF No. 80. The City's refusal here is therefore not grounded in burden, confidentiality, or proportionality—it is a categorical objection unsupported by any articulated rationale.

Rule 45 does not permit a nonparty to resist discovery based on unexplained, conclusory objections. Having failed to identify any concrete burden or risk, the City cannot justify its refusal to permit inspection.

14

### III.   The City's Continued Noncompliance Violates This Court's Prior Orders

This Court has already considered the adequacy of the City's production and entered two orders compelling it to produce responsive materials. ECF Nos. 94, 100. The City's subsequent conduct demonstrates that it has not complied with either the letter or the spirit of those orders.

Despite the Court's directive, the City has failed to produce entire categories of responsive documents and ignored repeated follow-up requests for months at a time. Even after being pressed, the City provided piecemeal productions, shifting explanations, and representations that are contradicted by its own documents. In an effort to shift blame back onto Plaintiff, the City represented that all of the outstanding materials were not actually encapsulated by the December 2024 subpoenas. Ex. C at 2. Such argument is a nonstarter based on a plain reading of the subpoenas and the lengthy motion practice. ECF Nos. 91, 91-1, 91-2, 94, 97, 100, 102, 104.

Plaintiff has exhausted every reasonable avenue to obtain these materials both with and without judicial intervention. Plaintiff is not in a position to know every possible document repository within the City of Detroit. That is the province of the Law Department. And yet, Plaintiff is back again—having learned of new responsive documents—seeking Court intervention for the third time over materials that were subpoenaed seventeen (17) months ago. The City has been

15

given ample opportunity to comply, yet critical gaps remain. Under these circumstances, further Court intervention is not only appropriate—it is necessary to bring these discovery disputes to a close and to ensure that this case proceeds on a complete and accurate evidentiary record. Or else, Plaintiff will keep needing to come back to this Court for assistance getting the City to comply with its discovery obligations when he learns of new documents that were not yet produced. For those reasons, Plaintiff again requests this Court order the City of Detroit to comply with its discovery obligations and conduct a diligent search for responsive records and produce those records by date certain. Furthermore, to ensure that the responsive records are being appropriately searched for, Plaintiff requests this Court enter an order mandating that the City provide a detailed statement regarding steps taken to search for outstanding records.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order compelling the City of Detroit to (1) produce the investigative file for physical inspection, and (2) conduct a fulsome search and produce all outstanding documents responsive to Plaintiff's December 2024 subpoenas and a statement of what search efforts were undertaken to locate those records. Such relief is necessary to enforce this Court's prior Orders, ensure compliance with the Federal

16

Rules, and permit Plaintiff access to the evidence required to litigate his claims on

a complete and accurate record.

Respectfully submitted,

**KENNETH NIXON**

By: /s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

| | |
|---|---|
| Julie Hurwitz | Jon Loevy |
| Kathryn James | Gayle Horn |
| Dayja Tillman | Alyssa Martinez |
| GOODMAN HURWITZ & JAMES | LOEVY & LOEVY |
| 684 W. Baltimore Ave, Ste 201 | 311 N. Aberdeen |
| Detroit, MI 48202 | Chicago, Illinois 60607 |
| (313) 567-6170 | (312) 243-5900 |
| kjames@goodmanhurwitz.com | alyssa@loevy.com |

17

## CERTIFICATE OF SERVICE

I, Alyssa Martinez, an attorney, hereby certify that on May 4, 2026 I filed

the foregoing document using the Court's CM/ECF system, which effected service

on all counsel of record.

/s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

18