**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**Kenneth Nixon,**

Plaintiff,

Case No.: 23-cv-11547
Hon. Susan DeClerq

v.

**Moises Jimenez et al,**

Defendants.

---

**Non-Party City of Detroit's Response to Motion to Compel
[ECF No. 124]**

City of Detroit states the following in response to Plaintiff's

Motion to Compel:

1. The City has produced 265 megabytes of electronic documents,

   constituting thousands of pages, to Plaintiff in this case.

2. The City has complied with all of Plaintiff's requests.

3. However, Plaintiff continues to not be satisfied, changing its

   requests to include documents not previously requested.

4. Plaintiff's new requests are unduly burdensome and not

   proportional to the needs of this case.

i

5. Regarding Plaintiff's request to compel documents, the City has already responded in full to Plaintiff's request.

6. Many of the newly requested documents cannot be located and Plaintiff has been informed of this information.

7. Regarding the inspection of the homicide file, the request is highly burdensome, not proportional to the needs of this case, cumulative to previous disclosures, and requires needless expense by the City of Detroit.

8. In the event this Court compels the inspection of the homicide file, the City requests a protective order to protect the integrity of the file of an open homicide and prevent the appearance of impropriety.

Therefore, the City requests this Court deny Plaintiff's motion in full. Alternatively, the City requests a protective order requiring (1) the inspection of the homicide file be done at DPD premises under its supervision and recording; (2) Plaintiff be prohibited from photographing any documentary evidence; (3) that Plaintiff not disclose any information previously redacted by the City; (4) Defendants'

counsel may be present if requested and (5) a neutral court official be

present for the inspection.

Respectfully submitted,

/s/ *Christopher Michels*
Christopher Michels (P83156)
City of Detroit Law Department
Attorney for Defendant City of Detroit

iii

## Concise Statement of Issues Presented

1. Whether the City of Detroit must bear the undue burden of allowing Plaintiff to physically inspect a 20 year old homicide file when it already has produced scanned copies of the documents?

City of Detroit's position: No

Plaintiff's position: Yes

2. Whether the City of Detroit must produce records not identified in the December 2024 subpoenas along with documents from 2005 that no longer exist?

City of Detroit's position: No

Plaintiff's position: Yes

3. Whether the City of Detroit must produce another statement that requested records cannot be found based on Plaintiff's conclusory statement that the prior statement is a misrepresentation?

City of Detroit's position: No

Plaintiff's position: Yes

## Most Appropriate Authority

Cases

*Cahoo v. SAS Institute Inc.*, 377 F.Supp.3d 769 (E.D. Mich. 2019)
*McCurdy v. American Biomedical Group, Inc.*,
  9 Fed.Appx. 822 (10th Cir. 2001)

Rules

Fed. R. Civ. P. 34

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Kenneth Nixon,**

             Case No.: 23-cv-11547

    Plaintiff,      Hon. Susan DeClerq

v.

**Moises Jimenez et al,**

    Defendants.

---

### Brief in Support

The City of Detroit has provided thousands of pages of documents, most from over 20 years ago, and yet Plaintiff continues to move the goalposts and seeks to compel documents that do not exist and to unduly burden the City. The City has provided complete responses to Plaintiff's requests. Plaintiff's motion seeks to have this Court believe documents are being hidden from Plaintiff in order to disparage the City in this case.

Plaintiff repeatedly seeks Court intervention without notice to City of Detroit. As previously noted in the City's prior response to a discovery motion [ECF No. 102] Plaintiff sends subpoenas and orders at

1

times it knows the City will not promptly respond, then complains to this Court that the City is "delaying" production.

Plaintiff served his original subpoena on December 23, 2024, when the City was closed for the Holiday season. *See* ECF No. 91-1. Plaintiff complains that documents relating to that subpoena have not been turned over. However, Plaintiff's current motion makes no reference to the original subpoena since none of the current requests appear in that subpoena. *See* ECF No. 97. Plaintiff states only in conclusory terms that these documents "fall under a specific request in Plaintiff's December 2024 subpoena." ECF No. 124, PageID. 3753. Plaintiff failed to point to the specific request in the subpoena, which was previously filed as ECF No. 91-1.

As a brief history of the City's involvement in these discovery matters: Plaintiff did not serve on the City its original August 25, 2025, motion to compel. ECF No. 91. Plaintiff did not promptly serve the Court's order granting that motion. ECF No. 94. The Order was entered August 28, 2025, but was not served on the City until after 5PM on August 30, 2025, with the next Monday being a City and Federal holiday. Plaintiff also failed to serve its Reply to the Motion to enforce

2

Court orders. ECF No. 104. Plaintiff made several new arguments at the October 16, 2025, oral arguments that the City had no notice or opportunity to respond. Plaintiff did not serve this current motion until after it was filed and almost two months since last contacting the City's counsel. Plaintiff last conferred with the City attorney in April of 2026. Plaintiff did not confer with the City relating to the relief sought in this motion current.

Plaintiff, in effect, is constantly sending discovery requests at times it knows will inconvenience the City, seeks court intervention without notice to the City, then changes its requests after the Court grants relief. Plaintiff claims "many buckets of responsive documents were not produced." ECF No. 124, PageID. 3752. Plaintiff has confirmed that it has received responses from the City of Detroit. However, any time the City provides documents, Plaintiff merely insists the response was not good enough then filed this motion.

As a broad matter, the December 2024, subpoena is unduly burdensome and Plaintiff's motion should be denied. Courts have identified several factors for determining the analogous undue burden

3

when a demand for discovery is served. Those factors, to be balanced against one another, are:

> (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with the production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party.
> *Cahoo v. SAS Institute Inc.*, 377 F.Supp.3d 769, 777 (E.D. Mich.

2019)

As a general matter, the factors way heavily against granting Plaintiff's motion. First, the discovery requests were not specific. Plaintiff fails to identify the exact language in their subpoena that is specific to their current request. *See* ECF No. 91-1 (subpoena from Plaintiff). Second, the likelihood of discovering critical information is low. Third, the cost associated with production is high, particularly when the information has already been produced. Each of Plaintiff's requests in their motion are addressed below.

## 1. **Inspection of homicide file**

The City is not a party and is not overly familiar with Plaintiff's claims in this case. The City has produced the homicide file relevant to

4

this case. Plaintiff claims that the physical inspection of the homicide file is "necessary to prove Plaintiff's claims, particularly Plaintiff's *Brady* claims." ECF No. 124, PageID. 3759. However, based on the City's knowledge of this case, Plaintiff's request seems more of a fishing expedition than necessary for their case. Plaintiff has been provided copies of the entire homicide file. Plaintiff appears to concede his case lacks "critical evidence" simply because he could not find sufficient evidence in the previously turned over files.

Plaintiff claims there are "discrepancies between the produced versions of the investigative file." ECF No. 124, PageID. 3761. Plaintiff states in conclusory terms that the "inconsistencies are not minor" but does not address what, if any, inconsistencies there are. *Id.*

Plaintiff cites no precedent for requiring a physical inspection of a paper file when a copy has already been provided. Plaintiff's request is needlessly cumulative and unduly burdensome. Plaintiff's motion seeks only to unduly burden the City of Detroit. Typically, production of a digital copy instead of permitting inspection is permitted. *See* Fed. R. Civ. P. 34(b)(2)(B). Courts have held that once copies of documents have been produced, requiring a physical inspection is unduly burdensome.

5

See *McCurdy v. American Biomedical Group, Inc.*, 9 Fed.Appx. 822, 831 (10th Cir. 2001) (agreeing that inspection of a hard drive was a "drastic discovery measure). Since copies have been provided, there is no valid reason to require physical inspection.

However, if the Court deems the request to be proportional and necessary to have the inspection occur, Defendant requests a protective order. An inspection of a homicide file would need to happen at a location where DPD can oversee the inspection and with sufficient other provisions that would protect the evidence and chain of custody. There is now an unresolved homicide and providing access to non-DPD personnel could constitute a break in the chain of custody and have devastating effects on any possible future prosecution.

Plaintiff makes reference to a previously entered protective order relating to a physical inspection. *See* ECF No. 124-4. The City would ask for similar protections in this case. Of note, the difference between the prior case and the case referenced by Plaintiff, *Calhoun v. Kane et al*, is that this case is a double homicide and the previous case was an attempted sexual assault case. Given the severe nature of the crimes in

6

this case, the Homicide Section of the Detroit Police Department cannot stipulate to an inspection of the file.

However, if the Court does order inspection, similar protections should be in place. The inspection would need to be at Detroit Police Department location under its supervision. The City would also request the inspection be conducted in the presence of Defendant's counsel (if they wish to attend) and the Court have a representative present to avoid any sort of appearance of impropriety. While Plaintiff's counsel may be beholden to a high ethical standard, if even the possibility could emerge that the Plaintiff's counsel or its staff surreptitiously add or remove documents from the homicide file, this Court should place protective procedures to prevent it. The City requests all of the six requirements previously imposed in the ECF No. 124-4 also be added.

### 2. Homicide File Jacket

Plaintiff's second demand is for a color copy of the jacket cover of the homicide file. A color copy was produced on May 13, 2026.

### 3. Case Book

Plaintiff concedes that he received notification from the City on April 10, 2026, that the requested case book from 2005 cannot be

located. Plaintiff therefore seeks an order compelling the City to produce a document that no longer exists. The City has met its obligation to diligently search for the document and this request should also be denied.

### 4. Case Trax

Defendant has also sought documents from 2005 in "Case Trax." Again, the City has conducted a diligent search and the documents cannot be found. Plaintiff contends in conclusory terms that it is "categorically false" that the City could have done a diligent search. *See* ECF No. 124, PageID. 3760. Plaintiff only cites to deposition testimony that the system used to exist. ECF No. 124-6. However, the City and DPD no longer maintains this managements system and no municipality can reasonably be expected to maintain electronic documents for over two decades. The City undertook a diligent search and were unable to find the requested documents. Since the City has already complied with this request, the motion should be denied.

### 5. Witness statement of Lisa Caulford

Plaintiff also seeks to compel a witness statement from "Lisa Caulford." Plaintiff did not request this in its subpoena. On January 8,

2026, the City indicated it had never been informed of a request for the witness statement and clarity on the request. *See* ECF No. 124-3, PageID. 3790. Plaintiff's counsel responded that it would be a witness statement regarding this case. *Id.* The City had already provided the entirety of the investigation file and there is no way the City can search for a witness statement from 2005 merely by the name of the witness.

Plaintiff states only in conclusory terms that this witness statement exists. Based on the information provided by Plaintiff, the City cannot locate this statement. Therefore, the City has fulfilled its obligation under the subpoena the Court should deny the motion.

## 6. DPD policy regarding polygraph

Plaintiff admits that it has received policy information from 2005. *See* ECF No. 124, PageID. 3755. Plaintiff makes no argument for how this production was insufficient. Plaintiff seeks only to compel what has already been turned over.

## Conclusion

The City has fulfilled its obligations, expending considerable government resources in the process. Even when Plaintiff changes its requests, the City has worked in good faith to get the documents, many

9

of which are over two decades old. Plaintiff's motion is unduly burdensome and not proportional to the needs of this case. Therefore, this Court should deny the motion.

Respectfully submitted,

/s/ *Christopher Michels*
Christopher Michels (P83156)
City of Detroit Law Department
Attorney for Defendant City of Detroit

10