**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| KENNETH NIXON, | ) | |
| | ) | Case No. 23-cv-11547-SKD-EAS |
| *Plaintiff*, | ) | |
| | ) | Hon. Susan K. DeClercq |
| *v.* | ) | District Judge |
| | ) | |
| MOISES JIMENEZ, *et al.*, | ) | Hon. Elizabeth A. Stafford |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL**
**PHYSICAL INSPECTION AND PRODUCTION OF DOCUMENTS**

Julie Hurwitz
Kathryn James
Dayja Tillman
GOODMAN HURWITZ & JAMES
1394 E Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
kjames@goodmanhurwitz.com

Jon Loevy
Gayle Horn
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
alyssa@loevy.com

**INTRODUCTION**

Rather than address the deficiencies identified in Plaintiff's motion, the City responds by rewriting the procedural history, relitigating disputes this Court has already decided, and offering speculation and insinuation untethered to the record or applicable law. Notably absent from the City's response is any meaningful attempt to explain the facts giving rise to Plaintiff's motion: the production of multiple versions of the homicide file; the production of Case Trax documents the City says do not exist; and documents that remain unaccounted for. The City ignores these issues and instead argues Plaintiff is "mov[ing] the goalposts" or engaging in a "fishing expedition." But Plaintiff is seeking exactly what he has sought for over a year: production of responsive documents and sufficient access to determine what exists. Far from undermining Plaintiff's motion, the City's response provides further support for granting it.

**ARGUMENT**

**I.    The City Mischaracterizes the Procedural History**

Much of the City's response consists of grievances regarding service dates, holidays, and assumptions regarding Plaintiff's motives. Those assertions are inaccurate and have no bearing on the issues presently before the Court. The City also misstates aspects of the already lengthy procedural history. *E.g.*, *compare* ECF No. 126 at PageID.4029 ("Plaintiff's current motion makes no reference to the original subpoena") *with* ECF No. 124 at PageID.3752-53, 3764-65 (expressly referencing the original two subpoenas); ECF No. 126 at PageID.4030 ("Plaintiff did not serve this motion until . . .

1

almost two months since last contacting the City's counsel") *with* ECF No. 124-3 at PageID.3786 (reflecting Plaintiff's repeated communications mere weeks before filing the Motion); ECF No. 126 at PageID.4030 ("Plaintiff did not confer with the City relating to the relief sought in this motion") *with* ECF No. 124-3 at PageID.3786-96 (documenting extensive conferral efforts, culminating in Plaintiff advising that he "intends to file a motion next week concerning the physical inspection . . . [and] the remaining document requests"). The City's account also omits that Plaintiff *repeatedly* attempted to resolve these issues over the course of six months without Court intervention. The City's attempts to recast Plaintiff's conduct as strategic gamesmanship do nothing to explain its production deficiencies.

The City's argument that Plaintiff's follow-up requests are "new" requests fares no better. ECF No. 126 at PageID.4023-24. Plaintiff's December 2024 subpoena to the Detroit Police Department ("DPD") sought documents that remain outstanding, including: (1) the "case book"; (2) Case Trax system records; and (3) a witness statement from Lisa Caulford.[1] ECF No. 124 at PageID.3753. These materials fall squarely within multiple requests contained in Plaintiff's subpoena, including Request Nos. 1, 3-5, and 9, ECF No. 91-2, and are thus not new requests by any means.

---

[1] The City has produced certain outstanding documents identified in Plaintiff's motion (a color copy of the homicide jacket and DPD polygraph documents), so Plaintiff does not address those here.

## II.   The City Improperly Attempts to Relitigate Issues Already Decided by This Court While Failing to Address the Issues Actually Before It

The City argues that Plaintiff's December 2024 subpoena is "unduly burdensome" and that Plaintiff's motion should therefore be denied. ECF No. 126 at PageID.4030. But this Court has already addressed the discoverability of the subpoenaed materials and entered *two* orders compelling production. ECF Nos. 94, 107. The City's argument thus amounts to an attempt to revisit issues already resolved by the Court. Plaintiff's motion explained that each category of outstanding documents falls within requests that were previously served, litigated, and ordered produced. Rather than address that, the City simply labels the materials "new" requests in an effort to avoid the effect of this Court's prior rulings. But recharacterizing longstanding requests does not transform them into new discovery demands, nor does it permit the City to relitigate issues that have already been decided.

The City also fails to address the central issue that gives rise to Plaintiff's request for inspection in the first place: multiple versions of the homicide file have been produced. That issue carries particular significance given Plaintiff's *Brady* claims. Yet the City offers no explanation for why multiple versions of the homicide file exist or why discrepancies appear among the materials produced. The existence of multiple versions of the same investigative file is precisely the type of circumstance that warrants inspection because it raises legitimate questions regarding the completeness and integrity of the production. Plaintiff's request is therefore not speculative; it arises

3

directly from the City's own productions and the inconsistencies within them.

### III. The City's Response Further Demonstrates Why a Declaration Regarding Search Efforts Is Necessary

Document production by the City has been marked by repeated disputes and deficiencies, as reflected in the record, and the City's response only underscores the need for a declaration explaining what efforts were actually undertaken to locate responsive materials. Most notably, the City represents that no Case Trax documents exist. ECF No. 126 at PageID.4035. Yet Plaintiff's motion **included Case Trax records already produced by the City and explained why those materials indicate the existence of additional responsive records.** ECF No. 124 at PageID.3755, 3760–62; *see also* ECF No. 124-5 (Case Trax documents from the Charleston Fire investigative file). The City does not address those materials *at all.* Instead, it represents to the Court that it undertook a "diligent" search and apparently could not even find the records filed on this docket. That discrepancy raises legitimate questions regarding the scope and adequacy of the City's search efforts for all the outstanding documents.

Under these circumstances, a declaration regarding those efforts is both reasonable and necessary. Plaintiff therefore respectfully requests that the Court require the individual(s) responsible for searching for Case Trax and the remaining outstanding records to provide a declaration describing: (1) the systems and repositories searched; (2) the individuals consulted; (3) the locations searched; and (4) the specific efforts undertaken to identify and locate responsive documents.

### IV.     The City's Chain-of-Custody Argument Lacks Merit

The City also argues that allowing Plaintiff to inspect the homicide file could somehow compromise the chain of custody and jeopardize any future prosecution of the actual Charleston Fire arsonist. ECF No. 126 at PageID.4033. As with several other portions of its response, the City advances this argument in only a sentence or two and without citation to any supporting authority. Such a perfunctory argument is waived. *See In re Harchar*, 694 F.3d 639, 643 (6th Cir. 2012) (explaining that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and internal quotation marks omitted).

However, out of an abundance of caution, Plaintiff explains that there is no genuine chain-of-custody issue here. Under the City's own proposal, DPD personnel would supervise the inspection. An officer would remain present during the review. The file would remain at DPD premises. The inspection would be recorded. Under those circumstances, there is no meaningful distinction between Plaintiff reviewing the file and prosecutors reviewing the file during the ordinary course of a criminal investigation. The file never leaves DPD custody. The City's speculation about hypothetical chain-of-custody issues therefore provides no basis to deny inspection.

### V.     Plaintiff Agrees a Protective Order Is Appropriate, but Not Under the City's Proposed Terms

5

Plaintiff agrees that a protective order governing any inspection is appropriate. Plaintiff does not, however, agree that the broad restrictions proposed by the City are necessary or justified. Consistent with the protective order entered in *Calhoun* and attached to Plaintiff's motion, ECF No. 124-4, Plaintiff agrees that the following protections are appropriate: (1) the inspection occur at DPD premises under DPD supervision and recording; (2) Plaintiff not disclose information redacted by the City unless Plaintiff believes a redaction is improper; (3) Defendants' counsel may attend the inspection; and (4) a neutral court representative may be present during the inspection.

Plaintiff's proposed treatment of redacted information (protection #2) differs slightly from the City's because of the history of disputes regarding overinclusive designations. *See* ECF Nos. 97, 104, 107. Plaintiff agrees generally not to disclose information redacted in the homicide file but reserves the right to seek Court intervention where a redaction appears unsupported or otherwise improper.

Plaintiff also strenuously objects to any assertion, implication, or suggestion by the City that extraordinary safeguards are required because of the possibility Plaintiff's counsel could somehow alter evidence. Plaintiff's counsel are officers of the Court and object to the suggestion that counsel or their staff would "surreptitiously add or remove documents" from a police file. The City offers no basis whatsoever for such an insinuation. Particularly troubling is that the only allegations known by Plaintiff involving removal of police evidence concern (1) Defendant Tolbert in *Sanford v. City of Detroit* (No.17-13062), and (2) the different homicide files produced in this case.

6

Finally, Plaintiff disagrees with the City's position that he should be prohibited from taking photographs during the inspection. Rule 45 expressly provides that "[a] command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, **copying,** testing, or sampling of the materials." Plaintiff should be entitled to take photographs to ensure he has a complete and accurate record of the materials contained in the investigative file. Plaintiff has not received a color copy of the file nor does he have any reassurances that what has been produced thus far is the same as what Plaintiff would inspect should the Court grant such relief. Plaintiff would agree to marking photographs as attorney's eyes only, pending resolution of any disputes, but Plaintiff should not be prohibited from engaging in conduct expressly contemplated by the Federal Rules.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion and order: (1) production of the homicide file for inspection; (2) production of all outstanding responsive materials following a fulsome search; (3) a declaration describing search efforts undertaken by the City; and (4) any further relief this Court deems just and proper.

Respectfully submitted,

**KENNETH NIXON**

By: /s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

7

## <u>Certificate of Service</u>

I, Alyssa Martinez, an attorney, hereby certify that on May 26, 2026 I filed the

foregoing document using the Court's CM/ECF system, which effected service on all

counsel of record.

By: <u>/s/ Alyssa Martinez</u>
*One of Plaintiff's Attorneys*